UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3.<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UBS REAL ESTATE SECURITIES, INC.,<br><br>　　　　　Defendant. | Civil Civ. Action No. 12-cv-7322 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CERTIFICATEHOLDERS BAKAL, VISHER AND ESM FUND I, LP FOR LEAVE TO INTERVENE AS PLAINTIFFS**

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................1

II. FACTS ....................................................................................................................2

    A. The Trust ....................................................................................................2

    B. The Wells Fargo Interpleader Action ........................................................3

    C. Assured's Litigation Against UBSRESI ....................................................4

    D. The Trustee Has Failed to Take Action to Protect
        Intervention Plaintiffs' Interests .................................................................5

III. ARGUMENT ..........................................................................................................6

    A. Intervention is Timely ................................................................................7

    B. Intervention Plaintiffs May Intervene As of Right Under
        Fed.R.Civ.Pro. 24(a)(2) ..............................................................................8

    C. Intervention Plaintiffs May Intervene Permissively
        Under Fed.R.Civ.Pro. 24(b)(1)(B) ...........................................................10

IV. CONCLUSION .....................................................................................................12

## TABLE OF AUTHORITIES

**Cases** *Page*

*Basciani Foods, Inc. v. Mid Island Wholesale Fruit & Produce, Inc.*,
09-CV-4585(JS)(WDW), 2011 U.S. Dist. LEXIS 368 (E.D.N.Y. Jan. 3, 2011)..........8,9

*Diversified Group, Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) ..........7

*FHFA v. UBS*,
Civil Action No. 11-05201 (S.D.N.Y.)..........10

*Franz v. West Bank Marina & Yacht Club*,
CV 11-6073 (SJF) (AKT), 2012 U.S. Dist. LEXIS 103013 (E.D.N.Y. June 15, 2012)..........11, 12

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
797 F.2d 85 (2d Cir. 1986)..........7

*Master Card Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
471 F.3d 377 (2d Cir. 2006)..........8

*U.S. Postal Service v. Brennan*,
579 F.2d 188 (2d Cir. 1978)..........7

*United States v. Peoples Benefit Life Ins. Co.*,
271 F.3d 411 (2d Cir. 2001)..........7

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
922 F.2d 92 (2d Cir. 1990)..........7

*Wells Fargo Bank, N.A., v. ESM Fund, L.P., et al.*,
United States District Court, Southern District of New York, Civil Action No. 10-7332 ..........2

**Statutes**

Fed.R.Civ.P. 24..........6

Fed.R.Civ.P. 24(a)(2)..........1, 7

Fed.R.Civ.P. 24(b)(1)(B) ..........1, 11

Trust Indenture Act of 1939..........11

15 U.S.C. §77aaa ..........11

**INTRODUCTION**

Intervention Plaintiffs, Alexander Bakal, David Visher and Sandra Visher, and ESM Fund I, L.P. ("Intervention Plaintiffs"), hereby move this Honorable Court for the entry of an Order permitting Intervention Plaintiffs to Intervene pursuant to Federal Rule of Civil Procedure 24(a)(2) and 24(b)(1)(B) in the above-captioned action. Intervention Plaintiffs' proposed Complaint-in-Intervention is attached as Exhibit A to Declaration of Judith Spanier (hereinafter referred to as "Spanier Dec. Ex. __"). Intervention Plaintiffs' interests are related to one of the transactions that is the subject of this action. Intervention Plaintiffs' interests are not adequately protected in this litigation.[1] Intervention Plaintiffs' interests are, currently and potentially in the future, compromised and prejudiced by the legal positions that have been and could be asserted by the various parties involved. As explained in greater detail below, a clear conflict of interest exists between Intervention Plaintiffs and the Trust, whose counsel Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), also represents the Certificate Insurer, Assured Guaranty Municipal Corp. ("Assured")[2]. While the Trust, through the Trustee, has a duty under a Pooling and Servicing Agreement dated as of October 1, 2006 (the "PSA") to pursue remedies on behalf of all Certificateholders, this is not and cannot be happening here where Quinn Emanuel, serving as both the Trust's counsel and Assured's counsel, has, in different litigation related to the

---

[1] While this action has been marked as related to *Assured Guaranty Municipal Corp. v. UBS Real Estate Securities, Inc.*, 12 CV 1579 (HB)(hereinafter, the "Assured Litigation"), it appears to have not yet been consolidated or coordinated.

[2] Assured is the Certificate Insurer for the Senior Support certificate holders (the "Insured Certificateholders"). The Insured Certificateholders are the investor tranche directly subordinate to Intervention Plaintiffs' status.

Trust[3], supported interpretations of the PSA which are diametrically opposed to the interests of Intervention Plaintiffs. Also, by its dilatory conduct, the Trustee has already potentially compromised Intervention Plaintiffs' ability to recover the full amount of compensation due to them. Intervention Plaintiffs respectfully submit that the Trustee has breached its fiduciary duties to the Trust under the PSA and the Trust Indenture Act of 1939, 15 U.S.C. §77aaa, *et seq.*, and Intervention Plaintiffs must be permitted to pursue litigation against UBSRESI directly and also against the Trustee derivatively for its breaches of its fiduciary duties.[4]

## I.    FACTS

### A.    The Trust

Pursuant to a Pooling and Servicing Agreement ("PSA") dated as of October 1, 2006, the MASTR Adjustable Rate Mortgage Trust 2006-OA2 ("MARM-OA2" or the "Trust") a New York common law trust, was established among UBS Real Estate Securities Inc. ("UBSRESI"), U.S. Bank (the "Trustee"), Mortgage Asset Securitization Transactions Inc. ("Depositor"), Wells Fargo Bank, N.A., ("Wells Fargo"), the Master Service, Trust Administrator, and Custodian, and Clayton Fixed Income Services Inc., the Credit Risk Manager. The Trust is a securitization trust from which investors are entitled to receive interest and/or principal proceeds in accordance with the terms of the PSA.

The Trust issued 28 classes of certificates pursuant to a Prospectus Supplement dated November 14, 2006 ("Prospectus Supplement"), raising proceeds in excess of $2 billion. The

---

[3] *Wells Fargo Bank, N.A., v. ESM Fund, L.P., et al.*, United States District Court, Southern District of New York, Civil Action No. 10-7332 (hereinafter, the "Wells Fargo Interpleader Action").

[4] In the interest of preserving judicial resources, Intervening Plaintiffs are including their claims against the Trustee in the Complaint-in-Intervention. Intervention Plaintiffs intend to pursue these claims even if the Court should deny their motion to intervene.

certificates were backed by a pool consisting of four groups of first lien, adjustable-rate mortgage loans (the "loans"). The value of the certificates thus depended at the time of their issuance and still depends on the ability of the mortgagors to repay the loan principal and interest and the adequacy of the collateral in the event of a default.

Intervention Plaintiffs own and/or have power of attorney for certificates issued by the Trust in the principal amount totaling over $91 million, representing the interests of the non-insured senior certificates which have priority over the Insured Certificates.

### B.     The Wells Fargo Interpleader Action

Beginning in August 2010, Assured, the Certificate Insurer, actively sought reimbursement of claims paid by Assured for defaults on the underlying mortgage loans in the Trust. As a result, Wells Fargo credited $7,199,157.47 against amounts payable by Assured for the Insured Certificates.[5] Thus, on August 25, 2010, Intervention Plaintiffs received a scheduled distribution which was not their full scheduled distribution of interest and principal. Immediately, ESM Management LLC ("ESM"), the General Partner of Intervention Plaintiff ESM Fund I, LP, on behalf of Intervention Plaintiff ESM Fund I, L.P. sent e-mails to Wells Fargo objecting to the crediting of this amount to Assured.

As a result of this disagreement over the rights of the various Certificateholders and the Certificate Insurer, on September 23, 2010, Wells Fargo filed an interpleader action against Intervention Plaintiffs and Assured, seeking a declaratory judgment for interpretation of the PSA (the "Wells Fargo Interpleader Action"). In that litigation, Intervention Plaintiffs, along with

---

[5]   The Insured Certificates were to be allocated $16,078,142.74 in Realized Losses, for which the Trust Administrator could make a claim under the Policy. Thus, instead of making the payment of the $7,199,157.47 to Assured and then making a claim under the Policy to Assured for $16,078,142.74, Wells Fargo opted to net the two amounts; that is, Wells Fargo reduced the claim it made to Assured under the Policy by $7,199,157.47, to $8,878,985.27.

other Certificateholders, each seek preference in the receipt of money coming into the Trust, in a situation where the Trust will clearly not be able to pay out 100% of the anticipated payments for interest and principal. In that litigation, Assured, represented by Quinn Emanuel, has advocated for an interpretation of the PSA which compromises the rights of the Intervention Plaintiffs. In a March 29, 2011 Opinion and Order, the Court (Sand, J.) found that the PSA language is unambiguous and is properly interpreted in the manner suggested by Intervention Plaintiffs. The Court ordered:

> Assured is entitled only to subrogation of the rights of the Insured Certificates at each stage that the Certificate Insurer is identified in the payment waterfall. Wells Fargo is to distribute the funds it has held in escrow during the pendency of this litigation, with interest, in accordance with this opinion. Assured is to repay to the Trust the $7,199,157.47 credited to it by Wells Fargo, and this amount is to be distributed in accordance with this opinion.

*See* March 29, 2011 Opinion, Spanier Dec. Ex. B at 14. Since that time, the parties have continued in litigation over the proposed form of Order. The case is currently stayed, while Assured appeals the Court's March 29, 2011 Opinion, seeking an interpretation of the PSA which is more favorable to the Insured Certificateholders. Assured continues to be represented in its appeal by Quinn Emanuel.

### C.    Assured's Litigation Against UBSRESI

Since August 2010, Assured, through its counsel Quinn Emanuel, has aggressively pursued reimbursement of amounts it is paying out under the relevant policies and remedies for the Insured Certificateholders. Thus, in addition to the positions taken by Assured in the Wells Fargo Interpleader Action, on February 2, 2012, Assured filed an action in which Assured alleges that UBSRESI breached numerous representations and warranties in the PSA (the "Assured Litigation"). In that action, Assured is represented by Quinn Emanuel. Assured is pursuing funds that could ultimately deplete the ability of Intervention Plaintiffs to recover the

payments that are due to them. Again, Assured is advancing legal positions that, if accepted by the Court, undermine Intervention Plaintiffs' seniority in the payment schedule. On August 15, 2012, the Court upheld certain claims asserted by Assured, granting in part and denying in part the motion to dismiss filed by UBSRESI.

### D. The Trustee Has Failed to Take Action to Protect Intervention Plaintiffs' Interests

In contrast to Assured, Quinn Emanuel's other client, the Trustee, is invested with the obligation to protect the rights of all Certificateholders, including the Intervention Plaintiffs, and the Trust. The Trustee not only failed to seek any recourse on behalf of all Certificateholders and the Trust until September 28, 2012, but downright refused to act despite repeated demands by Intervention Plaintiffs to press these claims in a timely fashion. In fact, the Trustee only gave "formal" notice of breaches of the PSA to UBSRESI when it piggy-backed on correspondence sent by Assured. Intervention Plaintiffs have repeatedly demanded the Trustee protect the Super Senior Certificateholders' and the Trust's rights, by instituting a lawsuit against UBSRESI, intervening in the Assured Litigation, and/or in any other fashion appropriate. The Trustee failed to act in the face of these repeated demands, even though it was apprised of Assured's activities beginning in August 2010. In fact, on July 25, 2012, the Trustee flat-out rejected Intervention Plaintiffs demands. *See* July 25, 2012 email to Intervention Plaintiff Bakal from Diane Reynolds of U.S. Bank, stating that it refused "to commence litigation relating to the Trust." Spanier Dec. Ex. C. Nevertheless, on September 28, 2012, without any notice to Intervention Plaintiffs, the Trustee filed a complaint on behalf of the Trust against UBSRESI retaining Quinn Emanuel, the same lawyers who have been (1) arguing that Intervention Plaintiffs' priority in the payment

schedule is not senior to Assured's and (2) trying to take money from Intervention Plaintiffs and have it paid to Assured.[6]

Intervention Plaintiffs seek to intervene in this matter to protect their rights and the rights of the Trust.

## II.  ARGUMENT

Rule 24 (Intervention) provides that a non-party may intervene in the following circumstances:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
> (1) *In General.* On timely motion, the court may permit anyone to intervene who:
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> ****
>
> (3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

"For a party to intervene in a case as of right under Rule 24(a)(2), that party must have an interest in the case that is '"direct, substantial, and legally protectable."' *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Washington Elec.*

---

[6] Intervention Plaintiffs did not get notice of this lawsuit until October 10, 2012.  See Spanier Dec. Ex. D.

*Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). Here, Intervention Plaintiffs have interests that are direct, substantial, and legally protectable."

In the alternative, permissive intervention under 24(b)(1)(B) would also be appropriate. Permissive intervention is within the court's broad discretion. *Diversified Group, Inc. v. Daugerdas,* 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *see U.S. Postal Service v. Brennan,* 579 F.2d 188, 192 (2d Cir. 1978). In exercising that discretion, courts consider factors that include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Id.* (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 (2d Cir. 1986)). "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria, [and] district courts have considerable discretion in making this evaluation." *Basciani Foods, Inc. v. Mid Island Wholesale Fruit & Produce, Inc.,* 09-CV-4585(JS)(WDW), 2011 U.S. Dist. LEXIS 368, *7 (E.D.N.Y. Jan. 3, 2011) (citations omitted).

### A. Intervention is Timely

For either subpart, the court must first consider whether the motion is timely. "Factors to consider in determining timeliness include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Master Card Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 390 (2d Cir. 2006)).

This action was filed on September 28, 2012. Intervention Plaintiffs first learned of it on October 10, 2012 when the Trustee sent notice of the filing. See Spanier Dec. Ex. D. Therefore, this motion to intervene is timely and no prejudice to the existing parties can be found due to the timing of this filing. By contrast, Intervention Plaintiffs would be severely prejudiced if this application were denied. Neither this action, nor the Assured Litigation, can fairly and adequately protect the rights of all Certificateholders. As noted earlier, Assured believes it is entitled to priority treatment over Intervention Plaintiffs and other Certificateholders. Assured's Counsel has aggressively pursued such a position on Assured's behalf, yet now comes late to the table purporting to represent the Trust and "all Certificateholders." Not only is there concern of a potential conflict of interest arising from representation of both Assured and the Trust by the same counsel, but based on the facts, the Court could find that the Trustee had actual notice of UBSRESI's breaches significantly earlier and thus is prevented from enforcing UBSRESI's obligations under the PSA.

Therefore, intervention is timely.

### B.     Intervention Plaintiffs May Intervene As of Right Under Fed.R.Civ.Pro. 24(a)(2)

Intervention Plaintiffs may intervene pursuant to Fed.R.Civ.P. 24(a)(2) because they claim "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The notes to the 1966 Amendment emphasize that:

> the general purpose of original Rule 24(a)(2) was to entitle an absentee, purportedly represented by a party, to intervene in the action if he could establish the fair probability that the representation was inadequate. Thus, where an action is being prosecuted or defended by a trustee, a beneficiary of the trust should have

> the right to intervene if he can show that the trustee's representation of his interest probably is inadequate...

Clearly, Intervention Plaintiffs have established that the Trustee's representation of their interests is "probably" inadequate.

In *Basciani*, the Court granted intervention where it determined that the financial interests of the intervenor may be in conflict with the financial interests of the parties that filed suit, and that the intervenor's interests would not be sufficiently protected by the existing parties to the litigation.

> Third, that interest will be impaired if non-trust assets are distributed to the PACA Claimants without affording the Trustees an opportunity to determine whether the Union Funds' claim to those non-trust assets is of higher priority than the PACA Claimants'. Fourth, the Trustees' interest is not adequately represented by the current parties to the litigation. Plaintiffs and the other PACA Claimants want as large a PACA Trust as possible, and Mid-Island may not be interested in differentiating what assets belong in the PACA Trust because, in the end, it likely does not care to whom its property is distributed.

2011 U.S. Dist. LEXIS 368, at *7-8.

Here, Intervention Plaintiffs are the Super Senior Certificateholders, who have a senior interest in the same pot of money that the Trustee is seeking as damages in this litigation for all of the Certificateholders, *and in parallel litigation, that the Trustee's counsel is seeking on behalf of Assured, the Wells Fargo Litigation and the Assured Litigation..* Moreover, Quinn Emanuel[7] is representing Assured in other litigation arising from securitizations, and other

---

[7] Quinn Emanuel has made a cottage industry of representation of various and numerous parties involved in securitizations. So in addition to representing Assured, and US Bank on behalf of the Trust, against UBSRESI, Quinn Emanuel also represents the Federal Housing Finance Agency, as conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, "FHFA", in litigation against UBSRESI arising from FHFA's being fraudulently induced to purchase over $6.4 billion in RMBS issued in connection with twenty-two UBS sponsored and/or UBS-underwritten securitizations in violation of the federal securities laws and certain state codes. None of these purchases involved the Trust at issue herein. *See FHFA v. UBS*, Civil Action No. 11-05201 (S.D.N.Y.)  Quinn Emanuel also

plaintiffs in litigation against UBS. The division of any money recovered in this litigation among the Certificateholders will be determined by the PSA, the subject of this litigation between the Master Servicer, Assured and Intervention Plaintiffs. *Intervention Plaintiffs cannot be required to stand by and permit the watchdog of its interests to be represented by the same lawyers who are advocating for an interpretation of the PSA that basically divests them of their Super Senior certificateholder status in the payment schedule.*

In addition, if this litigation proceeds to a conclusion, it could be a conclusion involving legal rulings which are prejudicial to Intervention Plaintiffs, and Intervention Plaintiffs could be collaterally estopped from pursuing certain claims. Furthermore, Intervention Plaintiffs believe that the Trustee has otherwise breached its fiduciary duties to the Trust and violated the Trust Indenture Act of 1939, 15 U.S.C. §77aaa, *et seq.,* by failing to timely exercise its rights to protect Intervention Plaintiffs' interests under the PSA.

Therefore, intervention as of right is appropriate.

### C.     Intervention Plaintiffs May Intervene Permissively Under Fed.R.Civ.Pro. 24(b)(1)(B)

In the alternative, Intervention Plaintiffs seek to intervene permissively because they have "a claim . . .that shares with the main action a common question of law or fact." In fact, Intervention Plaintiffs seek to assert the same claims against UBSRESI that are being asserted by the Trustee against UBSRESI. Many of the facts which underlie Intervention Plaintiffs' individual legal claims are also identical to certain of the facts being alleged by the Trustee.

---

represent the FHFA in seventeen different actions against various financial institutions involved in the packaging, marketing and sale of residential mortgage-backed securities. A list of many of the actions in which Quinn Emanuel has undertaken representation is attached hereto as Exhibit E.

Thus, circumstances support permitting Intervention Plaintiffs to intervene to assist in prosecuting the claims.

In *Franz v. West Bank Marina & Yacht Club*, CV 11-6073 (SJF) (AKT), 2012 U.S. Dist. LEXIS 103013 (E.D.N.Y. June 15, 2012), the Court permitted intervention pursuant to Rule 24(b)(1)(B). In *Franz,* in litigation arising from a yacht fire, which spread and caused secondary property damage to other vessels, CNA, the insurer for a secondarily damaged vessel, filed suit against the primary vessel owner and a third-party wrongdoer, among others, for negligence. The insurer for the primary vessel owner filed a motion in intervention in the CNA litigation to file suit against the same third-party wrongdoers. The Court granted the motion:

> The gravamen of the proposed complaint is that DeSimon and JD Marine failed to perform their duties with respect to the Motor Yacht in a workmanlike manner and were negligent in their work on the Motor Yacht. *See id*. These are the same claims that CNA asserts against DeSimon and JD Marine. *See* DE 13. Thus, there is substantial overlap of both legal and factual issues. ***The Court finds that Old United's interests in this action are substantial and it does not appear that any other party would protect those interests. Although CNA will likely attempt to prove the same facts that Old United would in connection with the claims against DeSimon and JD Marine, the two companies are not entirely united in interest since CNA also asserts negligence claims against Franz, Old United's subrogee.*** Old United's participation will contribute to the full development of the issue of any liability on the part of JD Marine and DeSimon.

*Id.* at 6-7 (emphasis added).

Likewise here, while the Trustee will seek to develop all facts supporting a finding against UBSRESI, Intervention Plaintiffs also assert a claim against the Trustee, which has a negative incentive to develop any facts that would underscore its own fiduciary breaches, or violations of the TIA. In addition, now that the Trustee has finally decided to pursue a remedy, when Intervention Plaintiffs' rights under the PSA have been compromised for almost two years, it has hired the very law firm which represents the Certificate Insurer, another signatory to the

PSA, with which it is competing for monetary recovery. Looking to the language in *Franz*, Intervention Plaintiffs and Assured are clearly "not united in interest." *Id.*

These circumstances clearly support permitting Intervention Plaintiffs to intervene under 24(b)(1)(B).

## III. CONCLUSION

Intervention Plaintiffs' Motion to Intervene should be granted for the reasons set forth herein.

Dated: October 15, 2012

        **ABBEY SPANIER RODD & ABRAMS LLP**

          /s/Judith L. Spanier
        Judith L. Spanier
        jspanier@abbeyspanier.com
        212 East 39th Street
        New York, NY 10016
        Telephone: 212-889-3700

        **LAW OFFICES BERNARD M. GROSS, P.C.**
        Deborah R. Gross, I.D. No. 44542
        Suite 450, The Wanamaker Building
        Juniper and Market Streets
        100 Penn Square East
        Philadelphia, PA 19107
        Telephone: (215) 561-3600

        **Counsel for Intervention Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 15, 2012, the foregoing Motion of to Intervene as Plaintiffs, Memorandum in Support of Motion to Intervene and Declaration of Judith L. Spanier was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                            /s/ Judith L. Spanier
                                            Judith L. Spanier