UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| MASTR ADJUSTABLE RATE MORTGAGES | : | |
| TRUST 2006-OA2, MASTR ADJUSTABLE | : | |
| RATE MORTGAGES TRUST 2007-1, AND | : | |
| MASTR ADJUSTABLE RATE MORTGAGES | : | 12-cv-7322 (HB)(JCF) |
| TRUST 2007-3, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | |
| UBS REAL ESTATE SECURITIES INC., | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### UBS REAL ESTATE SECURITIES INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Paul J. Lockwood (*pro hac vice*)
Alexander C. Drylewski
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Defendant UBS Real Estate
  Securities Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................4

    A.    The Assured Action ..................................................................................4

    B.    The Instant Action.....................................................................................6

        1.    The Parties ....................................................................................7

        2.    The PSAs .......................................................................................8

        3.    The Motion to Intervene ...............................................................10

ARGUMENT ..............................................................................................................11

THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ......................11

I.     THE TRUSTS CANNOT ENFORCE UBS RESI'S REPURCHASE
     OBLIGATIONS..................................................................................................11

II.    PLAINTIFFS' ACTION FOR MONEY DAMAGES IS BARRED BY THE PSAs........12

    A.    The Complaint Improperly Seeks Money Damages................................12

    B.    The Trusts Impermissibly Seek Relief Beyond the Trusts ....................15

III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR BREACH OF
     CONTRACT .......................................................................................................16

    A.    Plaintiffs Have Failed to Allege That UBS RESI Did Not Comply with its
        Repurchase Obligations ...........................................................................17

        1.    UBS RESI is Not Required to Repurchase Loans That Are 180
            Days or More Delinquent.............................................................17

        2.    UBS RESI Cannot Repurchase Loans For Which the Underlying
            Properties Have Been Sold ...........................................................20

    B.    Plaintiffs Have Failed to Allege Performance of the Trustee's Contractual
        Obligations................................................................................................23

CONCLUSION............................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

Page

*Abuelhija v. Chappelle,*
No. 08 CV 3679 (HB), 2009 WL 1883787 (S.D.N.Y. June 29, 2009)..............................18

*Assured Guaranty Municipal Corp. v. DLJ Mortage. Capital, Inc.,*
No. 652837/2011 (Sup. Ct. N.Y. County Oct. 11, 2012)...................................................14

*Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc.,*
No. 12 CV 1579 (HB), 2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012) .................... passim

*BNP Paribas Mortgage Corp. v. Bank of America, N.A.,*
778 F. Supp. 2d 375 (S.D.N.Y. 2011)...............................................................................19

*In re Bradley,*
501 F.3d 421 (5th Cir. 2007) .............................................................................................11

*Carpenters & Millwrights Health Benefit Trust Fund v. Domestic Insulation Co.,*
387 F. Supp. 144 (D. Colo. 1975)......................................................................................11

*Central Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings, LLC,*
No. 5140CS, 2012 WL 4503731 (Oct. 1, 2012) ................................................................24

*Chappo & Co., Inc. v. Ion Geophysical Corp.,*
83 A.D.3d 499 (Sup. Ct. N.Y. County Apr. 14, 2011) ................................................23, 24

*CIFG Assurance North America, Inc. v. Assured Guaranty Corp.,*
932 Misc. 3d 1202 (table), 2011 WL 2535029 (Sup. Ct. N.Y. County 2011)..................18

*Conte v. Marine Lumber Co.,*
848 N.E.2d 1246 n.5 (Mass. App. Ct. 2006) .....................................................................21

*Esoimeme v. Wells Fargo Bank,*
No. Civ. S-10-2259, 2011 WL 3875881 (E.D. Cal. Sept. 1, 2011) ...................................20

*First Place Bank v. Skyline Funding, Inc.,*
No. 10 CV 2044, 2011 WL 3273071 (N.D. Ill. July 27, 2011) ...................................21, 22

*Gratin v. Wiggins,*
23 Cal. 16 (1863) ...............................................................................................................21

*Greenfield v. Philles Records,*
98 N.Y.2d 562 (2002) ........................................................................................................18

*Greenspan v. LADT, LLC,*
191 Cal.App.4th 486 (Cal. Ct. App. 2010) ........................................................................11

*GS Agrifuels Corp. v. Chaykin*,
  No. 101401/2009 (Sup. Ct. N.Y. County Aug. 3, 2010) ........................................3, 17, 24

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
  No. 08 Civ. 11365 (RJH), 2010 WL 1257300 (S.D.N.Y. Mar. 31, 2010)......................19

*Kel Kim Corp. v. Central Markets, Inc.*,
  70 N.Y.2d 900 (1987) .......................................................................................................22

*Kirschbaum v. Elizabeth Ortman Trust of 1977*,
  3 Misc. 3d 1110, 2004 WL 1372542 (Sup. Ct. Suffolk County 2004)..............................11

*Lehman Bros. Holdings v. Key Financial Corp.*,
  No. 8:09-CV-623-T-17EAJ, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011) ...................22

*M&I Bank, FSB v. Coughlin*,
  No. CV 09-02282, 2012 WL 602365 (D. Ariz. Feb. 24, 2012)............................15, 24, 25

*MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank, N.A.  v. WMC Mortgage Corp.*,
  No. 11-2542 (JRT/TNL), 2012 WL 4511065 (D. Minn. Oct. 1, 2012).................... passim

*MASTR Asset Backed Securities Trust 2006-HE3, by U.S. Bank, N.A.  v. WMC Mortgage Corp.*,
  843 F. Supp. 2d 996 (D. Minn. 2012).......................................................................12, 15

*Mendez v. Oakmont Mortgage Co., Inc.*,
  No. 10cv1970 DHS (WMC), 2010 WL 4818000 (S.D. Cal. Nov. 22, 2010)...................21

*Morris v. 702 East Fifth Street HDFC*,
  46 A.D.3d 478 (1st Dep't 2007).......................................................................................16

*Nack Holdings, LLC v. Kalb*,
  13 So. 3d 92 (Fla. Dist. Ct. App. 2009) ..........................................................................21

*Peterson v. Metropolitan Life Insurance Co.*,
  248 N.W. 667 (Minn. 1993)..............................................................................................21

*Plotch v. Citimortgage*, Inc.,
  No. 102708/11, 2012 WL 1049991 (Sup. Ct. N. Y. County Mar. 13, 2012)  ..............4, 23

*Primeco, Inc. v. Artemis, S.A.*,
  No. 95 Civ. 3843, 1995 WL 766311 (S.D.N.Y. Dec. 29, 1995)........................................18

*Reinke v. Northwest  Trustee Services*,
  No. 09-19609, 2011 WL 5079561 (Bankr. W.D. Wash. Oct. 26, 2011) ...........................21

*In re Roach*,
  824 F.2d 1370 (3d Cir. 1987)............................................................................................21

*Samuel I. White, P.C. v. Caudle,*
    No. 184721, 2004 WL 1879135 (Va. Cir. Ct. 2004) ........................................................21

*Sazon Inc. v. State,*
    No. 11 Civ. 3666, 2011 WL 5910171 (S.D.N.Y. Nov. 28, 2011) ...................................11

*Security Life Denver Insurance Co. v. Shah,*
    No. CV411-008, 2011 WL 2181485 (S.D. Ga. June 2, 2011)....................................2, 11

*Tsering v. Wong*,
    No. 08 Civ. 5633 (JGK), 2008 WL 4525471 (S.D.N.Y. Oct. 3, 2008) ...........................12

*Walnut Manor Assoc. v. Keys*,
    No. C057198, 2010 WL 3412131 (Cal. App. 3rd Dist. Aug. 31, 2010)..........................21

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
    96 A.D.3d 684 (1st Dep't 2012) ......................................................................................13

*Wells Fargo Bank, N.A. v. ESM Fund I, LP,*
    785 F. Supp. 2d 188 (S.D.N.Y. 2011)......................................................................13, 16

*Williams v. Bradshaw*,
    459 F.3d 846 (8th Cir. 2006) ...........................................................................................11

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)................................................................................................4

**STATUTE**

Federal Rule of Civil Procedure 17 ...................................................................................2, 11

**OTHER**

Charles Alan Wright et al., *Federal Practice and Procedure* § 1548 (3d ed. 2010)................2, 11

Defendant UBS Real Estate Securities Inc. ("UBS RESI") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice the complaint ("Complaint")[1] filed by plaintiffs MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1 and MASTR Adjustable Rate Mortgages Trust 2007-3 (collectively, "Plaintiffs" or the "Trusts").

## PRELIMINARY STATEMENT

This Court recently held in *Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc.* (the "Assured Action") that Assured Guaranty Municipal Corp. ("Assured") is barred by the relevant pooling and servicing agreements ("PSAs") from asserting claims to enforce UBS RESI's repurchase obligations and that the contractual right to bring such claims rests solely with the trustee for the related residential mortgage-backed securities ("RMBS") trusts (the "Trustee").  2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012).  In response, Assured's counsel filed this second action, purportedly on behalf of three RMBS trusts (the "Trusts"), alleging that UBS RESI breached "repurchase obligations" and seeking money damages including, notably, "compensatory and consequential losses, including lost profits and business opportunities" on behalf of both certificateholders and third party Assured.  (Ex. A at 21.) However, in bringing this Complaint, Plaintiffs ignore the express limitations on UBS RESI's liability imposed by the PSAs and black letter law, both of which demand dismissal for at least the following reasons:

---

[1]  A copy of the Complaint is attached as Exhibit A to the Declaration of Scott D. Musoff, dated October 22, 2012, exhibits to which are cited herein as "Ex. __."  All emphasis in record, case and statutory citations is added.

1

*First*, under New York law,[2] trusts are non-juridical entities that can neither sue nor be sued, and that, in any event, have no rights under the PSAs.  (*Infra* Section I.)  Similarly, federal courts have repeatedly held that, under Federal Rule of Civil Procedure 17, the trustee – *not the trust* – is the real party in interest concerning claims relating to the trust res.  Fed. R. Civ. P. 17; *see, e.g.*, *Sec. Life Denver Ins. Co. v. Shah*, 2011 WL 2181485, at *1 (S.D. Ga. June 2, 2011); Charles Alan Wright et al., *Federal Practice and Procedure* § 1548, at 525–26 (3d ed. 2010) ("the trustee, *not the trust itself* [] is entitled to bring suit under Rule 17(a)(1)(E)").  Yet the caption on the Complaint names the Trusts – and only the Trusts – as the plaintiffs here and otherwise fails to clearly identify the Trustee as a party to this lawsuit.  Moreover, this Court has already held that *only* the Trustee is empowered under Section 2.03 of the PSAs (the "Sole Remedy Provision") to bring claims to enforce UBS RESI's repurchase obligations.  *Assured*, 2012 WL 3525613, at *4.  Thus, to the extent that the Trusts themselves, and not the Trustee, are the Plaintiffs litigating this action, they lack both the legal capacity and the contractual right to assert the claims made here and the Complaint must be dismissed.

*Second*, even if the Trustee had brought these claims (and it has not), Plaintiffs' claim is barred on its face by the express terms of the PSAs.  (*Infra* Section II.)  Plaintiffs purport to bring a claim for breach of UBS RESI's "repurchase obligations" and demand money damages as compensation.  (Ex. A at 20-21.)  But UBS RESI does not have "repurchase obligations" that give rise to a claim for money damages.  Instead, the Sole Remedy Provision provides that if a breach of certain representations and warranties ("R&W") about the mortgage loans is established, then UBS RESI's obligations are circumscribed and specifically limited to

---

[2]  The PSAs are governed by New York law (*infra* Section B.2) and "[c]apacity to sue or be sued is determined" for unincorporated associations "by the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(1)(3).

(i) *cure* of the alleged breach or (ii) *repurchase* of the breaching loan.  (*Infra* Section II.A.)

Further, if a breach of R&W is established, and UBS RESI fails to cure or repurchase as required,

only the Trustee has the right to enforce UBS RESI's obligations to cure or repurchase under the

Sole Remedy Provision.  *Assured*, 2012 WL 3525613, at *4.  All parties to the PSAs agreed that

this remedial scheme would be the *only* relief available in the event of a breach of R&W.  In

short, the PSAs do not permit the claim for money damages asserted here (which, remarkably,

extends so far as to seek compensation even for Assured's "lost profits and business

opportunities"), and thus the Complaint should be dismissed as barred on its face by the express

terms of the PSAs.

        *Third*, regardless of the parties named or the relief sought, the Complaint fails to

state a claim for breach of contract.  The Complaint is entirely devoid of any facts to support an

inference that the loans at issue are properly subject to repurchase under the terms of the PSAs.

The PSAs include critical limitations on UBS RESI's liability to repurchase loans in breach of

R&W that Plaintiffs choose to ignore – including, for example, contractual provisions stipulating

that the "Purchase Price" to be paid by UBS RESI for any loan that is liquidated or more than

180 days delinquent "*shall be zero*."  (*Infra* Section III.A.1.)  Similarly, UBS RESI cannot be

liable for repurchase of loans where the underlying property is sold for the simple reason that

there is no longer a mortgage loan to repurchase.  (*Infra* Section III.A.2.)  Because Plaintiffs fail

to allege that the loans at issue are subject to repurchase, the Complaint must be dismissed for

failure to state a claim.  *See GS Agrifuels Corp. v. Chaykin*, No. 101401/2009, at *4-6 (Sup. Ct.

N.Y. County Aug. 3, 2010) (dismissing breach of contract claim where complaint failed to allege

adequately a breach of the agreements).

*Finally*, the Sole Remedy Provision is not a one-way street.  While it imposes on UBS RESI the obligation to repurchase loans under certain circumstances, it similarly imposes reciprocal obligations on other parties to the PSAs, including an obligation to provide UBS RESI with "prompt notice" of alleged breaches of R&W.  (*Infra* Section III.B.)  Under New York law, "[i]n order to establish a prima facie case on a breach of contract claim, defendant must show proof of a contract, performance by one party on the contract, a breach by the other party and damages as a result . . . .  Where the plain language of the contract establishes obligations on the other party that have not been met, dismissal is warranted."  *Plotch v. Citimortgage*, Inc., 2012 WL 1049991, at *3 (Sup. Ct. N. Y. County Mar. 13, 2012).  Plaintiffs have nowhere pled facts to show that these prompt notice obligations were met – to the contrary, the laundry list of breach notices recited in the Complaint extends for *over two years*, giving rise to the far more reasonable inference that notice was anything but "prompt."  (Ex. A ¶¶ 37-38.)

In sum, Plaintiffs' flawed attempt to plead a claim for breach of contract that they have no capacity or authority to assert, that is plainly barred by the express terms of the PSAs and that fails to plead even the most basic elements of the claim mandates dismissal.

## STATEMENT OF FACTS[3]

### A.   The Assured Action

On February 2, 2012, Assured – a monoline insurer – brought the Assured Action in the Supreme Court of the State of New York, County of New York, alleging that UBS RESI breached certain R&W contained in the PSAs for three RMBS certificates for which Assured provides irrevocable financial guaranty insurance:  the MARM 2006-OA2, MARM 2007-1 and

---

[3]  The facts set forth herein, which are accepted as true solely for the purposes of this motion, are drawn from the factual allegations of the Complaint, "together with those 'documents . . . incorporated in it by reference' and 'matters of which judicial notice may be taken.'"  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 123 (2d Cir. 2011) (ellipses in original).

MARM 2007-3 RMBS certificates ("Certificates").  (Ex B.)  UBS RESI removed the Assured

Action to this Court on March 2, 2012.  *See* Notice of Removal, 12-cv-1579 (HB), ECF No. 1.

In its complaint, Assured claimed that, long after the Certificates were issued and

began experiencing defaults, it reviewed a portion of the mortgage loans underlying the

Certificates and allegedly discovered breaches of R&W.  (Ex. B ¶¶ 2, 55.)  Beginning in August

2010 and continuing through the end of 2011, Assured sent notices of alleged breaches of R&W

to UBS RESI in connection with approximately 2,440 mortgage loans underlying the Certificates,

with a total original principal balance of $997,842,635.  (*Id.* ¶ 61.)  Since the filing of its

complaint, Assured sent additional breach notices to UBS RESI in connection with a further

approximately 4,200 loans with an original principal balance of over $1,900,000,000.  On their

face, these notices were plainly indiscriminate, as many of the subject loans are continuing to

perform to this day and many were submitted in serial order by loan number.

On April 23, 2012, UBS RESI moved to dismiss Assured's complaint, asserting,

*inter alia*, that (i) Assured's claim for damages based on alleged breaches of R&W was barred by

the Sole Remedy Provision, which limited available remedies to UBS RESI's cure or repurchase

of the breaching loans; (ii) Assured's claim for breach of UBS RESI's repurchase obligations

was similarly barred by the Sole Remedy Provision, which vests the Trustee alone with the right

to enforce it, and (iii) even if Assured could assert a damages claim (and it could not), Assured's

demand for the extraordinary equitable remedy of so-called "rescissory damages" should be

stricken as wholly improper in a breach of contract case.  Assured Action, ECF. No. 8 (April 23,

2012).  UBS RESI also argued that it had no liability to repurchase "Liquidated Loans" – defined

in the PSAs as loans that are liquidated or 180 days or more delinquent – because the PSAs

contractually set the repurchase price for such loans at zero.

5

On August 15, 2012, this Court granted in part and denied in part UBS RESI's motion to dismiss. *Assured Guar. Municipal Corp. v. UBS Real Estate Sec., Inc.*, 2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012). Specifically, the Court (i) denied the motion to dismiss Assured's claim for breach of R&W but declined to rule on whether Assured's remedies were limited to cure or repurchase as set out in the Sole Remedy Provision, finding the language in the PSAs to be ambiguous in this regard as to Assured; (ii) dismissed Assured's claims for breach of UBS RESI's repurchase obligations, holding that only the Trustee could enforce those obligations; and (iii) declined to strike Assured's demand for rescissory damages at that time, on the basis that the motion was premature. *Id.* at \*4, \*7.[4] Because the Court held that Assured could not enforce UBS RESI's repurchase obligations, it did not consider whether UBS RESI was required to repurchase Liquidated Loans. *Id.* at \*4 n.5.

### B.   <u>The Instant Action</u>

On September 28, 2012, the same counsel representing Assured filed this second action in this District, purportedly on behalf of the Trusts for the three transactions at issue in the Assured Action, which was accepted by this Court as related on October 9, 2012. The Complaint contains nearly identical allegations against UBS RESI relating to the same R&W for the mortgage loans backing the same RMBS Trusts.

For example, Plaintiffs allege that in August 2010, Assured began sending purported breach notices and demanding that UBS RESI cure or repurchase certain loans held in the Trusts, Ex. A ¶¶ 37-38, and further allege that in March 2012 – after Assured had already served 12 breach notices on UBS RESI over the course of nearly 18 months – the Trustee began

---

[4]  The Court also dismissed Assured's claims for certain declaratory relief and sustained its separate claims for breach of so-called "commitment letters." *Id.* at \*5-6.

6

reiterating Assured's repurchase demands.  *Id.*  In total, Plaintiffs claim that UBS RESI was served with 21 repurchase demands by Assured, only seven of which were allegedly reiterated by the Trustee.  *Id.*  Plaintiffs attach to the Complaint an appendix containing a handful of purported breaches of R&W (*id.* at 23-27), but the appendix nowhere gives other critical information about these loans, including when they first became delinquent and when notice of each of these alleged breaches was given to UBS RESI (if ever).

While the Complaint is technically brought in the name of the Trusts, it is clearly crafted for the benefit of Assured and the Complaint contains repeated references to damages purportedly suffered by only Assured.  (*See, e.g.*, Ex. A ¶ 42 ("Assured is exposed to additional claims under each of the Policies"); ¶ 6 ("UBS Real Estate's breaches of contract have inflicted and continue to inflict tremendous harm on Certificateholders and Assured.").)  In fact, in the "Prayer for Relief," the Complaint states that "ASSURED requests the Court enter judgment" and seeks an award of money damages against UBS RESI, including "Certificateholders' and *Assured's* compensatory and consequential losses, including lost profits and business opportunities" and the "Trustee's attorneys' fees, costs, and expenses associated with enforcing its legal rights under each PSA."  (*Id.* at 21.)

Unlike the Assured Action, however, the Complaint here alleges a single cause of action: that UBS RESI breached its "repurchase obligations under each PSA."  (Ex. A ¶¶ 43-49.)  On account of this purported breach, the Complaint seeks money damages against Defendant "in an amount to be proven at trial."  (*Id.* at 21.)

### 1.    <u>The Parties</u>

Plaintiffs are three RMBS trusts identified as: MASTR Adjustable Rate Mortgages Trust 2006-OA2; MASTR Adjustable Rate Mortgages Trust 2007-1; and MASTR Adjustable Rate Mortgages Trust 2007-3.  (Ex. A ¶ 7.)  The Complaint alleges that Defendant

7

UBS RESI acted as the "sponsor" of the three RMBS Certificates and "acquired the underlying mortgage loans, which it subsequently conveyed to [the Trusts]." (*Id.* ¶ 2.) The Trusts in turn issued the Certificates, which entitle investors to a portion of the principal and interest payments made by homeowners on the mortgage loans held in the Trusts. (*Id.*) UBS RESI *did not* originate the loans held in the Trusts that back the Certificates.

2.    **The PSAs**

Each RMBS transaction is governed by a separate PSA (Exs. C - E), which specifically allocates various risks associated with these mortgage loans among the parties. The PSAs, which are governed by New York law (Ex. C at 141), were entered into by UBS RESI, the Depositor, the Master Servicer, the Custodian, the Trust Administrator and the Trustee. They provide that the Trustee "holds or will hold . . . such assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders." (*See, e.g.*, Ex. C at 59.) Assured is identified as a third-party beneficiary in each of the PSAs. (*Id.* at 144.)

In the PSAs, UBS RESI made a number of R&W regarding the mortgage loans held in each Trust. (Ex. C at 154-161.) The Sole Remedy Provision provides that if a breach of R&W is discovered that also "materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach *shall give prompt notice* thereof to the other parties and the Trustee." (Ex. C at 61; Ex. D at 89; Ex. E at 73.)[5] Upon receiving the required prompt notice, "*the Trustee shall in turn notify*

---

[5]  The PSAs define "Mortgage Loan" as:

> Such of the mortgage loans and cooperative loans transferred and assigned to the Trustee pursuant to the provisions hereof as from time to time are held as a part of the Trust Fund (including any REO Property), the mortgage loans so held being identified in the Mortgage Loan Schedule, notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property. With respect to each Mortgage Loan that is a Cooperative

*[UBS RESI] of such breach*,"  and thereafter, the Sole Remedy Provision provides that, within 90 days, UBS RESI "*shall cure* such breach in all material respects, and if such breach is not so cured, shall (i) *substitute* the Mortgage Loan (if the 90-day cure period expired prior to the second anniversary of the date on which the deal closed); or (ii) "*repurchase* the affected Mortgage Loan or Mortgage Loans from the Trustee *at the Purchase Price . . . .*"  *Id.*

Further, the PSAs explicitly state that "[i]t is understood and agreed that the obligation under this Agreement of [UBS RESI] to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the *sole remedies against [UBS RESI]* respecting such matters available to Certificateholders, the Master Servicer, the NIMS Insurer, the Depositor, the Trust Administrator or the Trustee on their behalf."  (Ex. C at 62; Ex. D at 90-91; Ex. E at 75.)  Thus, the Sole Remedy Provision not only expressly limits UBS RESI's liability for breach of R&W to the contractual remedies in the PSA (which do not include money damages), but further provides UBS RESI with the bargained-for opportunity to mitigate its damages by curing a breach or replacing a loan in breach prior to repurchase.

In the event that UBS RESI is obligated to repurchase a Mortgage Loan, it must deposit the "Purchase Price" of the Mortgage Loan in the respective Trust.  *Id.*  The PSAs stipulate that the "Purchase Price" of a Mortgage Loan subject to repurchase is "a price equal to the *outstanding Principal Balance* of such Mortgage Loan as of the date of purchase . . . ."  (Ex. C at 47; *see also* Ex. D at 61; Ex. E at 56.)  In turn, the parties agreed that "[t]he Principal

---

Mortgage Loan, if any, 'Mortgage Loan' shall include, but not be limited to, the related Mortgage Note, Security Agreement, Assignment of Proprietary Lease, Recognition Agreement, Cooperative Shares and Proprietary Lease and, with respect to each Mortgage Loan other than a Cooperative Mortgage Loan, 'Mortgage Loan' shall include, but not be limited to the related Mortgage and the related Mortgage Note.
(Ex. C at 37; Ex. D at 50; Ex. E at 47.)

Balance of any Mortgage Loan that has . . . become a Liquidated Loan [defined as a loan that

was liquidated or in default for more than 180 days] . . . *shall be zero*."  (Ex. C at 46; Ex. D at 61;

Ex. E at 55.)  It is for this very reason that notice of alleged breaches of R&W must be "prompt."

(*See* Ex. C at 61.)  Where UBS RESI has repurchased a Mortgage Loan at the Purchase Price, the

PSA provides that "the Custodian shall release the related Mortgage File" to UBS RESI and "the

Trustee shall execute and deliver at [UBS RESI's] direction such instruments of transfer or

assignment prepared by [UBS RESI] . . . as shall be necessary to transfer title from the Trustee."

(Ex. C at 62; Ex. D at 90; Ex. E at 75.)

    **3.**      **The Motion to Intervene**

       On October 15, 2012, several certificateholders of the MARM 2006-OA2 Trust

filed a motion to intervene in this action (the "Proposed Intervenors").  ECF No. 10.  The

Proposed Intervenors are senior to the certificateholders insured by Assured, such that payments

made through the Trust "waterfall" payout structure are allocated to the Proposed Intervenors

ahead of the class of certificateholders to which Assured, as insurer, is subrogated.

       In support of their motion, the Proposed Intervenors assert that the Trustee suffers

from a conflict of interest because it is represented by the same counsel who represents Assured

in the Assured Action, and thus is "trying to take money from [Proposed Intervenors] and have it

paid to Assured."  ECF No. 13, at 1, 6.   The Proposed Intervenors also claim that the Trustee has

failed in its duties to all certificateholders by refusing the Proposed Intervenors' earlier demands

to institute an action against UBS RESI "in a timely fashion," despite being "apprised of

Assured's activities beginning in August 2010."  *Id.* at 5, 8.  In support, the proposed intervenors

provide email communications from as recently as July 2012, in which U.S. Bank stated that "the

Trustee will be taking no action on this matter."  ECF No. 12, Ex. C at 3.

**ARGUMENT**[6]

**THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

I.  **THE TRUSTS CANNOT ENFORCE
UBS RESI'S REPURCHASE OBLIGATIONS**

Under New York law,[7] trusts are non-juridical entities that can neither sue nor be sued. *Kirschbaum v. Elizabeth Ortman Trust of 1977*, 3 Misc. 3d 1110, 2004 WL 1372542, at *2 (Sup. Ct. Suffolk County 2004) ("[t]he trustees as legal owners of the trust estate generally sue and are sued in their own capacity.  The trust itself does not have the capacity to sell the estate").[8]  Similarly, under Rule 17, federal courts have held that the trustee – not the trust – is the real party in interest concerning claims relating to the trust res. Fed. R. Civ. P. 17(a)(1)(E); *see, e.g.*, *Sec. Life Denver Ins. Co. v. Shah*, 2011 WL 2181485 at *1 (S.D. Ga. June 2, 2011) "[t]he trustee is the real party in interest in such a claim, not the trust itself . . . .  In fact, if the trust itself were joined to the action and attempted to assert [the] claims [at issue], *the Court would be required to dismiss them*."); *Carpenters & Millwrights Health Benefit Trust Fund v. Domestic Insulation Co.*, 387 F. Supp. 144, 147 (D. Colo. 1975); Wright et al., *supra*, § 1548, at 525–26 ("[i]t is the trustee, not the trust itself, that is entitled to bring suit under [Rule 17]").

Despite the Trusts' status as a non-juridical entity, however, the Complaint's caption names the Trusts – and only the Trusts – as the plaintiffs in this action.  *See Williams v.*

---

[6]  The pleading standards applicable to this motion are set forth in *Sazon Inc. v. State*, 2011 WL 5910171, at *3 (S.D.N.Y. Nov. 28, 2011) (Baer, J.).

[7]  Federal Rule of Civil Procedure 17(b)(1)(3) provides that the "[c]apacity to sue or be sued is determined" for unincorporated associations "by the law of the state where the court is located."

[8]  Other states similarly have established that trusts lack the capacity to sue.  *See, e.g.*, *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 521-22 (Cal. Ct. App. 2010) ("[B]ecause '[a] trust is not a legal entity,' it 'cannot sue or be sued, but rather legal proceedings are properly directed at the trustee.'"); *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007) ("[U]nder Texas law, a trust is not considered a legal entity . . . [f]or purposes of attorney-client privilege or legal capacity to be sued").

*Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006) ("[w]hile a caption is not determinative as to who

is a party to a suit, we think that it is entitled to considerable weight when determining who the

plaintiffs to a suit are since plaintiffs draft complaints").  Although the Trustee is mentioned in

the Complaint, it is not identified as the plaintiff, and instead the Complaint only states obliquely

that the plaintiff Trusts are "acting through" the Trustee, U.S. Bank.  (Ex. A ¶ 7.)  These pleading

flaws alone compel dismissal.  *See Tsering v. Wong*, 2008 WL 4525471, at *4-6 (S.D.N.Y. Oct.

3, 2008) (dismissing defendant not named in caption or clearly identified in body of complaint).[9]

Additionally, this Court in the Assured Action has already held that *only the*

*Trustee* may enforce UBS RESI's repurchase obligations under the Sole Remedy Provision.

2012 WL 3525613, at *4.  The Trusts thus not only lack the legal capacity to bring suit as

plaintiffs, they lack the contractual standing to enforce UBS RESI's repurchase obligations under

the plain terms of the PSAs.  Thus, to the extent that the Trusts themselves, and not the Trustee,

are the actual plaintiffs responsible for litigating this action, their claims should be dismissed.

## II.  PLAINTIFFS' ACTION FOR MONEY DAMAGES IS BARRED BY THE PSAS

### A.  The Complaint Improperly Seeks Money Damages

Even if the Trustee were the plaintiff here (and it is not), the only claim for relief

in the Complaint – *i.e.*, an action for breach of "repurchase obligations" seeking money damages

(Ex. A ¶ 44) – is barred by the plain terms of the Sole Remedy Provision.  UBS RESI's

repurchase obligations constitute the only contractually-prescribed *remedy* available to the

Trustee and one that is triggered only upon proof of a breach of R&W that materially and

---

[9]  Indeed, when U.S. Bank wants to identify itself as a plaintiff, it knows exactly how to do so.  For
example, in another action where U.S. Bank, acting in its capacity as trustee, brought claims relating to
breaches of representations and warranties in a UBS-sponsored RMBS offering, the caption was styled as
follows:  *MASTR Asset Backed Sec. Trust 2006-HE3, by U.S. Bank N.A. v. WMC Mortg. Corp.*, 843 F.
Supp. 2d 996 (D. Minn. 2012).  Here, by contrast, the Trustee is not named in the caption as a plaintiff –
only the Trusts are.

adversely affects the interests of Certificateholders.  *See Walnut Place LLC v. Countrywide Home Loans, Inc.*, 96 A.D.3d 684, 684-85 (1st Dep't 2012) (repurchase provision in substantially similar agreement "merely provide[d] for a remedy in the event of a breach"). Indeed, there can be no dispute that the Sole Remedy Provision states in unequivocal terms that UBS RESI's obligations thereunder "shall constitute the *sole remedies* against [UBS RESI] respecting such matters available to Certificateholders . . . or the Trustee on their behalf."  (*Supra* Section B.2.)

In this regard, the Sole Remedy Provision reflects a straightforward but limited bargain: UBS RESI agreed to make R&W about the mortgage loans held in the Trusts but, at the same time, UBS RESI circumscribed its liability for those R&W (a critical issue for UBS RESI, given that it did not originate any of the loans at issue but acquired them from others). Accordingly, the parties to the PSAs agreed to forego broad money damages and instead agreed that the only available remedies from UBS RESI would be cure of the breach or repurchase of the loan.[10]  The PSAs further provide that loans are repurchased by UBS RESI at the "Purchase Price," which is defined in turn as the loan's outstanding "Principal Balance."  (*Infra* Section III.A.1.)  Thus, where cure is not available, the "Purchase Price" acts as a cap on UBS RESI's liability and represents the total "damages" recoverable by the Trustee for a breach of R&W. The "Purchase Price" is then *deposited into the Trust* for distribution to the Certificateholders through the payment waterfall.  *See generally Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 191-192 (S.D.N.Y. 2011), *on appeal*, 12-83-cv (2d Cir.  Jan. 6, 2012).

---

[10]  The Sole Remedy Provision also affords UBS RESI the opportunity to substitute allegedly breaching mortgage loans within the first two years of the PSAs' Closing Date.  (*See, e.g.*, Ex. C at 61.)  Because this option is not applicable to the instant claims, UBS RESI's obligations are referred to throughout as obligations to "cure or repurchase."

Yet, despite the unambiguous language in the Sole Remedy Provision providing only for enforcement of UBS RESI's repurchase obligations by the Trustee, Plaintiffs do not seek such relief.  Rather, Plaintiffs completely ignore this limitation and seek money damages payable to each of the "Trusts" and directly to Assured, including money damages well beyond anything contemplated in the PSAs.  Indeed, Plaintiffs seek "an award of damages . . . including at a minimum:  Certificateholders' and Assured's *compensatory and consequential losses*, including *lost profits and business opportunities*" and "Trustee's *attorney's fees, costs, and expenses* associated with enforcing its legal rights under each PSA."  (Ex. A at 21.)  However, nowhere do the PSAs permit the Trustee to bring a claim for money damages for "breach of the repurchase obligation."  To the contrary, the Sole Remedy Provision expressly limits the Trustee to an action to enforce UBS RESI's obligations thereunder, which are limited to cure or repurchase upon a showing of breach of R&W.

This conclusion was recently affirmed by Justice Kornreich of the New York State Commercial Division in a substantially similar case brought by Assured against, among others, Credit Suisse.  *Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*, No. 652837/2011, slip op. at 16 (Sup. Ct. N.Y. County Oct. 11, 2012).  Justice Kornreich reviewed the PSA at issue, which contained a nearly identical "sole remedy" provision, and concluded that Assured's "damages for breach of contractual warranties *are limited to the Repurchase Protocol*."  *Id.* at 15-16.  In dismissing Assured's claims for money damages (including for "lost profits and business opportunities"), Justice Kornreich held that "[w]hat was contemplated was clearly expressed – that the Repurchase Protocol would be the *sole remedy* available to the Certificateholders" and other parties seeking to enforce the repurchase obligations.  *Id.*

14

Similarly, in *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage Corp.* – which again involved substantially similar allegations by the very same Trustee as here in connection with an RMBS transaction sponsored by UBS RESI – the court held that "under the clear terms of the parties' agreement, the *sole remedy available to U.S. Bank is to seek cure, repurchase or substitution of the allegedly defective WMC mortgages.*" 843 F. Supp. 2d 996, 1001 (D. Minn. 2012). Recognizing that the Trustee's claim for money damages was explicitly barred by the parties' bargained-for sole remedy provision, the court held that "U.S. Bank *may not* recover additional remedies, *including monetary damages*, from WMC, and U.S. Bank's claim for damages is dismissed." *Id.* The holdings in *Assured v. DLJ* and *MASTR v. WMC* apply with equal force here and compel dismissal of Plaintiffs' claim.

Indeed, allowing Plaintiffs to recover money damages for breach of R&W would effectively read the Sole Remedy Provision out of the PSAs and eviscerate UBS RESI's bargained-for limitation on liability. *M&I Bank, FSB v. Coughlin*, 2012 WL 602365, at *5 (D. Ariz. Feb. 24, 2012) ("If M&I could disregard [the cure or repurchase provision] and sue solely for breach of the warranty clause, it is tantamount to saying that the cure or repurchase provision is optional, and therefore meaningless, depriving the broker of an important part of its bargain."). Plaintiffs' flawed attempt to re-write the PSAs and void the Sole Remedy Provision should be rejected and the Complaint – which pleads a single claim for damages – should be dismissed.

### B.    The Trusts Impermissibly Seek Relief Beyond the Trusts

Further underscoring the impropriety of the relief sought, Plaintiffs overreach by seeking to recover all sorts of consequential and other money damages *not for the Trusts or their beneficiaries*, but for *Assured*. The Complaint, drafted by Assured's counsel (purportedly on behalf of the Trusts), makes numerous allegations with respect to Assured and Certificateholders' purported personal injuries – those beyond injuries to the Trusts, *see* Ex. A ¶¶ 3, 5, 6, 9, 37-42,

15

49 – culminating in the prayer for relief stating that "ASSURED requests that the Court enter judgment . . . for an award of damages against Defendant, in an amount to be proven at trial, but including at a minimum . . . *Certificateholder's and Assured's* compensatory and consequential losses, including lost profits and business opportunities."  (*Id.* at 21.)

But this Court has already ruled that Assured – as third party beneficiary of the PSAs – has no direct right to enforce the repurchase obligations.  Instead, Assured (like the Certificateholders to which it is subrogated) must act through the Trustee, and the Trustee is barred from seeking money damages by the Sole Remedy Provision, which contemplates only the payment of funds to the Trusts for distribution to Certificateholders according to the waterfall payout structure for the deal.  (*Supra* pp. 13-14); *Assured*, 2012 WL 3525613, at *4.  To allow the relief sought here would permit Assured to undermine that structure and improperly leap ahead of the more senior certificateholders to which it is subordinate by having its "damages" paid to it directly.  *See Wells Fargo*, 785 F. Supp. 2d at 197.[11]  Such an inversion of the parties' agreement should not be countenanced by this Court and the claim should be dismissed.

## III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

Regardless of the parties named or the relief sought, the Complaint should in any event be dismissed because Plaintiffs fail to state a claim for breach of contract.  Under black letter New York law, "[i]n an action for breach of contract plaintiff must allege: (1) the existence of a valid contract; (2) plaintiff's performance of his obligations thereunder; (3) defendant's failure to perform; and (4) damages."  *Morris v. 702 East Fifth Street HDFC*, 46 A.D.3d 478,

---

[11]  In fact, the right of certain certificateholders to receive payments ahead of Assured is exactly why the Proposed Intervenors are seeking to intervene in this action and assert claims against the Trustee for, *inter alia*,  hiring the same counsel as Assured.  (*Supra* Section B.3.)

479 (1st Dep't 2007) (citing *Furia v. Furia*, 116 A.D.2d 694, 695 (2d Dep't 1986)).  Because

Plaintiffs have not pled that (i) any of the loans allegedly in breach of R&W are sugject to

repurchase by UBS RESI under the terms of the PSAs; or (ii) the Trustee and other parties to the

PSAs performed their reciprocal obligations under the Sole Remedy Provision (to the contrary,

the only facts pled suggest precisely the opposite), the Complaint must be dismissed.

### A.    Plaintiffs Have Failed to Allege That UBS RESI Did Not Comply with its Repurchase Obligations

To plead a breach of UBS RESI's obligations under the Sole Remedy Provision

necessarily requires, *inter alia*, pleading that the Mortgage Loans identified in the Complaint

were properly subject to cure or repurchase under the terms of the PSAs.  *See GS Agrifuels Corp.*

*v. Chaykin*, No. 101401/2009, at *4-6 (Sup. Ct. N.Y. County Aug. 3, 2010) (dismissing breach of

contract claim where complaint failed to allege adequately a breach of the agreements).  The

Complaint is devoid of facts that would permit this inference and the numerous limitations on

UBS RESI's obligations to repurchase Mortgage Loans in the PSAs are simply ignored.

### 1.    UBS RESI is Not Required to Repurchase Loans That Are 180 Days or More Delinquent

As noted above, the Sole Remedy Provision states that if a breach of R&W is

established that materially and adversely affects the interests of the Certificateholders, UBS

RESI "shall repurchase the affected Mortgage Loan from the Trustee *at the Purchase Price,*" (Ex.

C at 61; Ex. D at 89; Ex. E at 73-74), defined as  "a price equal to the *outstanding Principal*

*Balance* of such Mortgage Loan as of the date of purchase, plus all accrued and unpaid interest

thereon . . .," (Ex. C at 47; Ex. D at 61; Ex. E at 56.)[12]  Under the definition of "Principal

---

[12]  The Trustee may also recover "costs and damages incurred by the Trust in connection with any violation of such Mortgage Loan of any predatory or abusive lending law."  (*Id.*)

Balance," the PSAs provide that "[t]he Principal Balance of any Mortgage Loan that […] has

become a Liquidated Loan […] *shall be zero*."  (Ex. C at 46; Ex. D at 61; Ex. E at 55.).

"Liquidated Loans" are defined as (i) loans that have been liquidated and as to which the

Servicer or Master Servicer "has determined . . . that it has received all amounts it expects to

receive in connection with the liquidation of such Mortgage Loan, including the final disposition

of an REO Property" (ii) loans that become 180 days or more delinquent.  (Ex. C at 34; Ex. D at

48; Ex. E at 45.)[13]

Thus, according to the plain terms of the PSAs, any loan that was liquidated or in

default for more than 180 days is deemed a Liquidated Loan and the Purchase Price for such

loans "shall be zero."  Given this unambiguous contractual language, such loans are not subject

to repurchase under the Sole Remedy Provision.  *Greenfield v. Philles Records*, 98 N.Y.2d 562,

569 (2002) ("a written agreement that is complete, clear and unambiguous on its face must be

enforced according to the plain meaning of its terms"); *Primeco, Inc. v. Artemis, S.A.*, No. 95 Civ.

3843, 1995 WL 766311, at *3 (S.D.N.Y. Dec. 29, 1995) (Baer, J.) (same).[14]  But the Complaint's

---

[13]  Liquidated Loans are defined fully in the PSAs as:

   (i) a defaulted Mortgage Loan (including any REO Property) which was liquidated in the calendar
   month preceding the month of such Distribution Date and as to which the applicable Servicer or
   Master Servicer, as the case may be, has determined . . . that it has received all amounts it expects tot
   receive in connection with the liquidation of such Mortgage Loan, including the final disposition of
   an REO Property or (ii) any Mortgage Loan that becomes 180 days or more delinquent in the calendar
   month preceding the month of such Distribution Date.

(Ex. C at 34; Ex. D at 48; Ex. E at 45.)  The PSAs define "REO Property" as "a Mortgaged Property
acquired by the Trust Fund through foreclosure, deed-in-lieu of foreclosure, repossession or otherwise in
connection with a defaulted Mortgage Loan.  (Ex. C at 48.)

[14]  *See also CIFG Assur. N. Am., Inc. v. Assured Guar. Corp.*, 932 Misc. 3d 1202 (table), 2011 WL
2535029, at *5 (Sup. Ct. N.Y. County 2011) ("When interpreting a written instrument, the intention of the
parties should be determined from the language of the instrument . . . ."); *Abuelhija v. Chappelle*, 2009
WL 1883787, at *5 (S.D.N.Y. June 29, 2009) (Baer, J.) (language of settlement agreement was
unambiguous and thus extrinsic evidence of the parties' intent was inadmissible).  Strict application of the
a contract's plain language is particularly apt where, as here, there are sophisticated parties on either end

blunderbuss pleading fails to state whether any (or all) of the loans fall within the purview of the

Sole Remedy Provision.  Without more, Plaintiffs cannot state a claim for breach of contract.

*Gonzalez v. Vidal*, 28 Misc. 3d 1215, 2010 WL 2977929, at *3-4 (Sup. Ct. N.Y. County July 30,

2010) (dismissing breach of contract claim because unambiguous terms of agreement

contradicted plaintiff's claims that defendant was obligated to conduct inspection).

The recent decision in *MASTR v. WMC*, 2012 WL 4511065 (D. Minn. Oct. 1,

2012), is on all fours with the instant action and is particularly instructive.  The *MASTR* case

involved a substantially similar PSA for another UBS RESI-sponsored RMBS transaction, and

the defendant loan originator alleged to have breached R&W in connection with certain

mortgage loans moved for summary judgment on the ground that it was not required to

repurchase loans that had been liquidated prior to tender.  The court held that the "'Repurchase

Price,'" as defined by the plain terms in the relevant agreement, was calculated as the "Stated

Principal Balance" as of the date of repurchase.  *Id.* at *6 n.9.  Applying this definition and

looking solely at the language of the agreement, the court concluded that "the repurchase price of

the 80 loans, calculated per the terms of the Purchase Agreement, would amount to $0 per loan

were the Trustee able to compel repurchase . . . ."  *Id.*  As a matter of law, the unambiguous

language of the PSAs compels the same result here.

Moreover, the definition of Liquidated Loans and its limitation on UBS RESI's

liability are critical to the careful allocation of risk for loans allegedly in breach of R&W as

between the parties (and non-parties) to the PSAs.  By exempting Liquidated Loans from

repurchase, the PSAs effectively place an affirmative obligation on any party seeking repurchase

_____

of an arm's-length, negotiated transaction.  *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F.
Supp. 2d 375, 410 (S.D.N.Y. 2011) ("Deliberate choices by 'sophisticated, counseled parties dealing at
arm's length' in a 'multimillion dollar transaction' must be given effect."); *Interpharm, Inc. v. Wells
Fargo Bank, N.A.*, 2010 WL 1257300, *7 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 655 F.3d 136 (2d Cir. 2011).

to diligently monitor the performance of the mortgage loans to ensure that UBS RESI is notified of a potential breaching loan at the first possible instance.  This obligation not only accords with the parties' overall intent (as evidenced in other provisions of the PSAs, such as the requirement in the Sole Remedy Provision that notice of alleged loan defects must be given "prompt[ly]" (*supra* Section B.2)), but necessarily prevents parties from sitting on their hands for years while losses mount and then asserting hindsight-based and indiscriminate *en masse* repurchase demands – precisely what Assured and Plaintiffs have done in these actions.  *See* Memorandum of Law in Support of Motion to Dismiss*, Assured*, 12-cv-1579, ECF No. 8 at 12.

### 2.      UBS RESI Cannot Repurchase Loans For Which the Underlying Properties Have Been Sold

Plaintiffs also conveniently ignore the fact that UBS RESI *cannot* repurchase a Mortgage Loan once the property securing the loan has been sold, for the simple reason that such mortgages no longer exist.  The PSAs expressly provide that "'Mortgage Loan' *shall include*, but not be limited to *the related Mortgage and the related Mortgage Note*." (*Supra* Section B.2.)[15] Generally speaking, "a 'mortgage loan' is a loan secured by a mortgage or deed on real property" *MASTR v. WMC*, 2012 WL 4511065, at *6 (citing Black's Law Dictionary (9th ed. 2009)), and the sale of the property underlying the loan extinguishes the mortgage as a matter of law.  In most jurisdictions (including California, where a large number of the properties securing the subject Mortgage Loans are located),[16] a sale of the property securing the mortgage loan "*extinguishe[s] the note and deed of trust*" and, in many instances, the debt owed to the mortgagee as well.  *Esoimeme v. Wells Fargo Bank*, No. Civ. S-10-2259, 2011 WL 3875881, at

---

[15] The PSAs further define "Mortgage" as "[t]he mortgage, deed of trust or other instrument creating a second lien on an estate . . . " and "Mortgage Note" as "[t]he original executed note or other evidence of the indebtedness of a Mortgagor under a Mortgage Loan." (*See, e.g.*, Ex. C at 36-37.)

[16] (*See* Exs. F - H.)

*7 (E.D. Cal. Sept. 1, 2011); *see also Walnut Manor Assoc. v. Keys*, 2010 WL 3412131, at *6

(Cal. App. 3rd Dist. 2010) ("[t]he sale of real property in a nonjudicial foreclosure *extinguishes*

*the underlying debt*"); *Mendez v. Oakmont Mortg. Co., Inc.*, No. 10cv1970 DHS (WMC), 2010

WL 4818000, at *2 (S.D. Cal. Nov. 22, 2010) ("[a]lthough tender is required if the mortgage is

still in effect, in this case the foreclosure sale has already occurred, *and thus the mortgage has*

*been extinguished*"); *Gratin v. Wiggins*, 23 Cal. 16, 31 (1863) (foreclosure and sale of property

"clearly operate as an *extinguishment of the mortgage*").[17]

        Thus, once the underlying property is sold, the "Mortgage Loan" – which, under

the PSAs, "*shall include* . . . the related Mortgage and the related Mortgage Note" (*supra* Section

B.2) – no longer exists and UBS RESI cannot repurchase it.  *See Kel Kim Corp. v. Cent. Mkts.,*

*Inc.*, 70 N.Y.2d 900, 902 (1987) (a party's performance is excused "when the destruction of the

subject matter of the contract or the means of performance makes performance objectively

impossible").  Several courts have refused to enforce the repurchase of loans in similar

circumstances.  Most notably, in *MASTR v. WMC*, the court addressed the question of "whether

foreclosure on the properties securing the mortgage loans extinguishes the loans, and renders

---

[17]  The law in other relevant states is similar.  *See, e.g.*, *Nack Holdings, LLC v. Kalb*, 13 So. 3d 92, 94 n.2
(Fla. Dist. Ct. App. 2009) (under Florida law, following foreclosure, "[t]he mortgage is merged into the
judgment, is thereby extinguished, and 'loses its identity.'"); *MASTR*, 2012 WL 4511065, at *4 ("[U]nder
the law of many states, including New York, a foreclosure decree operates to merge the interests of
mortgagor and mortgagee, and vest in the purchaser the entire interest and estate as it existed at the date
of the mortgage."); *First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 WL 3273071, at *4
(N.D. Ill. July 27, 2011) (under Illinois law, "a default order or foreclosure decree merges the real estate
mortgage and the mortgage indebtedness into a judgment" leaving no mortgage loan to be repurchased);
*In re Roach*, 824 F.2d 1370, 1377 (3d Cir. 1987) (Under New Jersey law, "the mortgage is merged into
the final judgment of foreclosure and the mortgage contract is extinguished"); *Peterson v. Metro. Life Ins.
Co.*, 248 N.W. 667, 668 (Minn. 1993) (Under Minnesota law, "[t]he mortgage, both as contract and
security, [is] exhausted by the foreclosure"); *Reinke v. Nw. Trs. Servs.*, No. 09-19609, 2011 WL 5079561,
at *10 (Bankr. W.D. Wash. Oct. 26, 2011) (Washington law); *Conte v. Marine Lumber Co.*, 848 N.E.2d
1246, 1248 n.5 (Mass. App. Ct. 2006) (Massachusetts law); *Samuel I. White, P.C. v. Caudle*, No. 184721,
2004 WL 1879135, at *4 (Va. Cir. Ct. 2004) (Virginia law).

them unavailable for repurchase." 2012 WL 4511065, at *4. Concluding that the underlying mortgages were extinguished upon foreclosure, the court held that "the loans *are not available for repurchase*." *Id.*; *see also id.* at *5 ("The Court finds that reading the 'Mortgage Loan' definition to contemplate repurchase following foreclosure and sale of the collateral securing the loans would elevate form over substance, sit uneasily with other provisions of the Purchase Agreement, and be contrary to both the apparent intent of the parties and common sense").

Similarly, in *First Place Bank*, 2011 WL 3273071, in granting defendant's motion to dismiss, the court rejected as "nonsensical" plaintiff's argument that the loan originator was required to repurchase mortgage loans that were no longer available for repurchase following foreclosure. *Id.* at *4-5 (plaintiff's claim "fails to create a plausible entitlement to relief"); *see also Lehman Bros. Holdings v. Key Fin. Corp.*, 2011 WL 1296731, at *11 (M.D. Fla. Mar. 31, 2011) (applying New York law and stating "[i]t is not clear to the Court how a loan that has been liquidated could be repurchased").

This indisputable consequence is also reflected in the PSAs' definition of Purchase Price, which, as noted, stipulates that UBS RESI is required to repurchase a Mortgage Loan at its "Principal Balance." (*Supra* Section B.2.) Because there is *no* remaining Principal Balance for loans where the underlying property was sold and the debt was extinguished, UBS simply cannot repurchase them. *See MASTR v. WMC*, 2012 WL 4511065, at *6 n.9 (where agreement set repurchase price at "$0 per loan," parties "did not contemplate the repurchase remedy as being applicable").[18] Once again, by ignoring these bargained-for limitations on UBS

---

[18] This conclusion is also consistent with the parties agreed-upon definition of Liquidated Loans – the Purchase Price of which is contractually set at zero. In addition to Mortgage Loans that are 180 days or more delinquent, Liquidated Loans are also defined to include any "defaulted Mortgage Loan . . . as to which the applicable Servicer or Master Servicer, as the case may be, has determined . . . that it has

RESI's liability, Plaintiffs fail to allege facts to show that UBS RESI breached any obligation to repurchase the loans at issue. *Anglo-German Progressive Fund, Ltd. v. Concorde Group, Inc.*, 2010 WL 3911490, at *13 (S.D.N.Y. Sept. 14, 2010) (dismissing claims where plaintiff failed to "allege[] facts showing that the defendants breached any obligation under [agreements]").

### B. Plaintiffs Have Failed to Allege Performance of the Trustee's Contractual Obligations

Not only do Plaintiffs fail adequately to allege that any of the Mortgage Loans referenced in the Complaint are properly the subject of repurchase, they similarly fail to allege that the other parties to the PSAs complied with their contractual obligations to provide "prompt notice" of breaches of R&W or that the Trustee "[u]pon receiving notice of a breach . . . in turn notif[ied] [UBS RESI] of such breach." (*Supra* Section B.2.) Under New York law, unless a plaintiff has performed the contract pursuant to its terms, the plaintiff has not established all the required elements to sustain a breach of contract claim. *See Plotch v. Citimortgage, Inc.*, 2012 WL 1049991, at *3 (Sup. Ct. N. Y. County Mar. 13, 2012) ("[w]here the plain language of the contract establishes obligations on the other party that have not been met, dismissal is warranted"); *see also Chappo & Co., Inc. v. Ion Geophysical Corp.*, 83 A.D.3d 499, 500 (Sup. Ct. N.Y. County Apr. 14, 2011) (dismissing breach of contract claim "because plaintiff fails to allege its own performance under the contract or an actionable breach by defendant").

Plaintiffs do not and cannot allege that prompt notice was provided to UBS RESI. Indeed, the laundry list of breach notices recited in the Complaint extends for *over two years –*

_____

received *all amounts* it expects to receive in connection with the liquidation of such Mortgage Loan, *including the final disposition of an REO Property*." (*Supra* n.13.) It is self-evident that if the property securing the Mortgage Loan is sold, the Servicer or Master Servicer "has received all amounts it expects to receive in connection with the liquidation" of such loans – indeed, the mortgage notes no longer exist and the collateral is in the hands of a third party. In such instances, the plain language of the PSAs dictates that the Purchase Price of such loans is set at zero and UBS RESI is not required to repurchase them.

from August 9, 2010 to September 27, 2012.  (Ex. A ¶¶ 37-38.)[19]  From the face of the Complaint itself, it is clear that notice to UBS RESI for many of these alleged breaches was anything but "prompt."  *GS Agrifuels Corp. v. Chaykin*, No. 101401/2009, at \*4-6 (Sup. Ct. N.Y. County Aug. 3, 2010) (complaint "not properly pled" because it "does not allege that the plaintiff performed its obligations under the Acquisition Agreements, which is a necessary element of a breach of contract claim"); *M&I Bank*, 2012 WL 602365, at \*5 ("*[a]s a matter of law*, five months is not 'prompt'" for notice of breaches triggering repurchase).[20]

Moreover, nowhere in the Complaint do Plaintiffs allege that the Trustee complied with its obligation to notify UBS RESI of breaches upon the Trustee's receipt of prompt notice from the other parties.  Rather, the facts alleged in the Complaint illustrate that the Trustee only notified UBS RESI in connection with seven of Assured's twenty-one breach notices and had not provided *any notice* to UBS RESI with respect to twelve breach notices by Assured over a nearly two-year period from August 2010 to March 2012.  (*Supra* Section B.2.) True to its word to the Proposed Intervenors, the Trustee "[took] no action" here (*supra* Section B.3) – it failed to perform its obligations and did not provide the required notice under the PSAs and, accordingly, may not now bring an action to enforce the Sole Remedy Provision.  *Chappo*, 83 A.D.3d at 500.

---

[19] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings, LLC*, 2012 WL 4503731, at \*2 (Oct. 1, 2012) (defendant did not have "fair notice" of later repurchase demands simply on account of earlier demands involving different loans), *upholding on reconsideration*, 2012 WL 3201139, at \*18 (Aug. 7, 2012).

[20] *See also MASTR*, 2012 WL 4511065, at \*6 (noting that although discovery into issue would be allowed, "[u]nder New York law, question of whether notice was prompt – that is, given within a reasonable time – can be determined *as a matter of law*.") (citing *Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, 2002 WL 818082, at \*5, 11-12 (S.D.N.Y. Apr. 30, 2002)).

Indeed, the Sole Remedy Provision is not a one-way street – while it imposes on UBS RESI the obligation to repurchase loans in certain circumstances, it similarly imposes reciprocal obligations on other parties to the PSAs to ensure that UBS RESI receives prompt notice of breaches in order to protect UBS RESI's bargained-for right to mitigate its damages. Thus, "[g]iven the momentous consequences of breaching the warranty clause, the benefit of [UBS RESI's] bargain can only be achieved through [] strict compliance with the 'prompt written notice' requirement." *See M&I Bank*, 2012 WL 602365, at *5.  Because Plaintiffs fail to allege that UBS RESI was given prompt notice of the alleged breaches – and the allegations in the Complaint suggest *precisely the opposite*– their claim should be dismissed.

## CONCLUSION

For the above separate and independent reasons, UBS RESI respectfully requests that the Complaint be dismissed with prejudice.

Dated:   New York, New York
        October 22, 2012

                                      Respectfully submitted,

                                    /s/ Jay B. Kasner
                                   Jay B. Kasner
                                   Scott D. Musoff
                                   Paul J. Lockwood (*pro hac vice*)
                                   Alexander C. Drylewski
                                   SKADDEN, ARPS, SLATE,
                                     MEAGHER & FLOM LLP
                                   Four Times Square
                                   New York, New York 10036
                                   Phone:  (212) 735-3000

                                   *Attorneys for Defendant UBS Real Estate Securities Inc.*