UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3, | 12 Civ. 7322 (HB) |
| Plaintiffs, | ECF Case |
| | Electronically Filed |
| -against- | |
| UBS REAL ESTATE SECURITIES INC., | |
| Defendant. | |

**OPPOSITION OF MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3 BY U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE, TO THE MOTION BY UBS REAL ESTATE SECURITIES INC. TO DISMISS THE COMPLAINT**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Philippe Z. Selendy
Adam M. Abensohn
Nicholas F. Joseph
Sean P. Baldwin

51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  212-849-7000
Facsimile:  212-849-7100

*Attorneys for Plaintiffs MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1, and MASTR Adjustable Rate Mortgages Trust 2007-3, acting through U.S. Bank National Association, solely in its capacity as Trustee of the Trusts*

November 27, 2012

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND ................................................................4

    A.    Plaintiff Trusts Issued Certificates Backed By The Mortgage Loans.....................4

    B.    Assured's Forensic Review Demonstrates Pervasive Breaches Of UBS Real Estate's Representations and Warranties........................................5

    C.    UBS Real Estate's Breaches Of Its Repurchase Obligations................................5

    D.    UBS Real Estate's Breaches Continue To Inflict Substantial Harm On Certificateholders ................................................................6

    E.    The Complaint ................................................................7

ARGUMENT ................................................................7

I.    THE TRUSTS, ACTING THROUGH THE TRUSTEE, ARE ENTITLED TO ENFORCE UBS REAL ESTATE'S REPURCHASE OBLIGATIONS...........................8

II.    THE TRUSTS' CLAIMS ARE NOT BARRED BY CONTRACT ...................................9

    A.    The Trusts Are Entitled To Seek Money Damages For UBS Real Estate's Breach Of Its Repurchase Obligations.....................................9

    B.    The Trusts Are Entitled To Recover Damages For Assured's Losses..................14

III.    THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT .................14

    A.    The Complaint Adequately Alleges That UBS Real Estate Failed To Comply With Its Repurchase Obligations ...........................................14

            1.    UBS Real Estate Cannot Escape Liability For "Liquidated Loans"..........15

            2.    UBS Real Estate Cannot Escape Liability For Mortgage Loans On Which The Underlying Properties Were Foreclosed ................................20

    B.    The Complaint Adequately Alleges Performance Of Notice Obligations............22

CONCLUSION................................................................24

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*AMBAC Indemn. Corp. v. Bankers Trust Co.*,
    573 N.Y.S.2d 204 (N.Y. Sup. Ct. 1991) ...................................................................14

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
    No. 11 Civ. 2375 (JSR), 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) .................2, 15, 16, 19

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*,
    No. 12-CV-1579 (HB) (S.D.N.Y. Aug. 15, 2012)...............................2, 8, 10, 11, 23

*Assured Guar. Mun. Corp. v. DLJ Mortg. Cap., Inc.*,
    No. 652837/2011 (N.Y. Sup. Ct. Oct. 11, 2012) ...................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................7

*Bensen v. Am. Ultramar Ltd.*,
    No. 92-CV-4420, 1997 WL 317343 (S.D.N.Y. Apr. 19, 2007) ......................18, 20

*Carpenters & Millwrights Health Ben. Trust Fund v. Domestic Insulation Co.*,
    387 F. Supp. 144 (D. Colo. 1975) .....................................................................9

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).............................................................................7

*First Place Bank v. Skyline Funding, Inc.*,
    No. 10-CV-2044, 2011 WL 3273071 (N.D. Ill. July 27, 2011)..............................21

*Kirschbaum v. Elizabeth Ortman Trust of 1977*,
    No. 03-24492, 2004 WL 1372542 (Sup. Ct. Suffolk Cnty. 2004)..........................9

*LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*,
    No. 02-CV-9916 (RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005) ...............11

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*,
    237 F. Supp. 2d 618 (D. Md. 2002) ......................................................11, 13, 21

*LaSalle Bank Nat'l Ass'n v. CIBC, Inc.*,
    No. 08-CV-8426 (WHP), 2012 WL 112208 (S.D.N.Y. Jan. 12, 2012)...................11

*Lehman Bros. Holdings v. Key Fin. Corp.*,
    No. 09 Civ. 623-T-17EAJ, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011)............21

*Lehman Bros. Holdings, Inc. v. Nat'l Bank of Ark.*,
    No. 10 Civ. 02012, 2012 WL 2389868 (E.D. Ark. June 25, 2012) ............12, 17, 20

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*,
    843 F. Supp. 2d 996 (D. Minn. 2012)................................................................13

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*,
  No. 11 Civ. 2542 (PAM/TNL), 2012 WL 4511065 (D. Minn. Oct. 1, 2012) .................17, 20

*M&I Bank, FSB v. Coughlin*,
  No. CV 09-02282-PHX-NVW, 2012 WL 602365 (D. Ariz. Feb. 24, 2012)...................13, 23

*Miller Inv. Trust v. Morgan Stanley & Co. Inc.*,
  No. 11-C 2012 WL 3017690 (D. Mass. July 24, 2012).........................................................9

*Muhammad v. Rabinowitz*,
  No. 11 Civ. 2428 (HB), 2012 WL 1155098 (S.D.N.Y. Apr. 6, 2012).....................................7

*Reape v. N.Y. News, Inc.*,
  122 A.D.2d 29 (2d Dep't 1986) ...................................................................................18, 20

*Resolution Trust Corp. v. Key Fin. Servs., Inc.*,
  280 F.3d 12 (1st Cir. 2002)...............................................................................11, 18, 19, 20

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)..................................................................................................7

*Tsering v. Wong*,
  No. 08 Civ. 5633 (JGK), 2008 WL 4525471 (S.D.N.Y. Oct. 3, 2008) ...................................8

*Two Guys from Harrison-N.Y. v. SFR Realty Assoc.*,
  63 N.Y.2d 396 (1984) .........................................................................................................17

*Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*,
  No. CV-08-1125-C, 2011 WL 3739170 (W.D. Okla. Aug. 23, 2011) .......................11, 20, 21

*Williams v. Bradshaw*,
  459 F.3d 846 (8th Cir. 2006) ................................................................................................8

*Zuckerwise v. Sorceron Inc.*,
  735 N.Y.S.2d 100 (1st Dep't 2001) .....................................................................................10

Plaintiffs MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1, and MASTR Adjustable Rate Mortgages Trust 2007-3 (collectively, the "Trusts"), acting through U.S. Bank National Association, solely in its capacity as trustee for the Trusts (the "Trustee"), respectfully submit this memorandum of law in opposition to the motion by Defendant UBS Real Estate Securities Inc. ("UBS Real Estate") to dismiss the Trusts' complaint ("Complaint") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case arises out of UBS Real Estate's breaches of its representations and warranties concerning the credit quality and characteristics of mortgage loans ("Mortgage Loans") underlying "mortgage pass-through certificates" ("Certificates") issued by the Trusts and purchased by investors ("Certificateholders").  Although on notice of such breaches of its representations and warranties, UBS Real Estate has consistently failed to repurchase defective Mortgage Loans, despite a clear contractual obligation to do so under the applicable Pooling and Servicing Agreements ("PSAs").

In its motion, UBS Real Estate raises arguments that are inappropriate for resolution under Rule 12(b)(6), as well as unsupportable in the face of the facts alleged and settled law. *First*, UBS Real Estate argues that because the Trusts, rather than the Trustee, are named as plaintiffs, the Complaint must be dismissed.  But the very first sentence of the Complaint makes clear that these claims are brought *by the Trustee*, on behalf of the Trusts, stating that the Trusts are "acting through U.S. Bank National Association, solely in its capacity as Trustee . . . for the Transactions," and that the Trustee "by its attorneys, . . . alleges as follows . . . ."  In any event, there is no authority—and UBS Real Estate cites to none—for its contention that, under New York law, the Trusts cannot sue in their own right.  Even if the Trustee were a necessary plaintiff

and were not adequately named as such, the proper course would be simply to join it as an indispensable party, not to dismiss the Complaint.  *See* Part I below.

*Second,* UBS Real Estate argues that the Trusts are barred by the "sole remedy" provision in the PSAs from seeking money damages for UBS Real Estate's breach of its repurchase obligations.  But the "sole remedy" provision does not apply to claims for breach of the repurchase obligation; it applies only to breaches of the representations and warranties themselves, and only if UBS Real Estate complies with its obligation to repurchase within the specified time (90 days from notice or UBS Real Estate's discovery of the underlying breaches, whichever is earlier).  UBS Real Estate has not done so, and its failure entitles the Trusts to damages.  *See* Part II.A below.

*Third*, UBS Real Estate argues that the Trusts cannot recover damages suffered by Assured Guaranty Municipal Corp. ("Assured"), in its capacity as Certificate Insurer.  This is refuted by the express terms of the PSAs, including those on which UBS Real Estate expressly relied in another action before this Court, brought by Assured.[1]  In the Assured action, UBS Real Estate conceded that, to the extent Assured pays principal or interest due to an insured Certificateholder, Assured is fully subrogated under the PSAs to the payment rights of such Certificateholder, including the right to payments of interest and principal.  Because Assured stands in the shoes of insured Certificateholders, the Trusts can recover damages on behalf of Assured.  *See* Part II.B below.

*Fourth*, UBS Real Estate's argument that its repurchase obligations do not apply to "Liquidated Loans" is without foundation in the PSAs and has been rejected in this district.  *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375 (JSR), 2011 WL 5335566

---

[1]   *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, 12 Civ. 1579 (HB) (S.D.N.Y. Mar. 15, 2012).

(S.D.N.Y. Oct. 31, 2011).  UBS Real Estate's construction of the PSAs would unjustifiably exculpate it from liability for Mortgage Loans causing the greatest harm, including to the Trusts, the Certificateholders, and Assured, *i.e.*, loans that are in default without any prospect of repayment.  Moreover, contrary to UBS Real Estate's contention, the PSAs do not set the purchase price for liquidated loans at zero.  Rather, they set the "Principal Balance" at zero for loans that are liquidated during "the related Prepayment Period"—a concept which has no meaning in the context of UBS Real Estate's obligation to repurchase defective Mortgage Loans, but is only meaningful in the context of distributions to Certificateholders.  Thus, this definition cannot apply to the calculation of the price of Mortgage Loans for the purpose of repurchase.

UBS Real Estate's further argument that its repurchase obligations do not apply to foreclosed loans is contradicted by the language of the PSAs.  Even if UBS Real Estate's argument as to liquidated and foreclosed loans were correct—which it is not—that would not warrant dismissal of the Complaint, since a great many of the Mortgage Loans were neither liquidated nor foreclosed when repurchase was sought.  Moreover, whether Mortgage Loans became liquidated or foreclosed before the relevant notice period expired is highly fact-specific and therefore cannot be resolved on a motion to dismiss, even if UBS Real Estate's arguments had any merit, which they do not.  *See* Part III.A below.

*Finally*, UBS Real Estate's argument that it need not comply with its repurchase obligations because it was not "promptly" notified of its breaches of representations and warranties is also fact-intensive and therefore inappropriate for resolution on a motion to dismiss. The PSAs require UBS Real Estate to repurchase defective loans upon "discovery" of the breach. Thus, regardless of when any entity provided "notice," UBS Real Estate remained under an obligation upon learning that the loans were defective.  It is beyond question, moreover, that

UBS Real Estate was promptly alerted to its breaches and consequent obligations.  At best, this is a factual question that cannot be resolved on a motion to dismiss.  *See* Part III.B below.

UBS Real Estate' motion for dismissal should therefore be denied in its entirety.

## FACTUAL BACKGROUND

### A.    Plaintiff Trusts Issued Certificates Backed By The Mortgage Loans

This action arises out of three transactions (the "Transactions") sponsored by UBS Real Estate.[2]  As sponsor, UBS Real Estate acquired thousands of individual Mortgage Loans that it sold to the Trusts, which, in turn, issued Certificates that were then sold to Certificateholders.  Compl. ¶¶ 1-2.  Each Transaction is governed by its own substantially similar PSA, which sets forth the rights and obligations of the parties.  Compl. ¶ 26.  UBS Securities LLC acted as underwriter—meaning that it purchased all of the Certificates immediately upon their issuance, before selling them on to investors.  Compl. ¶ 23.

The Certificates were sold with the benefit of a comprehensive set of representations and warranties from UBS Real Estate (contained in the PSAs), vouching for the quality of the Mortgage Loans.  Compl. ¶ 3.  Among other things, UBS Real Estate represented and warranted that: (i) the information in the mortgage loan schedules was true and correct in all material respects; (ii) the Mortgage Loans were underwritten in accordance with the underwriting guidelines of the originators of the Mortgage Loans; and (iii) with respect to certain of the Mortgage Loans in the 2006-OA2 and 2007-1 Transactions, the originating lender made a reasonable determination that at the time of origination the borrower had the ability to make

---

[2]   The Transactions are: MASTR Adjustable Rate Mortgages Trust 2006-OA2 ("2006-OA2"); MASTR Adjustable Rate Mortgages Trust 2007-1 ("2007-1"); and MASTR Adjustable Rate Mortgages Trust 2007-3 ("2007-3").  Compl. ¶ 2.  The relevant provisions of the PSA governing each Transaction are attached to the Declaration of Adam M. Abensohn, dated November 26, 2012 ("Abensohn Decl."), filed herewith, as Exhibits A (2006-OA2 PSA), B (2007-1 PSA), and C (2007-3 PSA).

timely payments on each mortgage loan.  Compl. ¶¶ 3, 28; Abensohn Decl. Exs. A-C, § 2.03, Schedule II.  The Certificates also benefited from an express contractual obligation by UBS Real Estate to cure, repurchase, or replace mortgage loans that breached these representations and warranties within 90 days of notice or UBS Real Estate's discovery of such breaches, whichever was earlier.  Compl. ¶¶ 3, 29; Abensohn Decl. Exs. A-C, § 2.03.

B.     **Assured's Forensic Review Demonstrates Pervasive Breaches Of UBS Real Estate's Representations and Warranties**

Despite UBS Real Estate's representations and warranties concerning the quality and characteristics of the Mortgage Loans, those loans have become delinquent at a staggering rate. Compl. ¶ 31.  This extremely poor performance prompted Assured, as Certificate Insurer, to conduct a forensic review of the Mortgage Loans in order to determine whether they complied with UBS Real Estate's representations and warranties.  Compl. ¶ 32.  The forensic review involved an examination of the legal and credit documentation supporting each Mortgage Loan. *Id.*  It revealed that UBS Real Estate breached its representations and warranties as to an overwhelming number of the Mortgage Loans.  Specifically, the forensic review revealed that there were 4,642 defective loans with an original unpaid principal balance of approximately $2,025,238,559.83 across all three Transactions.  Compl. ¶ 5.  Assured, as Certificate Insurer, is expressly provided with the right to provide notice of breaches of representations or warranties to UBS Real Estate under the PSAs.  Abensohn Decl. Exs. A-C, § 2.03.

C.     **UBS Real Estate's Breaches Of Its Repurchase Obligations**

Pursuant to Section 2.03 of each PSA, if UBS Real Estate (the "Transferor") fails to resolve a breach of a representation or warranty (which materially and adversely affects the interest of the Certificateholders or the Certificate Insurer, here Assured) within the earlier of 90 days of UBS Real Estate "discovering" it or receiving written notice thereof, UBS Real Estate

5

must repurchase the defective Mortgage Loan or otherwise cure the breach (or, under circumstances no longer applicable, to replace the defective loan): "The Transferor hereby covenants that within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to this Section 2.03 which materially and adversely affects the interest of the Certificateholders or the Certificate Insurer in any Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, . . . (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below." *Id.* ¶ 45; Abensohn Decl. Exs. A-C, § 2.03.

Between August 9, 2010 and September 27, 2012, UBS Real Estate was notified in detail of its breaches of its representations and warranties and consequent repurchase obligations. UBS Real Estate has refused to repurchase all but a small fraction of the defective Mortgage Loans within the 90 day cure or repurchase period, despite its clear contractual obligation to do so. Compl. ¶¶ 5, 40.

> ### D.     UBS Real Estate's Breaches Continue To Inflict Substantial Harm On Certificateholders

UBS Real Estate's breaches have inflicted and continue to inflict substantial harm on Certificateholders. The realized losses suffered by the mortgage loan pools in each Transaction, as at the date of the Complaint, were:  $472,120,624 in the 2006-OA2 Transaction, $413,591,351 in the 2007-1 Transaction, and $645,962,130 in the 2007-3 Transaction (23.45%, 19.7% and 25.01% of the original collateral balances of each Transaction, respectively). Compl. ¶ 6. The remaining loans in the Transactions are also performing extremely poorly. Compl. ¶ 6. Consequently, the Certificateholders' investments are at considerable risk. Assured is also

exposed to tens of millions of dollars in further claim payments under its financial guaranty insurance policies.  Compl. ¶ 6.

### E.    The Complaint

In part on the basis of UBS Real Estate's breaches of the repurchase obligation, Assured filed a complaint against UBS Real Estate on February 2, 2012 (removed to this Court on March 5, 2012).  After this Court dismissed Assured's claim for breach of the repurchase obligation on the ground that only the Trustee could enforce it, the Trustee, on behalf of the Trusts, filed the present Complaint on September 28, 2012.[3]  Pursuant to an agreed schedule, UBS Real Estate filed its Motion to Dismiss on October 22, 2012.  For the reasons that follow, that motion should be denied in its entirety.

## <u>ARGUMENT</u>

To prevail on a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For purposes of such a motion, "the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in the non-movant's favor."  *Muhammad v. Rabinowitz*, No. 11 Civ. 2428 (HB), 2012 WL 1155098, at *1 (S.D.N.Y. Apr. 6, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 504 (2d Cir. 2007)).

In deciding a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted).  As such, the Court may properly consider the governing PSAs.

---

[3]    This Court upheld other of Assured's claims, and this action has been designated as related to Assured's.

I.    **THE TRUSTS, ACTING THROUGH THE TRUSTEE, ARE ENTITLED TO ENFORCE UBS REAL ESTATE'S REPURCHASE OBLIGATIONS**

UBS Real Estate argued, and this Court agreed, that only the Trustee could enforce UBS Real Estate's repurchase obligations under the PSAs.  *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, 12 Civ. 1579 (HB), Dkt. No. 25, slip. op. at 9 (S.D.N.Y. Aug. 15, 2012).  That is precisely what the Trustee has done, as the very first sentence of the Complaint makes clear: the Trusts are "acting *through U.S. Bank National Association, solely in its capacity as Trustee . . . for the Transactions*," and *the Trustee* "by *its* attorneys, . . . alleges as follows . . . ."  Compl. ¶ 1 (emphases added).

Even though there is no dispute that the Trustee is acting for the Trusts, UBS Real Estate argues that the Complaint must be dismissed on the ground that the Trustee is not named as plaintiff in the caption.  This argument is belied by UBS Real Estate's own authority.  As the primary case on which UBS Real Estate relies (Br. 12) makes clear, the caption is not determinative; the body of the complaint is.  *See Williams v. Bradshaw*, 459 F. 3d 846, 849 (8th Cir. 2006) ("[A] caption is not determinative as to who is a party to a suit.").  As UBS Real Estate also acknowledges, the other case on which it relies, *Tsering v. Wong*, No. 08 Civ. 5633 (JGK), 2008 WL 4525471, at *4-6 (S.D.N.Y. Oct. 3, 2008), merely "dismissed [a] defendant not named in [the] caption *or clearly identified in [the] body of [the] complaint.*"  Br. 12 (emphasis added).  Since the Complaint makes clear that the claims alleged here are brought by the Trustee, UBS Real Estate's argument is without merit, even on its own terms.[4]  In any event, UBS Real Estate cites to no New York authority for its contention that the Trusts cannot sue in their own

---

[4]    The fact that this suit is brought by the Trustee on behalf of the Trusts also disposes of UBS Real Estate's argument that only the Trustee has contractual standing to enforce the repurchase obligation.  Br. 12.

right.[5]  Moreover, federal courts in other jurisdictions have allowed claims to go forward even though a Trust, not the trustee, was named as the plaintiff.  *See, e.g.*, *Miller Inv. Trust v. Morgan Stanley & Co. Inc.*, — F. Supp. 2d —, No. 11-CV-12126-JLT, 2012 WL 3017690, at *7 (D. Mass. July 24, 2012).

Even if the Trustee were a necessary plaintiff and were not adequately identified as such, the proper course would be to join it as an indispensable party, not to dismiss the entire Complaint.  *See Carpenters & Millwrights Health Ben. Trust Fund v. Domestic Insulation Co.*, 387 F. Supp. 144, 147-48 (D. Colo. 1975) (amending caption to name trustees rather than trust funds as plaintiffs, and requiring plaintiffs to file more definite complaint identifying the names and addresses of trustees).

## II.   THE TRUSTS' CLAIMS ARE NOT BARRED BY CONTRACT

### A.   The Trusts Are Entitled To Seek Money Damages For UBS Real Estate's Breach Of Its Repurchase Obligations

The PSAs provide that there are two distinct breaches relating to defective Mortgage Loans.  First, if UBS Real Estate breaches its representations or warranties concerning the Mortgage Loans (an "RW Breach") in a manner that materially and adversely affects the interests of Certificateholders or the Certificate Insurer, UBS Real Estate must cure the breach or repurchase the defective Mortgage Loan.  Abensohn Decl. Exs. A-C, § 2.03.[6]  Second, if UBS

---

[5]  The only New York case cited by UBS Real Estate merely holds that trustees "generally sue and are sued in their own capacity."  *Kirschbaum v. Elizabeth Ortman Trust of 1977*, No. 03-24492, 2004 WL 1372542, at *11 (Sup. Ct. Suffolk Cnty. 2004) (citation omitted).

[6]  "The Transferor [UBS Real Estate] hereby covenants that within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to this Section 2.03 which materially and adversely affects the interest of the Certificateholders or the Certificate Insurer in any Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such ninety (90) day period expires prior to the second anniversary of the Closing Date, remove such Deleted Mortgage Loan from the Trust Fund and substitute in its place an Eligible Substitute

Real Estate becomes obligated to repurchase particular Mortgage Loans, as in this case, it will

have 90 days to do so.  UBS Real Estate also breached this requirement (a "Repurchase

Breach").  Abensohn Decl. Exs. A-C, § 2.03.

The "sole remedy" provision applies only to an RW Breach, not to a Repurchase Breach,

which is the subject-matter of the Complaint and which entitles the plaintiffs to seek contract law

remedies.  The PSAs provide:

> It is understood and agreed that the obligation under this Agreement of the
> Transferor to cure, repurchase or replace any Mortgage Loan *as to which a breach*
> *has occurred and is continuing* shall constitute the sole remedy against the
> Transferor *respecting such matters* available to Certificateholders . . . or the
> Trustee on their behalf.

Abensohn Decl. Exs. A-C, § 2.03 (emphases added).  This language does not allow UBS Real

Estate to satisfy its obligations by repurchasing or curing after the 90 days have expired.  The

"breach" which "has occurred or is occurring" is an RW Breach, and "such matters" refers back

to the specific language requiring UBS Real Estate to repurchase the Mortgage Loans within 90

days.  It is thus only to an RW Breach that the sole remedy provision applies,[7] for which the sole

remedy would be cure or repurchase.  The remedy for a Repurchase Breach is money damages.

*See* Compl. Prayer for Relief.

---

Mortgage Loan or Mortgage Loans into the Trust Fund, in the manner and subject to the
conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage
Loans from the Trustee at the Purchase Price in the manner set forth below."  *Id.*  As this
language demonstrates, UBS Real Estate could have elected to substitute the defective
Mortgages with eligible replacement Mortgages, but only within the first two years of each
transaction, which UBS Real Estate concedes.  Br. 10 n.9.

[7]  Even if this provision were ambiguous, which it is not, this would not support
dismissal.  *See Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12-CV-1579 (HB),
slip op. at 5 (S.D.N.Y. Aug. 15, 2012) ("[E]ven if the clause is ambiguous the best movant can
hope for is that it survives this motion to dismiss and at this stage of the litigation it will." (citing
*Zuckerwise v. Sorceron Inc.*, 735 N.Y.S.2d 100, 102 (1st Dep't 2001))).

As numerous courts, including those of this district, have recognized, under New York law the breach of a repurchase obligation is distinct from a breach of the underlying representations and warranties, and the Trusts are entitled to enforce a Repurchase Breach by a claim for damages. *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 638 (D. Md. 2002) ("Under New York law, a loan seller's failure to repurchase non-conforming loans upon demand as required by a contract is an independent breach of the contract entitling the plaintiff to pursue general contract remedies for breach of contract"); *Resolution Trust Corp. v. Key Fin. Servs., Inc.*, 280 F.3d 12, 18 (1st Cir. 2002) (affirming a holding that, because the loan seller committed an independent breach of the loan purchase agreement by failing to repurchase a breaching loan, general damages could be awarded in lieu of the "repurchase price" set out in the contract; "the district court was free to make Home Owners whole, and it did so in terms of the obligation imposed by the contract."); *LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*, No. 02-CV-9916 (RLC), 2005 WL 3046292, at *5 (S.D.N.Y. Nov. 14, 2005) ("The parties agreed to a method of calculating the repurchase price . . . . By awarding damages in the amount that Capco agreed to pay in the event of breach, the court will make LaSalle whole."); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. CV-08-1125-C, 2011 WL 3739170, at *3 (W.D. Okla. Aug. 23, 2011) (awarding damages based on purchase price of loans even though specific performance of repurchase obligation was impossible); *see also Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12-CV-1579 (HB), Dkt. No. 25, slip op. at 5-7 (distinguishing between breaches of representation and warranties and breaches of a repurchase obligation).[8]

---

[8]   In *LaSalle Bank National Ass'n v. CIBC, Inc.*, No. 08-CV-8426 (WHP), 2012 WL 112208, at *1 (S.D.N.Y. Jan. 12, 2012), this district also held that a sole remedy provision did not bar a claim for breach of the repurchase obligation:

This is further confirmed by the recent decision in *Lehman Brothers Holdings, Inc. v. National Bank of Arkansas*, — F. Supp. 2d —, No. 10 Civ. 02012, 2012 WL 2389868 (E.D. Ark. June 25, 2012). There, the plaintiff ("Lehman") alleged that defendant National Bank of Arkansas ("NBA") had breached its representations and warranties in a loan purchase agreement, and brought a claim for breach of NBA's resulting contractual obligation to repurchase the defective loans. NBA moved for summary judgment, among other things, on the ground that Lehman's claim was time-barred because Lehman purchased the loans in 2003 but did not file its complaint until 2010. The Court, applying New York law, held that NBA's breach of its contractual obligation to repurchase defective loans was an independent breach of contract, and that, since no repurchase demand was made until February 1, 2006, Lehman could not have sued on that independent breach before that time. The claim was therefore timely. *Id.* at *5.

*Lehman* makes clear why a Repurchase Breach must be treated as an independent breach from an RW Breach: the elements of each breach are different. To establish a Repurchase Breach, the plaintiff must show not only that representations and warranties have been breached, but also that (1) the obligor has received notice of such breach or has otherwise discovered it, and (2) the obligor has failed to cure or repurchase the defective loan within 90 days of discovery

---

> [T]he [Mortgage Loan Purchase Agreement ("MLPA")] limits LaSalle's remedies with respect to its breach of warranty claims but does not limit LaSalle's remedies where CIBC subsequently breaches its obligation to repurchase or substitute a loan. CIBC offers no compelling reason why the Court should read this provision to mean anything other than what it says. . . . LaSalle is therefore entitled to seek legal remedies on its breach of contract claim arising from CIBC's failure to repurchase or substitute the loan.

Although the sole remedy provision in that case expressly stated that "no limitation of remedy is implied with respect to the Seller's breach of its obligation to cure, repurchase or substitute in accordance with the terms and conditions of this Agreement," *id.* at *1, the case nevertheless recognizes that a breach of the repurchase obligation is independent from a breach of representations and warranties.

12

or notice.  If the trustee establishes these elements, it is not bound by the "sole remedy"

provision and is entitled to pursue "general contract remedies," *La Salle*, 237 F. Supp. 2d at 628,

including damages.

      The cases cited by UBS Real Estate are not to the contrary.  *Assured Guaranty Municipal*

*Corp. v. DLJ Mortgage Capital, Inc.*, No. 652837/2011 (N.Y. Sup. Ct. Oct. 11, 2012) did not

"dismiss[] Assured's claims for money damages," as UBS Real Estate asserts (Br. 14), but rather

dismissed Assured's claim for *consequential* damages.  *See id.*, slip op. at 15-16.  In fact, the

Court held that Assured *was* entitled to damages, albeit limited to the amount of the repurchase

remedy.  *See id.* (Assured's "*damages* for breach of contractual warranties are limited to the

Repurchase Protocol") (emphasis added).  Similarly, *MASTR Asset Backed Securities Trust*

*2006-HE3 v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996 (D. Minn. 2012), did not hold that

monetary damages were unavailable, but rather held that money damages could not be awarded

where repurchase was unavailable, on the basis that, as in *Assured v. DLJ*, damages could not

exceed the amount allowed by the sole remedy of repurchase.  *Id.* at 1001.  *M&I Bank, FSB v.*

*Coughlin*, No. CV 09-02282-PHX-NVW, 2012 WL 602365 (D. Ariz. Feb. 24, 2012) is

irrelevant; it merely held that a plaintiff subject to a sole remedy clause could not sue directly for

breach of representations and warranties, *id.* at *5, which the Trusts' Complaint does not seek to

do.

      Finally, UBS Real Estate has not been denied its "bargained-for" remedy of repurchase

(Br. 15).  As the PSAs provide, UBS Real Estate was entitled to that remedy only if it cured or

repurchased the defective mortgage loans within 90 days.  UBS Real Estate has not done so, and

therefore cannot avoid its general contract liability for Repurchase Breaches.

B.      **The Trusts Are Entitled To Recover Damages For Assured's Losses**

UBS Real Estate's argument that the Trusts cannot recover damages for Assured's losses

ignores that those losses were sustained, in the first instance, by the Trusts (and consequently,

Certificateholders), and that Assured's claim arises out of that harm.  Br. 15-16.  Indeed, the

PSAs expressly provide that, "to the extent the Certificate Insurer [Assured] makes payments,

directly or indirectly, on account of principal of or interest on any Insured Certificate to the

Holder of such Certificate, the Certificate Insurer *will be fully subrogated to the rights of such*

*Holder to receive such principal and interest from the Trust Fund*."  *See* Abensohn Decl., Exs.

A, C, § 12.05 (emphasis added); *see also id.* Ex. B, § 13.05.  As UBS Real Estate itself argued in

its motion to dismiss Assured's action, this provision means that "Assured's rights to recover

payments made pursuant to its financial guaranty obligations are 'fully subrogated' to the rights

of the holders of the Certificates it insures."  Def. Mem. In Supp. Of Mot. to Dismiss Assured's

Compl., at 16; *see AMBAC Indemn. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 206 n.1

(N.Y. Sup. Ct. 1991) (Baer, J.) (financial guaranty provider who sued trustee for breach of

fiduciary duty "stands in the shoes of the bondholders").[9]

III.    **THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT**

A.      **The Complaint Adequately Alleges That UBS Real Estate Failed To Comply**
        **With Its Repurchase Obligations**

UBS Real Estate argues that under the PSAs, UBS Real Estate is not obligated to

repurchase Mortgage Loans which have been "liquidated" or foreclosed.  Br. 17-23.  As an initial

---

[9]  Contrary to UBS Real Estate's assertion (Br. 16), this does not contravene the Court's
prior ruling that the Trustee alone can enforce UBS Real Estate's repurchase obligations.  The
Trustee *is* enforcing these obligations; however, the measure of the Trusts' damages includes the
total losses suffered by Certificateholders and, to the extent it stands in the shoes of
Certificateholders (or is otherwise due payments from the Trust), Assured, as a result of UBS
Real Estate's breach of its repurchase obligations.

matter, it should be noted that, even if this were correct—which it is not—it would not require

dismissal of the Complaint, since a great many of the Mortgage Loans for which the Trusts seek

repurchase were neither "liquidated" nor foreclosed when repurchase was demanded.  Moreover,

even to the extent the Trust's claims involve Liquidated Loans, UBS Real Estate's repurchase

obligation arises upon its "discovery" of the breach, Abensohn Decl. Exs. A-C § 2.03, and it is

plainly a fact question whether any particular Mortgage Loan was liquidated (or foreclosed) as of

the time UBS Real Estate became aware that it was defective.  Thus, UBS Real Estate's

argument, even if correct, would not support dismissal of the Trusts' claims, and, in any event,

those arguments depend upon factual determinations that cannot be resolved on a motion to

dismiss.

Further, for the reasons that follow, UBS Real Estate's construction of the liquidated loan

provision of the PSA is not correct as a matter of contract interpretation, and therefore would not

support a defense even if, as a factual matter, the Trusts' claims were based entirely on liquidated

loans.

### 1.        UBS Real Estate Cannot Escape Liability For "Liquidated Loans"

UBS's argument that it has no obligation to repurchase "Liquidated Loans" because the

"Principal Balance" of such loans is defined as zero under the PSAs (Br. 19), and that it can

therefore escape liability with respect to those Mortgage Loans, is nearly identical to an

argument rejected by the court in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*.  In

*Flagstar*, the court held that the purchase price (there, the "Transfer Deficiency") of "charged-off

loans" (equivalent to "Liquidated Loans" here) could not be zero for purposes of a repurchase

claim, despite language in the applicable agreement defining the "Asset Balance" (here,

"Principal Balance") for such loans as zero.  2011 WL 5335566, at *8.  The court in *Flagstar*

rejected the defendant's construction, since it would render redundant portions of the transaction

15

documents explaining in detail the circumstances in which, and the process by which, the
Transfer Deficiency must be conveyed to the Trust. *Id.* at *7-8. Accordingly, the court held that
the "Transfer Deficiency" for a charged-off loan must be "the amount of the outstanding
principal balance on that loan at the time it was 'charged off' by Flagstar." *Id.* at *8. The same
reasoning applies here. As in *Flagstar*, UBS Real Estate's argument would render superfluous
all the provisions of the PSAs dealing with how and when UBS Real Estate must repurchase
defective Mortgage Loans, including Liquidated Loans (*see* Abensohn Decl. Exs. A-C, § 2.03),
and is therefore untenable.

UBS Real Estate's effort to avoid the holding in *Flagstar* rests on a misreading of the
definition of "Principal Balance" in the PSAs. Contrary to UBS Real Estate's assertion, the
PSAs do not provide that the "Principal Balance" of Liquidated Loans is zero in the context of
repurchase (Br. 18-19); rather, the Principal Balance is zero only where the loan "has become a
Liquidated Loan during the *related Prepayment Period* . . . ." *See* Abensohn Decl. Exs. A-C, §
1.01 (definition of "Principal Balance") (emphasis added).[10] There is no "related Prepayment
Period" here—*i.e.*, in the context of UBS Real Estate's obligation to repurchase defective
Mortgage Loans. The term "related Prepayment Period" only has meaning in the context of
determining the amount of a distribution to Certificateholders by the Trust. *See* Abensohn Decl.
Exs. A-C, § 1.01 (defining "Prepayment Period" as either "the period from and including the
16th day of the month preceding the month in which such Distribution Date occurs and to and
including the 15th day of the month in which such Distribution Date occurs" or "the calendar
month preceding the month in which such Distribution Date occurs," depending on the originator
of the mortgage loan). In that context, it makes sense for the Principal Balance of a Liquidated

---

[10]   UBS Real Estate omits this critical phrase from the definition of Purchase Price
quoted in its brief. *See* Br. 18.

Loan to be zero, because the loss attributed to that Mortgage Loan must be applied to reduce the *Certificates'* principal balances by a corresponding amount, in order to allocate losses to Certificates and to calculate the payments due to them.  The PSAs thus assign a Principal Balance of zero to Liquidated Loans in the "related Prepayment Period" (in the definition of "Principal Balance") because that is when the Certificates' principal balances are reduced.  This occurs solely in the context of determining the Certificates' principal balances and consequently distributions by the Trust to Certificateholders—and not in the context of a claim, like the claim here, arising out of UBS Real Estate's failure to repurchase defective Mortgage Loans.

This language, among other things, distinguishes this case from *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage Corp.*, No. 11 Civ. 2542 (PAM/TNL), 2012 WL 4511065 (D. Minn. Oct. 1, 2012), which, contrary to UBS Real Estate's assertion, is far from "on all fours with the instant action."  Br. 19.  In the absence of any language equivalent to the "related Prepayment Period" language here, the *MASTR* Court held that, since the purchase price of a loan for purposes of repurchase was defined as of the date of repurchase, that price must be zero for all foreclosed loans.  *Id.* at *2-3.  Even if that were correct, that reasoning cannot apply here, since if the purchase price of *all* liquidated loans was zero (on the basis that that was their value as of the date of repurchase), there would be no need to specifically state that the purchase price of loans liquidated "during the related Prepayment Period" was zero, and the latter statement would be redundant.  *See Two Guys from Harrison-N.Y. v. SFR Realty Assoc.*, 63 N.Y.2d 396, 403 (1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." (citation omitted)).[11]

---

[11]    *MASTR* is also distinguishable on two further grounds: (1) the court held that all of the loans at issue in that case had been foreclosed, 2012 WL 4511065, at *1, whereas here many of the loans have been neither foreclosed nor liquidated; and (2) the court in *MASTR* appeared to

Moreover, UBS Real Estate's construction would have the effect of exculpating UBS

Real Estate from liability, and all accountability, for the loans most severely in breach—*i.e.*,

Liquidated Loans.[12]  Even if the contract could be read in this way, this cannot have been the

intent of the parties.  Under these circumstances, it is settled law that the Court should construe

the contract to give effect to the parties' intent.  *See, e.g.*, *Reape v. N.Y. News, Inc.*, 122 A.D.2d

29, 30 (2d Dep't 1986) (declining to adopt "literal reading" of disputed provision, on ground that

"where a particular interpretation would lead to an absurd result, the courts can reject such a

construction in favor of one which would better accord with the reasonable expectations of the

parties. . . . Since the intent of the parties in entering an agreement is a paramount consideration

when construing a contract, even the actual words provided therein may be transplanted,

supplied or entirely rejected to clarify the meaning of the contract."); *Bensen v. Am. Ultramar

Ltd.*, No. 92-CV-4420, 1997 WL 317343, at *4 (S.D.N.Y. Apr. 19, 2007) ("[W]hen the literal

interpretation of a contract would lead to an absurd result, it should be rejected in favor of an

interpretation that would meet the reasonable expectations of the parties." (citation omitted)).

Indeed, it was, in part, precisely to avoid such an unwarranted result that the First Circuit

in *Resolution Trust Corp.* held that general damages could be awarded in lieu of the "repurchase

_____

believe that the plaintiff had conceded that repurchase was not available if a loan had been
"liquidated," specifically alleging that it sought money damages "if specific performance is no
longer available (for example, where a loan has been liquidated and is no longer available for
repurchase)."  *See id.* at *4.  Here, the Trusts do not make any such concessions.

[12]   A Liquidated Loan is defined as a loan that has either been in default for 180 days or
a loan "as to which the [Servicer] has determined . . . that it has received all amounts it expects to
receive."  *See* Abensohn Decl. Exs. A-C, § 1.01.  UBS Real Estate defends its construction of the
PSAs by arguing that it is reasonable for UBS Real Estate to owe nothing where it breaches its
representations with respect to loans that become Liquidated Loans, since this ensures that
aggrieved parties will assert claims relating to such loans promptly, without waiting 180 days.
Br. 19-20.  But this ignores the second prong of the definition of Liquidated Loans, whereby a
loan could become a Liquidated Loan long before six months after delinquency.  Under UBS
Real Estate's construction, it would be impossible for any party to obtain relief as to such a loan,
regardless of how promptly that party were to file suit.

price" in the contract. *Resolution Trust Corp.,* 280 F. 3d at 18; *see* p. 11 above.  The court recognized that the purpose of a repurchase provision is "to shift the risk to the selling party in the event that a dispute arises," *id.*, and that allowing a general damages claim was necessary to prevent the seller from obtaining a "windfall" by taking advantage of the fact that many of loans had since gone "off-line", *id.* at 16, 18—precisely what UBS Real Estate is attempting to do here.

Finally, even if the Principal Balance of all Liquidated Loans were zero (notwithstanding *Flagstar* and notwithstanding the language of the PSAs), there would still be no basis for UBS Real Estate to avoid liability as to such loans on the pleadings.  The PSAs require that UBS Real Estate repurchase defective Mortgage Loans "within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach" of representations and warranties.  *See* Abensohn Decl. Exs. A-C, § 2.03.  Determining the timing of UBS Real Estate's repurchase obligation, and whether any particular loan was "liquidated" at the time that obligation arose, depends on a factual assessment as to when UBS Real Estate discovered the loans were in breach.  In addition, even if particular loans were liquidated at that time, the Principal Balance of those loans is only one part of the "Purchase Price," which also includes "accrued and unpaid interest thereon" and costs and damages incurred by the Trust in connection with any violation by such loan of any predatory or abusive lending law.  *See* Abensohn Decl. Exs. A-C, § 1.01 (definition of "Purchase Price").  There is no basis to conclude that these amounts total zero for any Mortgage Loan that is the subject of the Complaint, and such factual matters cannot be resolved on a motion to dismiss.

2.      **UBS Real Estate Cannot Escape Liability For Mortgage Loans On Which The Underlying Properties Were Foreclosed**

UBS Real Estate's further argument that it cannot be liable to repurchase foreclosed Mortgage Loans because the loans no longer exist for repurchase (Br. 20-23) is contradicted by the express contract language.  "Mortgage Loans" are defined in the PSAs as "[s]uch of the mortgage loans and cooperative loans transferred and assigned to the Trustee pursuant to the provisions hereof as from time to time are held as a part of the Trust Fund (including any REO Property), the mortgage loans so held being identified in the Mortgage Loan Schedule, *notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property.*"  *See* Abensohn Decl. Exs. A-C, § 1.01 (definition of "Mortgage Loans") (emphasis added).  Contrary to UBS Real Estate's assertion that "once the underlying property is sold, the 'Mortgage Loan' . . . no longer exists and UBS RESI cannot repurchase it" (Br. 21), this definition in fact makes explicit that a Mortgage Loan continues to exist notwithstanding the fact that the underlying property has been foreclosed or sold.

Thus, *MASTR v. WMC*, relied on by UBS Real Estate, is distinguishable, since the definition of "Mortgage Loan" in *MASTR* included no such language.  As the Court in that case noted, "*absent a strong textual indication to the contrary* the Court will not . . . hold that a mortgage loan exists independently of the mortgage or deed of trust which secures it."  2012 WL 4511065, at *6 (emphasis added).  Here, there is, at a minimum, a "strong textual indication to the contrary," and *MASTR*'s holding is therefore inapplicable.

Moreover, even if UBS Real Estate's interpretation were correct—which it is not—it would once again lead to unjustifiable results.  Namely, UBS Real Estate would escape liability for the loans which are most damaging to the Trusts, *i.e.*, foreclosed loans.  UBS Real Estate's

construction may be rejected on this ground as well.  *See* p. 18 above; *Reape,* 122 A.D.2d at 130;

*Bensen*, 1997 WL 317343, at *4.

    Indeed, as noted above, this was one of the bases for the First Circuit's decision to allow

a money damages claim in *Resolution Trust Corp. See* pp. 18-19 above.  *Resolution Trust Corp.*

was followed in *Wells Fargo,* where the defendant argued, like UBS Real Estate here, that

repurchase was impossible because the loans had been foreclosed.  The Court held that, even

though repurchase was impossible, "this finding does not foreclose that the appropriate method

of calculating damages is purchase price. . . .  Accordingly, the Court finds that the purchase

price is the correct method of determining Plaintiff's damages caused by Defendant's breach of

warranties."  *Wells Fargo*, 2011 WL 3739170, at *2-3.  Similarly, in *LaSalle v. Lehman Bros.*,

the Court found that the purchase price was the appropriate remedy for Lehman's breaches of

warranty under the parties' PSA, despite the fact that Lehman might not be able to actually buy

back the mortgages due to a pending bankruptcy action.  *LaSalle*, 237 F. Supp. 2d at 638 (stating

that even "if it is not possible for defendant Lehman to repurchase the . . . mortgage loan because

of the pending bankruptcy proceedings, plaintiff may still recover traditional contract damages in

this case," and determining those damages by utilizing the purchase-price calculation).[12]

---

    [12]   The cases cited by UBS Real Estate are inapposite.  In *First Place Bank v. Skyline Funding, Inc.*, No. 10-CV-2044, 2011 WL 3273071, at *5 (N.D. Ill. July 27, 2011), it was not necessary for the court to consider whether damages might be available instead of specific performance of the repurchase obligation because there was a separate indemnification provision in the contract which the court held applicable and which required the defendant "to indemnify plaintiff for losses it incurred as a result of [defendant's] failure to comply with the . . . provisions of the Agreement."  Similarly, in *Lehman Bros. Holdings v. Key Fin. Corp.*, No. 09 Civ. 623-T-17EAJ, 2011 WL 1296731, at *6 (M.D. Fla. Mar. 31, 2011), the plaintiff was not seeking either specific performance of the repurchase obligation or damages for non-compliance, but indemnification pursuant to a contractual indemnity provision.  Thus, again, the court did not consider whether damages might be available if specific performance was impossible.

In any event, again, even if UBS Real Estate's argument as to foreclosed loans were correct—which it is not—that would not mandate dismissal of the Complaint.  In the first place, as noted above, many of the Mortgage Loans for which the Trusts seek repurchase had not been foreclosed when the repurchase demand was made.  *See* p. 15 above.  Moreover, also as noted above, since the PSAs require that UBS Real Estate repurchase defective loans "within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach" of representations and warranties, Abensohn Decl. Exs. A-C, § 2.03, determining the timing of UBS Real Estate's repurchase obligation, and whether any particular loan was foreclosed at the time that obligation arose, depends on a factual assessment as to when UBS Real Estate discovered the loans were in breach.  *See* p. 19 above.  Such factual matters are inappropriate for resolution on a motion to dismiss.

### B.    The Complaint Adequately Alleges Performance Of Notice Obligations

UBS Real Estate's argument that it bears no liability for the substantial losses caused by its breaches because of a lack of "prompt notice" is without merit.  This is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.  Moreover, no party had sufficient information to begin making repurchase demands on UBS Real Estate until after Assured had commenced a forensic review (which is ongoing, as are the notices being delivered to UBS Real Estate) of the thousands of Mortgage Loans in the Transactions to determine whether they breached UBS Real Estate's representations and warranties.  This was commenced promptly after Assured began to receive large numbers of claims on its policies in late 2009.  The first batches of defective Mortgage Loans were not identified until mid-2010.  Since then, UBS Real Estate has been provided with detailed breach notices for defective Mortgage Loans on a rolling

basis, beginning in August 2010 and continuing to the present.  Compl. ¶¶ 37-39.[13]  Thus, far

from indicating delay, this process in fact reflects a thorough and responsible effort to verify the

basis for claims of breach and to exhaust all possible remedies—specifically, repurchase—before

commencing litigation.  If there has been any delay in the process, it is on the part of UBS Real

Estate itself, which has repeatedly stonewalled for lengthy periods after receiving repurchase

demands before finally refusing to repurchase all but a small fraction of the defective loans.[14]

     Moreover, contrary to UBS Real Estate's assertion (Br. 24), the fact that many of the

repurchase demands were made by Assured rather than any other party is immaterial.  This Court

held that Assured was entitled to provide the notice triggering UBS Real Estate's repurchase

obligations.  *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, 12 Civ. 1579 (HB), Dkt.

No. 25, slip op. at 6 (Aug. 15, 2012).  This is because the PSAs only require that "*the party

discovering such breach* shall give prompt notice thereof to the other parties and the Trustee,"

and the "Certificate Insurer" is explicitly included as one of those parties.  Abensohn Decl. Exs.

A-C, § 2.03 (emphasis added).  The PSAs also provide that "[UBS Real Estate] hereby covenants

that within ninety (90) days of the earlier of its discovery or receipt of written notice *from any*

---

    [13]  UBS Real Estate complains that "many" of the breach notices came after August 2010
(Br. 23), but this ignores that the from the outset, notices to UBS Real Estate referenced
widespread breaches, making UBS Real Estate "constructively 'aware'—or, at minimum,
put[ing UBS Real Estate] on inquiry notice-of the substantial likelihood" of breaches throughout
the Transactions.  *Flagstar Bank,* 2011 WL 5335566, at *7.

    [14]  UBS Real Estate's citation to *M&I Bank* for the proposition that "*as a matter of law*,
five months is not 'prompt notice' for notices of breaches triggering repurchase" (Br. 24) is
grossly misleading.  *M&I Bank* involved a *single mortgage loan* of $285,300, on the application
for which the borrower misrepresented his tax information, among other things.  As the Court
noted, the bank "quickly discovered" this misrepresentation when it submitted the borrower's tax
form to the IRS, but then delayed five months before notifying the borrower.  *M&I Bank*, 2012
WL 602365, at *2.  The present case, by contrast, involves *thousands* of mortgage loans, and a
far more complex set of breaches of representations and warranties, which obviously require a
far more extensive investigation, and the parties have acted with all reasonable expedition in
providing breach notices to UBS Real Estate.

*party* of a breach . . . ."  Abensohn Decl. Exs. A-C, § 2.03 (emphasis added).  There can be no doubt that UBS Real Estate was on notice of the breaches or of its contractual obligations at issue.  Any suggestion that UBS Real Estate required more than one notification of the same breaches is untenable.  UBS Real Estate cannot demonstrate any failure to comply with notice requirements—much less establish this as a matter of law, as is required for the purposes of this motion.

## <u>CONCLUSION</u>

For the reasons set forth above, the Trusts respectfully requests that UBS Real Estate's Motion to Dismiss be denied.

Dated: November 27, 2012

New York, New York                    Respectfully submitted,

                                      QUINN EMANUEL URQUHART
                                      & SULLIVAN, LLP

                                      By:  /s Nicholas F. Joseph
                                           Philippe Z. Selendy
                                           (philippeselendy@quinnemanuel.com)
                                           Adam M. Abensohn
                                           (adamabensohn@quinnemanuel.com)
                                           Nicholas F. Joseph
                                           (nicholasjoseph@quinnemanuel.com)
                                           Sean P. Baldwin
                                           (seanbaldwin@quinnemanuel.com)

                                           51 Madison Avenue, 22nd Floor
                                           New York, New York 10010
                                           Tel:  212-849-7000
                                           Facsimile:  212-849-7100

                                           *Attorneys for Plaintiffs MASTR Adjustable
                                           Rate Mortgages Trust 2006-OA2, MASTR
                                           Adjustable Rate Mortgages Trust 2007-1,
                                           MASTR Adjustable Rate Mortgages Trust
                                           2007-3, acting through U.S. Bank National
                                           Association, solely in its capacity as Trustee
                                           of the Trusts*

25