UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3,

        Plaintiffs,

- against -

UBS REAL ESTATE SECURITIES INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12-cv-7322 (HB)(JCF)

### UBS REAL ESTATE SECURITIES INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Paul J. Lockwood (*pro hac vice*)
Alexander C. Drylewski
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Defendant UBS Real Estate*
  *Securities Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      THE TRUSTS CANNOT ENFORCE THE PSAS ..............................................................3

II.     PLAINTIFFS' REQUESTS FOR MONEY DAMAGES SHOULD BE
DISMISSED ........................................................................................................................4

III.    PLAINTIFFS HAVE NOT ADEQUATELY PLED A BREACH OF
CONTRACT ........................................................................................................................7

        A.     UBS RESI Has No Obligation to Repurchase Liquidated Loans ............................7

        B.     UBS RESI Cannot Repurchase Loans Where the Property Was Sold ....................9

        C.     Plaintiffs Have Not Pled That UBS RESI Received Prompt Notice ......................10

CONCLUSION ................................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Assured Guaranty Municipal Corp. v. DLJ Mortgage Capital, Inc.*,
  37 Misc. 3d 1212(A), 2012 WL 5192752 (Sup. Ct. N.Y. County 2012).........................5, 6

*Assured Guaranty Municipal Corp. v. UBS Real Estate Security, Inc.*,
  2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012)......................................................7

*Assured Guaranty Municipal Corp. v. Flagstar Bank FSB*,
  2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011)....................................................7, 8

*Central Mortgage Co. v. Morgan Stanley Mortgage Capital Holding LLC*,
  2012 WL 3201139 (Del Ch. Aug. 7, 2012) .........................................................10

*CIFG Assurance North America, Inc. v. Assured Guaranty Corp.*,
  2011 WL 2535029 (Sup. Ct. N.Y. County 2011) ..................................................9

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002).................................................................5

*Greenfield v. Philles Records*,
  98 N.Y.2d 562 (2002) ........................................................................................3

*Kirschbaum v. Elization Ortman Trust of 1977*,
  3 Misc. 3d 1110(A), 2004 WL 1372542 (Sup. Ct. Suffolk County 2004) .........................3

*LaSalle Bank National Association v. CIBC, Inc.*,
  2012 WL 112208 (S.D.N.Y. Jan. 12, 2012) .......................................................6

*Lehman Brothers Holdings, Inc. v. Evergreen Moneysource Mortgage Co.*,
  793 F. Supp. 2d 1189 (W.D. Wash. 2011).........................................................5

*M & I Bank v. Coughlin*,
  2012 WL 602365 (D. Ariz. Feb. 24, 2012)....................................................5, 10

*MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage Corp.*,
  2012 WL 4511065 (D. Minn. Oct. 1, 2012) .......................................................10

*MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage Corp.*,
  843 F. Supp. 2d 996 (D. Minn. 2012)............................................................5, 6

*Metropolitan Life Insurance Co. v. Noble Lowndes International*,
  84 N.Y.2d 430 (1994) .........................................................................................5

*Miller Investment Trust v. Morgan Stanley & Co.*,
  2012 WL 3017690 (D. Mass. July 24, 2012).....................................................4

*Plotch v. Citimortgage, Inc.*,
    2012 WL 1049991 (Sup. Ct. N.Y. County Mar. 13, 2012) ..............................................10

*Resolution Trust Corp. v. Key Financial Services, Inc.*,
    280 F.3d 12 (1st Cir. 2002) ..............................................................................................6

*Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.*,
    2003 WL 548868 (S.D.N.Y. Feb. 25, 2003) ....................................................................5

*Tsering v. Wong*,
    2008 WL 4525471 (S.D.N.Y. Oct. 3, 2008) ....................................................................4

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
    948 N.Y.S.2d 580 (1st Dep't 2012) ..................................................................................5

*Wells Fargo Bank, N.A. v. Financial Security Assurance Inc.*,
    2012 WL 6028908 (2d Cir. Dec. 5, 2012) ........................................................................7

*Wells Fargo Bank, N.A. v. ESM Fund I, LP*,
    785 F. Supp.2d 188 (S.D.N.Y. 2011), ..............................................................................7

## STATUTES

Mass. Gen. Laws c. 110A § 410 ..................................................................................................4

## OTHER AUTHORITIES

Amy Morris Hess et al., Bogert Trusts and Trustees (3d rev. ed. 2009) .......................................3

Myron Kove et al., Bogert Trusts and Trustees (3d ed. 2012) ......................................................3

**PRELIMINARY STATEMENT**[1]

As UBS RESI demonstrated in its opening brief, the Trusts lack the legal capacity to bring this action because they are non-juridical entities under New York law. (*Infra* § I.) The Trustee, U.S. Bank, agrees. In opposing the intervention of certain individual certificateholders *in this very action*, the Trustee itself urged that the Trusts "*are not actual legal entities and cannot file suits individually*." (Musoff Reply Decl. Ex. A at 4 n.2.) While Plaintiffs vaguely assert that they are "acting through" the Trustee (Opp. 8), any doubt as to the status of the Trustee is dispelled by its own words in opposing intervention, where U.S. Bank affirmed that it "is not a party – as a plaintiff, defendant, or otherwise" to this action. (*Id.* at 2.) Since Plaintiffs lack capacity to bring these claims and clearly are not "acting through the Trustee" (whatever that means), the Complaint should be dismissed on this basis alone.

But even if the Trusts had the requisite capacity to sue (and they do not), they cannot bring the claim for damages asserted here. (*Infra* § II.) Plaintiffs' Opposition acknowledges that the Trusts do not seek damages by "su[ing] directly for breach of representations and warranties" (Opp. 13), because recovery for such a claim is unambiguously subject to the Sole Remedy Provision. As this Court held, under the Sole Remedy Provision, the Trustee (not the Trusts) has specific enforcement rights: it may compel UBS RESI to *cure* breaches of R&W or to *repurchase* the subject Mortgage Loans – and that is all.[2] In an attempt to evade this express contractual limitation on UBS RESI's liability, Plaintiffs artfully fashion a damages claim for breach of UBS RESI's supposed "repurchase obligations," but, as Plaintiffs

---

[1] All capitalized terms shall have the same definition ascribed to them in UBS RESI's opening Memorandum of Law ("UBS Br."). All emphasis in case, statute and record citations is added.

[2] The Sole Remedy Provision also allows UBS RESI to *substitute* allegedly breaching loans within the first two years of the PSAs' closing – an option that is not applicable given the timing of Plaintiffs' claims. (UBS Br. n.10.)

concede, these remedial obligations only arise where *a breach of R&W is established in the first place*. (Opp. 9, 12.) Plaintiffs' approach would have it both ways – the Trustee can demand repurchase of any loan under the Sole Remedy Provision for any reason (or no reason) and if UBS RESI disputes the basis for the demand, it will face a broad damages claim for breach of its "repurchase obligation." Plaintiffs' trumped-up reading of the PSAs would eviscerate the Sole Remedy Provision and instead provide for remedies that are not only contrary to the plain terms of the PSAs, but far more expansive than the parties ever contemplated.

Indeed, Plaintiffs' improper demands extend so far as to seek "lost profits and business opportunities" *uniquely for Assured* (which proposed intervenor-certificateholders view as a patent conflict of interest for the Trusts' counsel, who also represents Assured). Plaintiffs' contention that they may seek these losses because Assured's rights are "subrogated" to those of certificateholders (Opp. 14) turns the concept of subrogation on its head. Rather than limit Assured to those recoveries that a certificateholder is entitled to receive under the Sole Remedy Provision, Plaintiffs seek a direct award of money damages to Assured that would not benefit the certifcateholders at all, but would instead circumvent the waterfall structure to their detriment. Thus, Plaintiffs patently are not seeking to have Assured "stand[] in the shoes" of the certificateholders – they seek to cut the certificateholders out of the equation altogether.

The Complaint also does not plead any facts to support an inference that the Mortgage Loans at issue are properly the subject of repurchase under the unambiguous terms of the PSAs, which circumscribe UBS RESI's liability by exempting from repurchase any Liquidated Loans or loans where the underlying collateral has been sold. (*Infra* § III.) Plaintiffs complain that this plain reading would undermine the PSAs' supposed purpose (Opp. 18) but under New York law, an unambiguous contract must be enforced according to its terms without

2

resort to the parties' purported intentions – particularly where it was negotiated and agreed upon by sophisticated parties. *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002). In any event, UBS RESI's plain reading accords with the parties' intent that UBS RESI be afforded an opportunity to assess and cure any breaches of R&W at the first possible instance and prevents a party from sitting on its hands for years before asserting its rights (as Assured has here). Plaintiffs' argument that "it is plainly a fact question whether any particular loan was liquidated (or foreclosed)" (Opp. 15) is unavailing, as the Complaint does not allege that *any* of the loans comprising the subject breach notices are subject to repurchase under the PSAs.

Finally, Plaintiffs fail adequately to allege that UBS RESI was provided with "prompt notice" of the alleged breaches required to trigger its obligations under the PSAs. (*Infra* § III.C.) Plaintiffs argue that Assured's earlier breach notices made UBS RESI constructively aware of breaches regarding every other loan in the Trusts (Opp. n.13), yet simply ignore that UBS RESI bargained for and received the right to be provided notice and an opportunity to cure breaches on a loan-by-loan basis. For all of these reasons, the Complaint should be dismissed.

## ARGUMENT

### I. THE TRUSTS CANNOT ENFORCE THE PSAS

Plaintiffs cannot seriously dispute that under New York law, the Trusts are non-juridical entities that lack the legal capacity to sue. *See Kirschbaum v. Elization Ortman Trust of 1977*, 3 Misc. 3d 1110(A), 2004 WL 1372542, at *2 (Sup. Ct. Suffolk County 2004); *see also* Amy Morris Hess et al., Bogart's Trusts and Trustees ch. 33 § 712 (3d rev. ed. 2009) ("A trust is not a legal person, nor is the trust property."); Myron Kove et al., Bogert's Trusts and Trustees ch. 14 § 247(M) (3d ed. 2012). Plaintiffs do not even attempt to address UBS's cases holding that, under Fed. R. Civ. P. 17, the Trusts are not the true parties in interest to actions involving the trust property. (UBS Br. 11.) Moreover, in opposing intervention in this very case (after

UBS RESI had already filed its motion to dismiss), the Trustee admitted that the Trusts "are *not* actual legal entities and *cannot* file suits individually." (Reply Decl. Ex. A at 4 n.2.)[3] Yet that is exactly what the Trusts have done here. The Complaint's caption names the Trusts alone as plaintiffs and the body of the Complaint merely makes vague references to the Trusts "acting through" the Trustee, U.S. Bank. (Opp. 8.) Such opaque statements are insufficient to identify the Trustee as a plaintiff. *Tsering v. Wong*, 2008 WL 4525471, at *4-6 (S.D.N.Y. Oct. 3, 2008).

In any event, the Trustee has now stated (in motion papers filed after UBS RESI moved to dismiss) that it "is *not* a party – *as a plaintiff, defendant, or otherwise* – to this action." (Reply Decl. Ex. A at 2.) Given this admission and the opacity of the pleading regarding the Trustee's role, if any, in this litigation, the Complaint should be dismissed. While Plaintiffs argue that they should be permitted to amend the Complaint (Opp. 9), under this Court's rules, Plaintiffs had 10 days from UBS RESI's motion to elect to amend, and if they chose not to do so, "*no further opportunities to amend will be granted*." Individual Practices 5.G. Consequently, they must live with that decision and the action should be dismissed with prejudice.

## II. PLAINTIFFS' REQUESTS FOR MONEY DAMAGES SHOULD BE DISMISSED

Assuming *arguendo* that the Trusts are proper plaintiffs to this action (and they are not), the Complaint's sole claim seeking money damages for breach of UBS RESI's "repurchase obligations" is barred by the plain terms of the PSAs. Plaintiffs concede that where a R&W concerning the Mortgage Loans is breached in a manner that materially and adversely affects the interests of Certificateholders or the Certificate Insurer, UBS RESI is required to "cure the breach or repurchase the defective loan." (Opp. 9, 12.) Indeed, this is the "sole

---

[3] Plaintiffs' only offered case, *Miller Investment Trust v. Morgan Stanley & Co.*, 2012 WL 3017690, at *7 (D. Mass. July 24, 2012), is entirely inapposite as that decision involved a Massachusetts state statute, Mass. Gen. Laws c. 110A § 410, which explicitly allows suits by certain trusts. No similar statute is implicated here.

remedy" for breaches of R&W to which the parties agreed.  (UBS Br. 12-15); *see also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002) ("[S]ophisticated parties with equal bargaining power can agree to limit the liability that the other may recover . . . .").

In the face of this unambiguous Sole Remedy Provision, Plaintiffs nevertheless argue that they are entitled to ignore it and instead seek dramatically broader money damages on the ground that the provision "applies only to an R[&]W Breach," not to a so-called "Repurchase Breach, which is the subject-matter of the Complaint."  (Opp. 10.)  This makes no sense.  Allowing Plaintiffs to pursue an independent claim for "Repurchase Breach" without having established *a single* breach of R&W would eviscerate the Sole Remedy Provision and fundamentally alter the parties' bargained-for limitation on remedies.  *Metro. Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 436 (1994) (remedy provisions "represent the parties' [a]greement on the allocation of the risk of economic loss . . . which the courts should honor.").  Indeed, the Sole Remedy Provision would be rendered virtually meaningless if Plaintiffs could elect broader damages any time the parties disagreed about whether there was a breach of R&W for a given loan.  *Walnut Place LLC v. Countrywide*, 948 N.Y.S.2d 580, 581(1st Dep't 2012) (repurchase provision "merely provide[d] for *a remedy* in the event of a breach," not separate cause of action); *M & I Bank v. Coughlin*, 2012 WL 602365, at *5 (D. Ariz. Feb. 24, 2012).[4]

The recent decisions in *Assured v. DLJ Mortg. Capital, Inc.*, 37 Misc. 3d 1212(A), 2012 WL 5192752 (Sup. Ct. N.Y. County 2012), and *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996 (D. Minn. 2012), are squarely on-point and foreclose Plaintiffs' claims.  (UBS Br. 14-15.)  In *DLJ*, Justice Kornreich dismissed

---

[4] It would also circumvent New York's six-year statute of limitations for breach of contract, which runs from the date the R&W is made and not the date of plaintiff's injury or repurchase demand.  *See Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2011) (applying New York law).

Assured's claim for money damages – including lost profits and business opportunities (precisely what Plaintiffs seek here) – because the *only* remedies available were those expressed in the repurchase provision, which the parties clearly intended "would be the *sole remedy* available" to them. 2012 WL 5192752, at *8. Similarly, in *MASTR*, plaintiff sought damages "'if specific performance is for any reason not available.'" 843 F. Supp. 2d at 1001. The court held that under the PSA's terms, "the *sole remedy* available to U.S. Bank is to seek cure, repurchase or substitution" and thus it "*may not* recover additional remedies, *including monetary damages*." *Id.*

The cases cited by Plaintiffs in support of their argument that "breach of a repurchase obligation is distinct from a breach of the underlying [R&W]" (Opp. 11-12) are inapposite and do not address the situation where, as here, the agreement specifically mandated that specific performance is the "*sole remedy*" available and that only the Trustee can sue to "*enforce*" those obligations. In fact, the agreement in one case, *LaSalle Bank v. CIBC, Inc.*, – which Plaintiffs invoke to claim they may sue solely for breach of "repurchase obligations" (Opp. n.8) – expressly stated that "'*no limitation of remedy* is implied with respect to the Seller's breach of its [repurchase] obligation.'" 2012 WL 112208, at *1 (S.D.N.Y. Jan. 12, 2012).[5] The agreement here could not be more different.

For the same reasons, Plaintiffs' improper request for Assured's consequential damages should also be dismissed. (UBS Br. 15.) Curiously, Plaintiffs contend that they may seek such damages because Assured's rights are "subrogated" to those of the certificateholders (Opp. 14), but this makes no sense. As a subrogee of the certificateholders, Assured is limited to seeking distributions of "'principal and interest from the Trust Fund'" through the repayment

---

[5] While *Resolution Trust Corp. v. Key Financial Services, Inc.*, 280 F.3d 12, 15-18 (1st Cir. 2002), did involve a sole remedy provision, plaintiff there had already pled and established breaches of R&W – something Plaintiffs have not done here. The holding in *Key* is also contradicted by the recent decisions in *DLJ* and *MASTR*.

waterfall. *See Assured v. UBS Real Estate Sec., Inc.,* 2012 WL 3525613, at *3 (S.D.N.Y. Aug. 15, 2012). Here, Plaintiffs seek a payment to be made *directly* to Assured *outside of the waterfall* and with no benefit to certificateholders at all. *See Wells Fargo Bank, N.A. v. Fin. Sec. Assurance Inc.*, 2012 WL 6028908, at *1 (2d Cir. Dec. 5, 2012) (Assured entitled "*only to the distribution of funds* related to its subrogation rights").[6] Indeed, if Assured is subrogated to certificateholders as Plaintiffs contend, then all the more reason that Assured should not receive direct money damages outside the waterfall, and certainly nothing in the PSAs permits the Trustee (much less the Trusts) to recover damages for any particular certificateholder – rather, the Sole Remedy Provision establishes a remedial scheme whereby recoveries go through the waterfall for the *pro rata* benefit of *all certificateholders*.[7]

### III. PLAINTIFFS HAVE NOT ADEQUATELY PLED A BREACH OF CONTRACT

#### A. UBS RESI Has No Obligation to Repurchase Liquidated Loans

The PSAs make clear that UBS RESI must repurchase loans at the "Purchase Price," which is defined as the Mortgage Loan's "outstanding Principal Balance." (UBS Br. 9.) Liquidated Loans have a Principal Balance that is defined as "zero," and thus UBS RESI has no obligation to repurchase them. (UBS Br. 17-20.) Assured's reliance on *Assured v. Flagstar Bank FSB*, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011), to challenge this conclusion (Opp. 15-16) is misplaced. The *Flagstar* court refused to apply the plain language of the agreement because the defendant (who originated the loans at issue) had unilateral discretion to determine which loans would be liquidated and thus could effectively insulate itself from repurchase

---

[6] Indeed, certain certificateholders have moved to intervene in this action for exactly that reason. Memorandum of Law in Support of Motion of Certificateholders for Leave to Intervene as Plaintiffs, ECF No. 11 at 5-6.

[7] Assured is also subrogated to *junior* certificateholders and thus its receipt of direct damages would undermine the rights of "Super Senior" certifcateholders, who are entitled under the PSAs to receive such payments first. *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785 F. Supp.2d 188, 196-97 (S.D.N.Y. 2011), *aff'd sub. nom. Wells Fargo Bank, N.A. v. Fin. Sec. Assurance Inc.*, 2012 WL 6028908 (2d Cir. Dec. 5, 2012).

liability by charging off loans at will. *Id.* at *7. Here, by contrast, a Liquidated Loan is *objectively defined* in the PSAs as a loan that has been liquidated or delinquent for 180 or more days – events over which UBS RESI exercises absolutely no control. (UBS Br. 18.) Thus, the reasoning in *Flagstar* – which reached beyond the plain language of the agreement – has no application here.

Plaintiffs further assert that if Liquidated Loans cannot be repurchased, it "would render superfluous all the provisions of the PSAs dealing with how and when [UBS RESI] must repurchase defective loans." (Opp. 16.) This is not true. Where a contractual breach is established, UBS RESI still has repurchase obligations for *non*-Liquidated Loans and the Sole Remedy Provision remains in full force and effect as to such loans. Plaintiffs' interpretation, on the other hand, would simply excise the bargained-for language in the PSAs providing that the Principal Balance, and thus Purchase Price, for all Liquidated Loans "*shall be zero*." (UBS Br. 10, 18.) Plaintiffs cannot explain why this Court should adopt their view, which simply strikes language they find unhelpful, over the plain meaning of the agreement.[8]

Similarly, Plaintiffs' complaint that applying the PSAs' plain language with respect to Liquidated Loans "would have the effect of exculpating UBS Real Estate from liability" (Opp. 18) also is obviously not true. The parties' exclusion of Liquidated Loans from repurchase reflects an intended balancing of risks, by creating an affirmative obligation on the Trustee and others to notify UBS RESI of alleged breaches at the first possible instance so that UBS RESI may take timely measures to cure the breach or repurchase a performing asset. This obligation requires a party seeking loan repurchase to act promptly as it becomes aware of

---

[8] Plaintiffs' argument that the Principal Balance for Liquidated Loans "is zero only where the loan 'has become a Liquidated Loan during the *related Prepayment Period*" (Opp. 16) makes no sense. The Prepayment Period is simply a month-long period preceding any Distribution Date. (Musoff Opening Decl. Ex. C at 45.)

borrower defaults, in order to protect UBS RESI from delayed and hindsight-based repurchase demands. This was the intent of the parties, as reflected in the unambiguous terms of the contract. *CIFG Assurance N. Am. v. Assured,* 2011 WL 2535029, at *5 (Sup. Ct. N.Y. County 2011) (the parties' intent "should be determined from the language of the instrument").[9]

By arguing that the Sole Remedy Provision, as written, would lead to "unjustifiable results" (Opp. 20), Plaintiffs really mean that they now want to demand broader remedies than were bargained for at the time of the transaction. This is not a principled reason for the Court to rewrite the PSAs to confer broader remedies than those agreed upon. The parties – all counseled, sophisticated entities – could have negotiated an agreement that did not limit remedies or set the "Purchase Price" for Liquidated Loans at "zero," but they did not do so. Accordingly, Plaintiffs are now bound by the plain language of their agreements.[10]

### B. UBS RESI Cannot Repurchase Loans Where the Property Was Sold

UBS RESI also cannot be required to repurchase Mortgage Loans where the underlying property has been sold for the simple reason that, as a matter of law, such loans are extinguished and no longer exist. (UBS Br. 20-21.)[11] This undeniable conclusion is not altered by the fact that the definition of Mortgage Loan includes the phrase "notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property." (Opp. 20.) "Foreclosure" of a property does not necessarily extinguish the mortgage or the debtor's obligation to pay, and the

---

[9] Plaintiffs' citation to two employment cases which purportedly hold that the parties' intent may trump clear contractual language (Opp. 18) is unavailing because, unlike here, a literal interpretation of the agreements was inconsistent with any possible intent of the parties.

[10] While Plaintiffs argue that there exist issues of fact with respect to UBS RESI's discovery of breaches (Opp. 19), Plaintiffs do not allege that UBS RESI knew of any defective Mortgage Loans prior to receipt of the alleged breach notices, or that any costs were incurred in connection with any violation of state predatory lending laws.

[11] In fact, in a similar action brought against UBS RESI, plaintiffs seek specific performance *or* money damages "[i]f specific performance is not available *because a Mortgage Loan has been liquidated and/or is no longer available for repurchase*." (Reply Decl. Ex. B ¶ 74-75.) By the plaintiffs' own admission, Mortgage Loans are no longer "available for repurchase" once they have been liquidated or extinguished through foreclosure and sale.

title of the underlying property may be "acqui[red]" by the Trustee through foreclosure proceedings and remain available for repurchase by UBS RESI. However, once the underlying properties have been sold, there is literally nothing left to repurchase.[12]

### C. Plaintiffs Have Not Pled That UBS RESI Received Prompt Notice

Plaintiffs also fail adequately to allege that UBS RESI received its contractually-mandated "prompt notice" *from the Trustee* of alleged breaches of R&W, which affords UBS RESI the opportunity to cure at the first possible instance. (UBS Br. 23.) Far from evincing a "responsible effort" (Opp. 23), the Complaint makes clear that the Trustee failed to comply with its own contractual obligation to promptly notify UBS RESI of *fourteen* of Assured's twenty-one breach notices and that the notices were sent over a two-year period. (UBS Br. 10, 24.)[13] Failure to plead compliance with the PSAs warrants dismissal where, as here, such failure is obvious from the face of the complaint. *Plotch v. Citimortgage, Inc.*, 2012 WL 1049991, at *3 (Sup. Ct. N.Y. County Mar. 13, 2012).[14] Plaintiffs' contention that Assured's early notice of "widespread breaches" made UBS RESI "constructively aware" of all other breaches as to other loans (Opp. n.13) is without merit, as the PSAs afford UBS RESI the right to receive breach notices on a loan-by-loan basis. *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holding LLC*, 2012 WL 3201139, at *17-18 (Del Ch. Aug. 7, 2012) (rejecting same argument).

## CONCLUSION

The Complaint should be dismissed with prejudice.

---

[12] Permitting repurchase of extinguished Mortgage Loans is not only impossible, but would also "sit uneasily with other provisions" of the PSAs. *MASTR v. WMC Mortg. Corp.*, 2012 WL 4511065, at *5 (D. Minn. Oct. 1, 2012); *see also* UBS Br. 22 & n.18.

[13] That Assured may have provided some notices to UBS RESI is irrelevant – the PSAs require the Trustee to notify UBS RESI of breach allegations even where all of the other parties have been informed. (UBS Br. 8.)

[14] The court in *M & I Bank v. Coughlin* dismissed where failure to give prompt notice was apparent from the complaint – just like here. 2012 WL 602365, at *5 (D. Ariz. Feb. 24, 2012). There is nothing "grossly misleading" (Opp. n.14) about UBS RESI's citation to it.

Dated: New York, New York
December 17, 2012

Respectfully submitted,

 /s/ Jay B. Kasner
Jay B. Kasner
Scott D. Musoff
Paul J. Lockwood (*pro hac vice*)
Alexander C. Drylewski
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Defendant UBS Real Estate Securities Inc.*