UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTR ADJUSTABLE RATE
MORTGAGES TRUST 2006-OA2, MASTR
ADJUSTABLE RATE MORTGAGES
TRUST 2007-1, AND MASTR
ADJUSTABLE RATE MORTGAGES
TRUST 2007-3,

                Plaintiffs,

      -against-

UBS REAL ESTATE SECURITIES INC.,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12-Civ-7322 (HB) (JCF)

**ECF Case**

## UBS REAL ESTATE SECURITIES INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Four Times Square
New York, New York 10036
Phone: (212) 735-3000

Paul J. Lockwood (*pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Phone: (302) 651-3000

*Attorneys for Defendant UBS Real Estate
Securities Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 3

    A.    U.S. Bank's Aggressive Auto-Deletion Policy And Warning From The District Court To Be "Particularly Vigilant" About Instituting Legal Holds. ................................................................................. 3

    B.    The Trusts' Claims In Late September 2012 ..................................... 3

    C.    [ Redacted ] And A Number Of Lawsuits, Put U.S. Bank On Notice Of Potential Litigation Involving The Trusts. ....................................................................... 4

        1.    Early 2010: Assured Begins Investigating Its Claims. ................ 4

        2.    August 2010: U.S. Bank's Duty To Preserve Is Triggered By Assured's Voluminous Repurchase Demands ................................ 4

        3.    August And September 2010:  U.S. Bank's Duty To Preserve Is Again Triggered By [ Redacted ] ................ 5

        4.    December 13, 2010: The MARM 2007-3 Trust Is Named As A Defendant In A Class Action Lawsuit, Again Triggering U.S. Bank's Duty to Preserve. ........................................................ 6

        5.    March 2011:  U.S. Bank's Duty To Preserve Is Again Triggered [ Redacted ] ............ 6

        6.    November 2011 Through February 2012:  U.S. Bank Ignores Its Preservation Obligations Despite Assured's Lawsuit And [ Redacted ] [ Redacted ] ............ 8

        7.    July 2012:  U.S. Bank's Duty To Preserve Is Again Triggered As [ Redacted ] ............ 9

        8.    August 2012: [ Redacted ] [ Redacted ] ........ 10

9.    August 2012:  U.S. Bank's Duty To Preserve Is Again Triggered As The Court Rules U.S. Bank Is The Only Party That Can Bring Repurchase Claims...................................................................10

10.   September 2012:  U.S. Bank Files The Complaint In This Action, ┌─────────────────┐ Redacted └─────────────────┘ ...................................11

D.    U.S. Bank Discloses That It Has Permanently Destroyed Virtually All Its Custodians' Emails.......................................................................12

E.    U.S. Bank Initially Stonewalls UBS RESI's Inquiries, Then Hires Special Counsel To Handle The Document Destruction Issues. ......................12

F.    U.S. Bank's Productions Reflect Its Inadequate Legal Hold. ..............13

G.    UBS RESI Faces Obvious And Dramatic Harm From Spoliation. ..............14

ARGUMENT .........................................................................................15

I.    THE COURT SHOULD GRANT UBS RESI'S MOTION FOR SANCTIONS BECAUSE U.S. BANK ACTED IN BAD FAITH BY FAILING TO IMPLEMENT A TIMELY LITIGATION HOLD AND DESTROYED DOCUMENTS RELEVANT TO U.S. BANK'S CLAIMS AND UBS RESI'S DEFENSES...........................................................................15

A.    U.S. Bank's Duty To Preserve E-mails Attached Long Before It Brought This Litigation..............................................................................15

1.    U.S. Bank Had a Duty To Preserve Documents In 2010...........................15

2.    ┌──────────────────────────┐ Redacted └──────────────────────────┘ ..........16

B.    U.S. Bank Acted In Bad Faith By Wantonly Destroying Documents For Two Years After Reasonably Anticipating Litigation. ...........................17

C.    The Destroyed Documents Are Relevant To UBS RESI's Defenses...................20

II.   U.S. BANK'S EGREGIOUS DISCOVERY ABUSES CAN ONLY BE REMEDIED BY A MEANINGFUL SANCTION.............................................22

A.    Terminating Sanctions Should Be Imposed.........................................22

B.    UBS RESI Is Entitled To An Adverse Inference Against The Trustee At Trial..........................................................................................23

C.    UBS RESI Is Entitled To The Fees And Costs Associated With This Motion........................................................................................24

ii

CONCLUSION................................................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Apple Inc. v. Samsung Electronics* Co.,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ............................................................19

*Arista Records LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009)..............................................................22

*Byrnie v. Town of Cromwell, Board of Education*,
   243 F.3d 93 (2d Cir. 2001)................................................................................15

*Chan v. Triple 8 Palace, Inc.*,
   No. 03CIV6048, 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) .....................22

*Cordius Trust v. Kummerfeld*
   No. 99 Civ. 3200, 2008 WL 113664 (S.D.N.Y. Jan. 11, 2008)........................20

*Cyntegra, Inc. v. Idexx Laboratories, Inc.*,
   No. 06-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007), *aff'd*,
   322 F. App'x 569 (9th Cir. 2009) ....................................................................17

*Donato v. Fitzgibbons*,
   172 F.R.D. 75 (S.D.N.Y. 1997) .......................................................................18

*Golia v. Leslie Fay Co.*,
   No. 01 Civ. 1111, 2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003) ...................20

*Gutman v. Klein*,
   No. 03 CV 1570, 2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008) ......................23

*Indemnity Insurance Co. of North America v. Liebert Corp.*,
   No. 96 Civ. 6675, 1998 WL 363834 (S.D.N.Y. June 29, 1998)........................16

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
   257 F.R.D. 334 (D. Conn. 2009).................................................................16, 17

*Metropolitan Opera Association, Inc. v. Local 100 Hotel Employees & Restaurant
   Employees International Union*,
   212 F.R.D. 178 (S.D.N.Y. 2003) .....................................................................22

*In re Napster, Inc. Copyright Litigation*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...........................................................16

*Northington v. H&M International*,
   No. 08-CV-6297, 2011 WL 663055 (N.D. Ill. Jan. 12, 2011)....................19, 20

*Novak v. Wolpoff & Abramson LLP,*
　　536 F.3d 175 (2d Cir. 2008)..............................................................................24

*In re NTL, Inc. Securities Litigation,*
　　244 F.R.D. 179 (S.D.N.Y. 2007), *aff'd,*
　　No. 02 Civ. 7377, 2007 WL 1518632 (S.D.N.Y. May 17, 2007)................................20, 24

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities,*
　　685 F. Supp. 2d 456 (S.D.N.Y. 2010), *abrogated on other grounds sub nom.*
　　*Chin v. Port Authority of New York & New Jersey,*
　　685 F.3d 135 (2d Cir. 2012)..........................................................17, 19, 23, 24

*Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.,*
　　621 F. Supp. 2d 1173 (D. Utah 2009)..............................................................19

*R.F.M.A.S., Inc. v. So,*
　　271 F.R.D. 13 (S.D.N.Y. 2010) ......................................................................16

*Residential Funding Corp. v. DeGeorge Ginancial Corp.,*
　　306 F.3d 99 (2d Cir. 2002)...........................................................................20

*Richard Green (Fine Paintings) v. McClendon,*
　　262 F.R.D. 284 (S.D.N.Y. 2009) ............................................................15, 16, 17

*Verona v. U.S. Bancorp,*
　　No. 7:09-CV-00057-BR (E.D.N.C. Apr. 19, 2010) (ORDER)....................................*passim*

*VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.,*
　　93 A.D. 3d 33 (N.Y. Sup. Ct. App. Div. 2012) ............................................16, 19, 23

*VOOM HD Holdings, LLC v. Echostar Satellite, L.L.C.,*
　　No. 600292/08, 2010 WL 8400073 (N.Y. Sup. Ct. Nov. 3, 2010) ....................................18

*Wiginton v. Ellis,*
　　No. 02 C 6832, 2003 WL 22439865 (N.D. Ill. Oct. 27, 2003) .........................................18

*In re WRT Energy Securities Litigation,*
　　246 F.R.D. 185 (S.D.N.Y. 2007) ..........................................................16, 17, 20, 22

*Zubulake v. UBS Warburg LLC,*
　　220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*")..........................................15, 16, 17

*Zubulake v. UBS Warburg, LLC,*
　　229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*").......................................15, 19, 20, 22

## OTHER AUTHORITIES

Fed. R. Civ. P. 37(b)(2)(C) ...........................................................................................24

## PRELIMINARY STATEMENT[1]

Defendant UBS Real Estate Securities Inc. ("UBS RESI") requests sanctions against U.S. Bank, N.A. ("U.S. Bank" or "Trustee") as Trustee for plaintiffs MASTR Adjustable Rate Mortgages Trust 2006-OA2 ("MARM 2006-OA2"); (ii) MASTR Adjustable Rate Mortgages Trust 2007-1 ("MARM 2007-1"); and (iii) MASTR Adjustable Rate Mortgages Trust 2007-3 ("MARM 2007-3") (collectively, "Trusts" or the "Transactions"), on the basis of U.S. Bank's utter failure to preserve documents potentially relevant to the claims asserted by the Trusts.

U.S. Bank kept in place an aggressive and indiscriminate 90-day e-mail deletion policy and did not implement a legal hold in connection with the Transactions until [Redacted] *years after* preservation obligations were first triggered [Redacted] [Redacted] – all in complete disregard of a federal court's strong admonition in April 2010 that U.S. Bank "*must be particularly vigilant in promptly implementing legal holds.*" *Verona v. U.S. Bancorp*, No. 7:09-CV-00057-BR, Dkt. No. 161, at 9 (E.D.N.C. Apr. 19, 2010) (ORDER) (emphasis added).[2]  In fact, throughout 2010 and 2011, multiple threats of litigation concerning the Transactions were aimed at U.S. Bank and a lawsuit was filed naming the MARM 2007-3 Trust as a defendant, yet U.S. Bank did nothing. [Redacted]

[Redacted]

As a result of U.S. Bank's failure to preserve documents, the vast majority of relevant information in its possession, including potentially important admissions, has been irrevocably

---

[1] Although UBS RESI's Motion to Dismiss (D.E. 14) is pending, UBS RESI is constrained to file this motion in advance of the Court's ruling on that dispositive motion in light of the current schedule.

[2] The decision is attached as Exhibit 1 to the Declaration of Scott D. Musoff ("Musoff Declaration" or "Musoff Decl.") submitted in further support of the instant motion.

destroyed.  U.S. Bank's document production, which purportedly consists of all discoverable information from its custodians over a period of six years, *contains only 128 e-mails* harvested from these custodians' e-mail accounts and does not include a single e-mail from several key custodians' e-mail accounts.  This paucity of documents -- a direct result of U.S. Bank's indifference to its discovery obligations – inevitably has serious consequences that go to the heart of this action.  Among other things, U.S. Bank must prove that it gave "prompt notice" to UBS RESI of alleged breaches of R&Ws in the PSAs.  Through its destruction of relevant evidence, U.S. Bank has precluded UBS RESI from establishing that U.S. Bank delayed in providing such notice, because there are virtually no internal U.S. Bank e-mails from the relevant time period.  Similarly, U.S. Bank has produced no internal e-mails concerning the substance of Assured's purported "forensic review" of loan files, even though that review is the sole basis for U.S. Bank's allegations in the Complaint.  Accordingly, U.S. Bank's views on the validity of more than 20 voluminous repurchase demands made by Assured over the course of two years now cannot be assessed because nearly all contemporaneous e-mail communications have been systematically destroyed.

Indeed, U.S. Bank's continued auto-deletion practices – for years after they should have been suspended – | Redacted | | Redacted | has resulted in the near total deletion of potentially relevant e-mails and has seriously prejudiced UBS RESI's ability to effectively defend itself in this suit. This prejudice, combined with U.S. Bank's knowing abdication of its document preservation obligations and cavalier disregard of a federal court's admonition to be "particularly vigilant" about suspending its document destruction policies "so as to preserve evidence that may be relevant to future litigation," constitute bad faith and warrants the strongest possible sanctions against U.S. Bank.  *Verona*, Order at 9.

Accordingly, UBS RESI respectfully requests that the Court issue terminating sanctions against the claims asserted here by U.S. Bank or, at a minimum, an order directing jurors to take an adverse inference against U.S. Bank.

2

## FACTUAL BACKGROUND[3]

**A.    U.S. Bank's Aggressive Auto-Deletion Policy And Warning From The District Court To Be "Particularly Vigilant" About Instituting Legal Holds.**

Redacted

Redacted  As recognized in *Verona*, this aggressive e-mail deletion policy requires prompt and thorough use of legal holds to ensure U.S. Bank's compliance with its discovery obligations. (*Id.* Ex. 1, at 9.)  The court in *Verona* specifically warned in April 2010 that U.S. Bank "*must be particularly vigilant in promptly implementing legal holds so as to preserve evidence that may be relevant to future litigation.*" (*Id.* (emphasis added).)

**B.    The Trusts' Claims In Late September 2012.**

U.S. Bank is the Trustee of the three plaintiff Trusts.  (Compl. ¶ 7.)  As Trustee, U.S. Bank agreed to perform "such duties as are specifically set forth in the" PSAs, which includes providing "prompt notice" of breaches of R&Ws that "materially and adversely affect[] the interests of the Certificateholders or the Certificate Insurer" to UBS RESI.  (Musoff Decl. Ex. 3, at §§ 2.03, 8.01).)  The Trustee's duties are particularly litigation-focused because it has exclusive authority to pursue certain remedies under the PSAs.  (*See id.*)

On August 15, 2012, this Court dismissed claims brought by Assured in a separate action seeking to enforce. on its own behalf, the Sole Remedy Provision for breach of the R&Ws, holding that these contractual remedies could only be enforced by the Trustee.  (*Assured v. UBS RESI*, D.E. 25 at 6-7 (citing § 2.03).)  On September 28, 2012, U.S. Bank, acting through the same counsel that represented Assured, filed suit in this Court, alleging claims based on purported breaches of the R&Ws in the PSAs by UBS RESI.  However, as set out below, for two

---

[3] This Background section focuses on the facts that are relevant for this motion.  A detailed background of the Transactions, *Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc.*, and the procedural history of this case can be found in UBS RESI's Memorandum of Law in Support of its Motion to Dismiss the Complaint, which was filed on October 22, 2012.  (D.E. 15.)

years prior to instituting this lawsuit, U.S. Bank was aware of or should have reasonably expected litigation relating to the PSAs and the Trusts and should therefore have suspended its auto-deletion practices.

C.       ⬚ Redacted ⬚ **And A Number Of Lawsuits, Put U.S. Bank On Notice Of Potential Litigation Involving The Trusts.**

     **1.**    **Early 2010: Assured Begins Investigating Its Claims.**

By early 2010, Assured had begun its pre-litigation investigation ⬚ Redacted ⬚

⬚ Redacted ⬚

As noted, only U.S. Bank, as Trustee, is authorized to enforce the repurchase remedy.

     **2.**    **August 2010: U.S. Bank's Duty To Preserve Is Triggered By Assured's Voluminous Repurchase Demands.**

In August 2010, Assured began sending letters to UBS RESI alleging breaches of R&Ws for hundreds of loans in the MARM 2007-1 and MARM 2007-3 Trusts. ⬚ Redacted ⬚

⬚ Redacted ⬚

⬚ Redacted ⬚ By December 15, 2011, Assured had requested the repurchase of 2,440 loans totaling almost one billion dollars in original principal balance. (*Id.* Ex. 8, at ¶ 52.) Assured's repurchase demands suggested a high likelihood of litigation, considering (i) the sheer volume of repurchase demands and significant dollar amounts at issue, (ii) UBS RESI's rejection of many of Assured's demands, and (iii) that Assured had already instituted suit against other financial institutions based on similar repurchase demands. *See, e.g., Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc., et al.,* No. 652837/2011 (N.Y. Sup. Ct. Oct. 17, 2011); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, et al.,* No. 11-cv-2375-JSF (S.D.N.Y. Apr. 7, 2011); *Assured Guar. Corp. v. DB Structured Products, Inc., et al.,* No. 651824/2010 (N.Y. Sup. Ct. Oct. 25, 2010).

Moreover, U.S. Bank understood that Assured, pursuant to the PSAs, could direct it to participate in litigation contemplated by Assured.

Redacted

Redacted

3.    **August And September 2010:  U.S. Bank's Duty To Preserve Is Again Triggered**

Redacted

Redacted

Redacted

Redacted    Indeed, the risk of litigation at this time was so acute that it prompted Wells Fargo

to bring an interpleader action in the Southern District of New York to clarify the priority of

payments under the waterfall provisions for the MARM 2006-OA2 Trust (the "2006-OA2

Interpleader Action"). *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, No. 10 Civ. 7332 (LBS)

(S.D.N.Y. Sept. 23, 2010).

### 4.    December 13, 2010: The MARM 2007-3 Trust Is Named As A Defendant In A Class Action Lawsuit, Again Triggering U.S. Bank's Duty to Preserve.

On December 13, 2010, an amended complaint in *Pension Trust Fund for Operating

Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 10-CV-00898 (the "MARM

2007-3 Class Action"), was filed in New Jersey federal court.  (Musoff Decl. Ex. 14.)  While this

lawsuit had been pending since February 2010, the amended complaint specifically named the

MARM 2007-3 Trust as a defendant.   The amended complaint alleged that the MARM 2007-3

Trust violated Section 11 of the Securities Act by issuing offering documents that "contained

material misstatements of fact."  (*Id.* at ¶ 193.)    Redacted

Redacted

### 5.    March 2011: U.S. Bank's Duty To Preserve Is Again Triggered   Redacted
Redacted

Redacted

Redacted

Redacted

6.   **November 2011 Through February 2012:  U.S. Bank Ignores Its Preservation Obligations Despite Assured's Lawsuit** Redacted

Redacted

Redacted

On February 2, 2012, Assured filed its suit against UBS RESI.

Redacted

Redacted

7.   **July 2012:  U.S. Bank's Duty To Preserve Is Again Triggered As**

Redacted

Redacted

Redacted

8.     **August 2012:**  Redacted

Redacted

9.     **August 2012:  U.S. Bank's Duty To Preserve Is Again Triggered As The Court Rules U.S. Bank Is The Only Party That Can Bring Repurchase Claims.**

On August 15, 2012, Redacted

Redacted this Court granted UBS RESI's Motion

10

to Dismiss Assured's repurchase claims, holding that only the Trustee could enforce the Sole

Remedy Provision providing for loan repurchase in the PSAs.  (*Assured v. UBS RESI*, D.E. 25 at

6-7.)

Redacted

Redacted

10.    **September 2012:  U.S. Bank Files The Complaint In This Action,** Redacted
Redacted

On September 28, 2012, U.S. Bank filed its Complaint in this action. Redacted

Redacted

**D.      U.S. Bank Discloses That It Has Permanently Destroyed Virtually All Its Custodians' Emails.**

On March 25, 2013, counsel for UBS RESI met and conferred with Quinn Emanuel, counsel for both Assured and U.S. Bank.  The purpose of that call was to discuss discovery in both actions, including U.S. Bank's production of electronically stored information.  On that call, Quinn Emanuel informed UBS RESI's counsel that U.S. Bank did not need to apply search terms to identify potentially relevant documents for production because U.S. Bank's 90-day auto-deletion policy [ Redacted ], combined with the systematic destruction of its back-up tapes, meant that only a small amount of electronic data remained for review.  (Declaration of Paul J. Lockwood ("Lockwood Decl."), ¶ 3.)

**E.      U.S. Bank Initially Stonewalls UBS RESI's Inquiries, Then Hires Special Counsel To Handle The Document Destruction Issues.**

Initially, U.S. Bank was entirely uncooperative with UBS RESI's efforts to understand what steps U.S. Bank undertook to retain documents.  Despite a longstanding document request, U.S. Bank's counsel remained evasive about when it would produce its document retention policy and, for reasons that are now clear, refused to "prioritize" the production of this policy to UBS RESI.  Indeed, counsel refused even to provide the date when U.S. Bank implemented a litigation hold in the absence of a formal discovery request.  (*See* Musoff Decl. Ex. 52, April 1, 2013 Letter from A. Abensohn to P. Lockwood at 1 ("The Trusts therefore will not prioritize production of the document preservation policy . . . .  As to your demand for the date on which a litigation hold was put in place, the Trusts will respond to a proper discovery request issued under the Federal Rules of Civil Procedure."); *see also id.* Ex. 53, April 4, 2013 E-mail from N. Joseph ("[T]he Trusts will produce documents properly called for by UBS's document requests *in a timely fashion*. . . .  We told you that *we would not prioritize production* of that policy . . . .  Instead, *we will produce* the policy, as well as other documents, to you *in the ordinary course*." (emphasis added)).)  Amazingly, U.S. Bank's counsel directed counsel for UBS RESI to the *Verona* opinion, asserting that the court had blessed U.S. Bank's document

12

retention practices when it declined to impose sanctions, and entirely ignored that the court had admonished U.S. Bank to be vigilant about its discovery obligations and promptly impose litigation holds in light of its aggressive document destruction policies.  (*Id.*)

On April 4, 2013, a Minnesota law firm, Robins, Kaplan, Miller & Ciresi LLP ("Robins"), appeared as special counsel for U.S. Bank regarding the document retention dispute.  Once Robins arrived, U.S. Bank became more cooperative.

| Redacted |
| --- |

| Redacted |
| --- |

**F.   U.S. Bank's Productions Reflect Its Inadequate Legal Hold.**

Due to its failure to preserve documents, U.S. Bank's production contains almost no e-mails from its custodians' e-mail accounts.  U.S. Bank's production includes just 128 electronically harvested e-mails from all of its custodians over the six-year time frame for which U.S. Bank agreed to produce documents.  (*Id.* Ex. 54, at 4.)  Incredibly, U.S. Bank's production does not include a single e-mail from the accounts [ Redacted ] Ms. Cawley, or Ms. Cawley's successor, Elizabeth Brewster.  (Lockwood Decl. ¶ 4(a)-(b); *see also* Musoff Decl. Ex. 46, at 4.)  Nor does U.S. Bank's production include a single e-mail from the accounts of Shannon Rantz or Roxanne Rouleau, [ Redacted ] [ Redacted ] and just five e-mails from Joseph Wagner [ Redacted ]

13

```
                              Redacted
```

**G.      UBS RESI Faces Obvious And Dramatic Harm From Spoliation.**

The parties to the PSAs are required to provide the Trustee with "prompt notice" of alleged breaches of R&Ws and "[u]pon receiving notice of a breach, the Trustee *shall* in turn notify [UBS RESI] of such breach." (*Id.* Ex. 3, PSAs § 2.03 (emphasis added).)  Accordingly, whether U.S. Bank provided "prompt" notice of alleged breaches of R&Ws is a key issue in this litigation.  UBS RESI has moved to dismiss the Complaint in part on the basis of U.S. Bank's failure to allege that it ever provided the requisite prompt notice. (*See* Mem. of Law in Supp. of Mot. to Dismiss, D.E. 15, at 23-25.)  Likewise, several certificateholders have moved to intervene in this action and assert breach of fiduciary duty claims against U.S. Bank because of its failure to give notice. (*See* Proposed Compl. in Intervention, D.E. 12-1 ¶¶ 1, 100.)

U.S. Bank argued in opposition to UBS RESI's motion to dismiss that the "prompt notice" issue "is a fact-intensive inquiry that cannot be resolved on a motion to dismiss." (*See* Opp'n Mem. of Law., D.E. 30, at 22.)  If this Court agrees, UBS RESI submits that the best evidence related to this purportedly "fact-intensive" inquiry would have been contained in U.S. Bank's internal communications.  But those communications are gone.  Thus, U.S. Bank's document destruction has permanently undermined UBS RESI's ability to counter U.S. Bank's contention that it promptly provided notice consistent with its contractual obligations.

In addition, there is a high likelihood that the evidence destroyed by U.S. Bank would have included U.S. Bank's internal assessments of the repurchase demands made by Assured.  Those documents may have included admissions by U.S. Bank regarding the merits of those demands and Assured's indiscriminate use of loan putbacks.  For example, U.S. Bank employees may have expressed the view that Assured and certificateholders were overstating the problem as

a negotiating ploy.  But UBS RESI is forced to speculate, because those documents have been irrevocably destroyed.

## ARGUMENT

**I.      THE COURT SHOULD GRANT UBS RESI'S MOTION FOR SANCTIONS BECAUSE U.S. BANK ACTED IN BAD FAITH BY FAILING TO IMPLEMENT A TIMELY LITIGATION HOLD AND DESTROYED DOCUMENTS RELEVANT TO U.S. BANK'S CLAIMS AND UBS RESI'S DEFENSES.**

A party engages in spoliation when, *inter alia*, it fails to preserve information for another's use as evidence in pending or reasonably foreseeable litigation.  *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001).  Severe sanctions are warranted when the innocent party shows: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("*Zubulake V*").  As described in the Factual Background, *supra*, and discussed further below, all three elements are satisfied here.

**A.      U.S. Bank's Duty To Preserve E-mails Attached Long Before It Brought This Litigation.**

**1.      U.S. Bank Had a Duty To Preserve Documents In 2010.**

"Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("*Zubulake IV*").  As to *when*, the duty attaches "at the time that litigation is reasonably anticipated." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 289 (S.D.N.Y. 2009).  As to *what*, the "[e]vidence that must be preserved includes . . . electronically stored information . . . that the party knows or reasonably should know is relevant to claims or defenses in the action, is reasonably calculated to lead to the discovery of admissible evidence, or is reasonably likely to be requested during discovery."

*R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23-24 (S.D.N.Y. 2010) (footnotes omitted). And as to *who*, the duty "extends to those employees likely to have relevant information." *Zubulake IV*, 220 F.R.D. at 216.

As discussed in the Background, *supra*, U.S. Bank's duty to preserve documents related to the Transactions was triggered in 2010 and repeatedly thereafter as a result of:

**(a) Assured's voluminous repurchase demands and the pre-suit investigation for all three Transactions,** *see* pp. 4-5, 6-8, *supra*; *VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.*, 93 A.D. 3d 33, 40 (N.Y. App. Div. 2012) (affirming holding that party should have anticipated litigation when party sent a letter indicating a breach of contract and reserving its rights); *Indemnity Ins. Co. of N. Am. v. Liebert Corp.*, No. 96 Civ. 6675 (DC), 1998 WL 363834, at *4 n.3 (S.D.N.Y. June 29, 1998) (holding that plaintiff's preservation obligation was triggered, in part, because of "the sheer magnitude of the losses");

**(b) the filing of a lawsuit against the MARM 2007-3 Trust** (the MARM 2007-3 Class Action), *see* pp. 6 *supra*; *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (finding that party had an obligation to preserve documents more than three-years prior to when lawsuit at issue was filed because party "had already been sued once, and there were several indicators [throughout the time period] that they would be sued again"); and

**(c) the certificateholders' repeated threats of litigation,** *see* pp. 5-6 *supra*; *In re Napster, Inc.*, 462 F. Supp. 2d at 1069 (finding reasonable anticipation of litigation where CEO told officer of other company threatened to "sue the venture firm and you people personally" if demands were not met); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 340 (D. Conn. 2009) (finding that duty to preserve arose when plaintiff retained counsel in connection with potential legal action but had not yet identified responsible parties).

**2.**



There is no question that the duty to preserve attaches, at the latest, on the day a party files a lawsuit. *See, e.g.*, *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007) (holding that "the duty to preserve attached at least as early as 1996 when the initial complaints were filed"); *Richard Green*, 262

F.R.D. at 289 (same).[8]  Moreover, for the plaintiff, the duty to preserve is always "triggered before litigation commence[s]." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010), *abrogated on other grounds sub nom. Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012).  *Accord Innis Arden Golf Club*, 257 F.R.D. at 340 (finding that duty arose when plaintiff retained counsel but had not yet identified responsible parties); *Cyntegra, Inc. v. Idexx Labs., Inc.*, Civ. 06-4170, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007) (explaining that plaintiffs "must necessarily anticipate litigation before the complaint is filed"), *aff'd*, 322 F. App'x 569 (9th Cir. 2009).

Redacted

Redacted

**B.    U.S. Bank Acted In Bad Faith By Wantonly Destroying Documents For Two Years After Reasonably Anticipating Litigation.**

U.S. Bank acted with a culpable state of mind when it failed to implement any legal hold after litigation was reasonably anticipated.  There is no question that this goes beyond negligence, which alone would support sanctions.  *See In re WRT Energy Sec. Litig.*, 246 F.R.D. at 195-96 ("[T]he responsible party need not have acted intentionally or in bad faith; negligence alone is sufficient to justify the imposition of some sanction."); *Zubulake IV*, 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").  Instead, the evidence here – including the strong admonition that U.S. Bank received from Magistrate Judge Daniel of the Eastern District of North Carolina in April 2010, in the middle of its failure to preserve evidence relating to the Trusts – compels an inference of a bad faith

---

[8] The fact that the Trustee was directed to file suit on behalf of the trust's beneficiaries did not obviate its duty to preserve documents.  *See Pension Committee*, 685 F. Supp. 2d at 475 (finding plaintiffs, including multiple trusts were under a duty to preserve relevant documents).

17

disregard of discovery obligations. *See Verona v. U.S. Bancorp.*, No. 7:09 Civ. 00057, Dkt. No. 161 (E.D.N.C. Apr. 19, 2010) (ORDER) (Musoff Decl. Ex. 1).

In *Verona*, plaintiffs suing U.S. Bank sought sanctions for spoliation of evidence due to U.S. Bank's failure to suspend its 90-day e-mail deletion policy. *Id.* at 2. The court agreed that U.S. Bank should have implemented a legal hold two months earlier than it did, but ultimately declined to award sanctions because, unlike UBS RESI, the plaintiffs had not shown bad faith or prejudice. *Id.* at 9-10. Nevertheless, Magistrate Judge Daniel warned that, due to its "extremely short retention policy," U.S. Bank "*must be particularly vigilant in promptly implementing legal holds so as to preserve evidence that may be relevant to future litigation.*" *Id.* at 9 (emphasis added).

U.S. Bank simply ignored the warning it received from the court in *Verona*. Redacted
Redacted
Redacted As other courts have noted, a party "cross[es] the line between negligence and bad faith" when it is "on notice that specific relevant documents are scheduled to be destroyed according to a routine document retention policy, and the party does not act to prevent that destruction . . . ." *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *7 (N.D. Ill. Oct. 27, 2003); *see also Donato v. Fitzgibbons*, 172 F.R.D. 75, 82 n.7 (S.D.N.Y. 1997) ("I am satisfied that bad faith can exist in the absence of an intent to destroy evidence."). Redacted
Redacted

---

[9] At a minimum, U.S. Bank's failure to abide by its discovery obligations constitutes gross negligence, which, as explained below, warrants significant sanctions. *Accord VOOM HD Holdings, LLC v. Echostar Satellite, L.L.C.*, No. 600292/08, 2010 WL 8400073 (N.Y. Sup. Ct. Nov. 3, 2010) (finding defendant's "failure to preserve documents constituted, at a minimum, gross negligence," because it was the very same conduct defendant had been sanctioned for in previous litigation).

Moreover, the litigation hold that was finally implemented was woefully insufficient, again supporting a finding of bad faith.

> Redacted

> Redacted

> Redacted

*See also Apple, Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150-51 (N.D. Cal. 2012) (finding adverse inference appropriate where defendant failed to turn off the auto-delete features of its e-mail system); *VOOM*, 93 A.D.3d at 40 (affirming Supreme Court's finding that an adverse inference was warranted in part because following litigation the defendant failed to stop the automatic deletion of e-mails); *see also Zubulake V*, 229 F.R.D. at 431 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy . . . .").

> Redacted

> Redacted

U.S. Bank's unreasonably narrow hold notice is yet another example of its cavalier attitude toward document preservation and disregard of its obligations. *See Pension Committee of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 479 (S.D.N.Y. 2010), *abrogated on other grounds sub nom. Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012); *Northington v. H&M Int'l*, No. 08-CV-6297, 2011 WL 663055, at *17-18 (N.D. Ill. Jan. 12, 2011) (criticizing legal hold where only certain custodians were notified).

> Redacted

> Redacted

*See VOOM HD Holdings*, 93 A.D.3d at 40 (emphasis added); *see also id.* at 40 (finding that defendant's conduct was wrongful where it "rel[ied] on employees to determine which documents were relevant in response to litigation, and to preserve those e-mails by moving them to separate folders"); *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1194 (D. Utah 2009) (holding

19

defendant should not "place operations-level employees in the position of deciding what information is relevant"); *Northington*, 2011 WL 663055, at *17-18 (same); *Zubulake V*, 229 F.R.D. at 432 ("[I]t is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information."). If there were ever a record that supports a finding of bad faith for failure to preserve documents, this is it.

## C.      The Destroyed Documents Are Relevant To UBS RESI's Defenses.

UBS RESI does not need to show prejudice here because when "a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to the party.'" *In re WRT Energy Sec. Litig.*, 246 F.R.D. at 198 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002)). Even "a showing of gross negligence," standing alone, can support the same inference. *Residential Funding*, 306 F.3d at 109. Courts have recognized that they "must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence, because doing so would allow parties who have destroyed evidence to profit from that destruction." *Golia v. Leslie Fay Co.*, No. 01 Civ. 1111, 2003 WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (internal quotation marks omitted); *see also Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2008 WL 113664, at *4 (S.D.N.Y. Jan. 11, 2008) (defendant's "long-term and purposeful evasion of discovery requests," standing alone, was sufficient to support a finding of relevance for purpose of imposing sanctions); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 200 (S.D.N.Y. 2007) (holding that movant was not required to submit extrinsic proof of relevance where movant had established gross negligence), *aff'd*, No. 02 Civ. 7377, 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

Nevertheless, even if UBS RESI were required to show that the destroyed evidence would have helped its defenses, it could readily make that showing here. For example, the destroyed evidence makes it more difficult for UBS RESI to show that it was not provided with prompt notice of the alleged breaches, which is required by the PSAs. (Musoff Decl. Ex. 3 (PSAs § 2.03: "[U]pon receiving notice of a breach, the Trustee *shall* in turn notify [UBS RESI]

20

of such breach." (emphasis added)); *see also* Mem. of Law in Supp. of Mot. to Dismiss, D.E. 15 at 8-9.) And as UBS RESI explained in its motion to dismiss memorandum of law, the Complaint alleges that U.S. Bank only notified UBS RESI of seven of the twenty-one breach notices provided by Assured. (*Id.* at 23-24.) U.S. Bank also has not provided UBS RESI with *any notice* with respect to twelve breach notices by Assured over a nearly two-year period from August 2010 to March 2012. (*Id.*) Likewise, several certificateholders have moved to intervene in this action and assert breach of fiduciary duty claims against the Trustee "arising from the Trustee's failure to promptly notify [UBS RESI] of the breaches of the representations and warranties arising from the underlying mortgage loans." (Proposed Compl. in Intervention ¶¶ 1, 100.)

In response to UBS RESI's motion to dismiss arguments on this point, U.S. Bank has argued that the "*prompt notice*" issue "*is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.*" (Opp'n Mem. of Law, D.E. 30 at 22 (emphasis added).) If so, U.S. Bank's missing documents would obviously have been central to this inquiry. U.S. Bank's now-destroyed documents would have shown what notices, if any, it was receiving from Assured or others, what actions it took internally once it received any notices, how quickly it took action, when it became aware of any alleged R&W breaches through its own investigation, and any reasons it had for failing to act promptly. In short, U.S. Bank contends that "the parties have acted with all reasonable expedition in providing breach notices to [UBS RESI]," *id.* at 23 n.14, but there is now no way to challenge this assertion through a "fact-intensive inquiry," because U.S. Bank has destroyed the "facts."

In addition, during the two years preceding this suit that U.S. Bank failed to preserve evidence, its employees likely discussed or commented on the merits of Assured's voluminous repurchase demands. For example, U.S. Bank's employees may have recognized Assured's efforts as an abuse of the contractual repurchase remedy for negotiating purposes and not a sincere dispute regarding all of the putback loans. UBS RESI cannot look for any such

admissions due to U.S. Bank's document destruction.  Accordingly, UBS RESI has been prejudiced by the Trustee's failure to preserve plainly relevant documents.

**II.      U.S. BANK'S EGREGIOUS DISCOVERY ABUSES CAN ONLY BE REMEDIED BY A MEANINGFUL SANCTION.**

This Court has wide discretion in determining the appropriate sanction for spoliation.  *See Zubulake V*, 229 F.R.D. at 430.  "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.  The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'"  *In re WRT Energy Sec. Litig.*, 246 F.R.D. at 200 (alteration in original) (citation omitted).  The severity of the sanctions imposed should be congruent with the destroyer's degree of culpability.  *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 139-40 (S.D.N.Y. 2009); *Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048, 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005).

**A.      Terminating Sanctions Should Be Imposed.**

A terminating sanction is properly imposed for intentional or bad faith conduct.  *See Met. Opera Ass'n, Inc. v. Local 100, Hotel Emp. & Rest. Emp. Int'l, Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003).  Terminating sanctions are intended not just as a penalty but "'to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Id.* at 219 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).  As explained above, considered in the context of the *Verona* court's warnings, the repeated events that should have led U.S. Bank to issue a legal hold and suspend its automatic e-mail deletion policy, and the deficient hold that U.S. Bank belatedly issued, it is difficult to imagine a more egregious example of bad faith that does not involve affirmative instructions to destroy documents.  Indeed, the production of just 128 e-mails from the custodians' accounts, which does not include one single e-mail from the account of ⸤   Redacted   ⸥ Ms. Cawley, speaks for itself.

22

Furthermore, in light of the importance of the prompt notice argument, this destruction of evidence has a significant impact on UBS RESI's ability to defend itself from the claims asserted by the Trusts. Under such circumstances, terminating sanctions are appropriate because lesser sanctions are ill-suited where, as here, the spoliator – a plaintiff pursuing the claim – has acted "in bad faith" or "irretrievably deleted computer files that likely contained important discovery information." *Gutman v. Klein*, No. 03 CV 1570, 2008 WL 4682208, at *12 (E.D.N.Y. Oct. 15, 2008).

**B.     UBS RESI Is Entitled To An Adverse Inference Against The Trustee At Trial.**

If this suit is not dismissed, an adverse inference instruction should be imposed against U.S. Bank. Where, as here, the Trustee has acted in bad faith, there is no question that a harsh adverse inference is appropriate. *See Pension Committee,* 685 F. Supp. 2d at 470. "The harshness of the instruction should be determined based on the nature of the spoliating party's conduct – the more egregious the conduct, the more harsh the instruction." *Id.*

The First Department recently affirmed an adverse inference on similar facts to those present here. In *VOOM HD Holdings LLC v. Echostar Satellite L.L.C.*, 93 A.D. 3d 33, 40 (N.Y. App. Div. 2012), the court held that the defendant's litigation hold was insufficient for three reasons. First, the defendant did not issue a litigation hold until after the action commenced. *Id.* at 45. Second, the defendant's auto-delete function deleted "e-mails after litigation had commenced." *Id.* at 46. And finally, the defendant failed to identify all key employees, and further relied on its employees, "many of whom, presumably were not attorneys – to determine whether documents were potentially responsive to litigation, and then to remove each one from [defendant's] pre-set path of destruction." *Id.* at 40; *see also id.* at 42 ("[W]here a party is a large company, it is insufficient, in implementing such a litigation hold, to vest total discretion in the employee to search and select what the employee deems relevant . . . ."). As explained above, U.S. Bank's failure is more egregious due to the long time frame in which it destroyed evidence and the warning from a federal court to be vigilant about document preservation.

But even if U.S. Bank were found only to be grossly negligent, an adverse inference would still be an appropriate remedy. *See, e.g., Pension Committee*, 685 F. Supp. 2d at 470 (ordering adverse inference instruction against plaintiff for gross negligence); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 200 (same). In *Pension Committee*, much like this case, the party "fail[ed] to institute a timely written litigation hold," "continued to delete electronic documents after the duty to preserve arose," and "did not request documents from key players." *Pension Committee*, 685 F. Supp. 2d at 479. Further, the attorneys "place[d] total reliance on the employee to search and select what that employee believed to be responsive records," meaning the "[s]earches were severely deficient." *Id.* at 473, 479. As a result, an adverse inference was granted.

## C.    UBS RESI Is Entitled To The Fees And Costs Associated With This Motion.

The Court should also order U.S. Bank to reimburse UBS RESI's for the fees and expenses incurred in bringing this motion. *See* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."); *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (stating that although "[w]e have never held that Rule 37(b)(2) expenses are mandatory and need not do so here, . . . [t]he use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions . . . applies").

## CONCLUSION

For the foregoing reasons, UBS RESI respectfully requests that this Motion be granted.

24

Dated: New York, New York
      June 19, 2013

Of Counsel:

Paul J. Lockwood (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Phone: (302) 651-3000

Respectfully submitted,

Jay B. Kasner (jay.kasner@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Phone:  (212) 735-3000
*Attorneys for Defendant UBS Real Estate Securities Inc.*

25