UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MASTR ADJUSTABLE RATE MORTGAGES    :
TRUST 2006-OA2, MASTR ADJUSTABLE       :
RATE MORTGAGES TRUST 2007-1, AND       :
MASTR ADJUSTABLE RATE MORTGAGES    :
TRUST 2007-3,                                                      :
                                                                              :
                                      Plaintiffs,       :
                                                                              :      12 Civ. 7322 (HB)
            - against -                                        :
                                                                              :      **OPINION & ORDER**
UBS REAL ESTATE SECURITIES INC.,             :
                                                                              :
                                  Defendant.    :
-------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Defendant UBS Real Estate Securities Inc. ("UBS") moves to dismiss an action for breach of contract brought by MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1, and MASTR Adjustable Rate Mortgages Trust 2007-3 (collectively, the "Trusts"), acting through U.S. Bank National Association in its capacity as the Trustee (the "Trustee"). For the reasons stated below, UBS's motion is DENIED.

## Background

       The Trusts were established pursuant to respective Pooling and Servicing Agreements ("PSAs") under New York law. Compl. ¶ 7. UBS, as the Transferor under the PSAs, acquired thousands of residential mortgage loans, which in turn were conveyed to the Trusts so that the latter could issue securities for sale to investors ("Certificate Holders"). *Id.* ¶ 2. The Certificate Holders have a right to receive the cash flow generated by the pool of underlying mortgage loans in each Trust, in the form of principal and interest payments. *Id.* ¶ 24. Certain classes of senior securities, however, are additionally guaranteed payments by Assured Guaranty Municipal Corp. ("Assured" or "Certificate Insurer") in the event that the payments on the underlying mortgage loans are insufficient. *Id.* ¶ 9.

       The gravamen of the Complaint is that UBS breached its contractual obligation under the PSAs to repurchase certain mortgage loans that did not conform to its representations and warranties ("R&W"). In Schedule II of each PSA, UBS made various R&W about the mortgage

1

loans conveyed to the Trusts, such as the accuracy of mortgage loan schedules and the adherence to loan originator's underwriting guidelines. *Id*. ¶ 28.  With respect to some of the loans in the 2006-OA2 and 2007-1 Trusts, UBS also represented that the originator made a reasonable determination about the borrower's ability to make timely payments. *Id*.  Section 2.03 of each PSA, in turn, provides that UBS—upon "its discovery or its receipt of written notice from any party" of a R&W breach that "materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan"—must "cure" the breach within 90 days, or in the alternative, purchase such Mortgage Loan at the Purchase Price.[1] Musoff Decl. Exs. C-E § 2.03.

      The Trusts allege that notwithstanding UBS's R&W, there were "a large number of delinquencies among the mortgage loans underlying each Transaction" and that as of September 25, 2012, 46% of the loans in the 2006-OA2 Trust, 34% of the loans in the 2007-1 Trust, and 48% of the loans in the 2007-3 Trust were delinquent for at least sixty days. Comp. ¶¶ 28, 31. Assured, as the Certificate Insurer covering payment shortfalls for certain classes of certificates, allegedly performed a review of certain loans and sent 21 notices of breach to UBS in the period between August 9, 2010 and September 27, 2012, requesting UBS to cure or repurchase within 90 days of notice a total of 4,642 defective mortgage loans in the three Trusts with an original unpaid principal balance of approximately $2,025,238,559.93. *Id*. ¶¶ 5, 37-38.  The Trustee relayed seven of such notices to UBS. *Id*. ¶¶ 37-38.  The Complaint alleges that in each breach notice, "details were given of the violations of the Mortgage Representations . . . in particular the Mortgage Representation that all mortgage loans were underwritten pursuant to the applicable Underwriting Guidelines . . . and the Mortgage Representation that the date in the Mortgage Loan Schedule was accurate." *Id*. ¶ 39.  Yet, as of the time the Complaint was filed, UBS repurchased or substituted only a fraction of those mortgages, and the 90-day cure period had expired with respect to a total of 3,616 mortgage loans with an original unpaid principal balance of approximately $1,642,318,795. *Id*. ¶¶ 37, 40.

---

[1] Although the same provision provides that Defendant may also "substitute" such mortgage loans, the parties agree that the substitution remedy is no longer available and argue only with respect to the repurchase remedy. Def.'s Supp. 13 n.10; Pls.' Opp'n. 1 n.2.

**Discussion**

UBS makes four arguments in support of its motion, all of which are addressed below. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell M. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court must accept all factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* At the motion to dismiss stage, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted). Accordingly, the Court here also considers the terms of the PSAs governing the three Trusts.

**A. Trusts' Capacity to Sue**

UBS's first ground for dismissal is that the Trusts, which appear in the caption as Plaintiffs, may not sue to enforce the provisions of the PSAs, unlike the Trustee. However, this concern is sufficiently addressed by the introductory paragraph of the Complaint: "Plaintiffs . . . acting through U.S. Bank National Association, solely in its capacity as Trustee [] for the Transactions . . . alleges as follows." Compl. 1. While the caption identifies only the Trusts as Plaintiffs, it is "[t]he substance of the pleadings, not the caption, that determines the identity of the parties." *Mateo v. JetBlue Airways Corp.*, 847 F. Supp. 2d 383, 384 (E.D.N.Y. 2012) (citations omitted). Here, the Complaint leaves no doubt that the Trusts' rights are being enforced by the Trustee. *See E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 525 (S.D.N.Y. 2001).

**B. Availability of Money Damages**

UBS argues next that the Complaint should be dismissed because the Trusts improperly seek money damages, which are foreclosed by the sole remedy provision of the PSAs. "In interpreting a contract under New York law, the Court must consider all the provisions to determine the intent of the parties, and 'words and phrases . . . should be given their plain meaning.'" *Karmely v. Wertheimer*, No. 11 Civ. 541, 2012 WL 3583141, at *7 (S.D.N.Y. Aug. 21, 2012) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)). A contract term is ambiguous when it could suggest "more than one meaning

when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted).  "Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).

Here, Section 2.03 of each PSA qualifies UBS's repurchase obligation as follows: "It is understood and agreed that the obligation under this Agreement of the Transferor to cure, repurchase or replace any Mortgage loan as to which a breach has occurred and is continuing shall constitute *the sole remedies* against the Transferor respecting such matters available to Certificateholders . . . or the Trustee on their behalf." Musoff Decl. Exs. C-E § 2.03 (emphasis added).  The Complaint, on the other hand, does not explicitly seek UBS's specific performance but instead requests "an award for damages . . . including at a minimum: i. Certificateholders' and Assured's compensatory and consequential losses, including lost profits and business opportunities; ii. Trustee's attorneys' fees, costs, and expenses . . . .", but also asks for "other and further relief as the Court may deem just and proper." Compl. 21.  In response to UBS's argument that the Trusts may seek only specific performance under the sole remedy clause, the Trusts contend that the limitation applies only to the breach of R&W, whereas UBS's repurchase breach is an independent breach, for which the Trusts may seek money damages.

My view lies somewhere between the parties' extreme positions advocating an all-or-nothing result.  First, I decline to dismiss the entire Complaint on the ground that the Trusts seek money damages.  The Complaint does not just seek money damages but "other and further relief as the Court may deem just and proper," Compl. 21, which may include specific performance, *see* Oral Arg. Tr. 33:10-13.  In addition, "although the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978) (citing 6 J. Moore, W. Taggert, & J. Wicker, Moore's Federal Practice ¶ 54.62, pp. 1261–1265 (2d ed. 1976)).  This is

because "[u]nder Rule 54(c) of the Federal Rules of Civil Procedure, a court can grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86, *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (citation omitted).

At this stage, I also decline to foreclose the possibility of awarding damages in lieu of specific performance. Generally, when "specific performance of the agreement is not possible, the parties are left to whatever legal or equitable remedies they may have." *Soggs v. Crocco*, 668 N.Y.S.2d 796, 798 (4th Dep't 1998). The First Circuit echoed this position in the context of repurchase remedy in *Resolution Trust Corp. v. Key Fin. Servs., Inc.*, when it applied New York law to a similar contractual provision that specified "repurchase" as "the sole and exclusive remedy for any material breach of any representation or warranty . . . ." 280 F.3d 12, 18 n.13 (1st Cir. 2002). Notwithstanding such language, the First Circuit held, "Whether or not [the defendant] committed an independent breach by failing to repurchase on demand, the district court was free to make [the plaintiff] whole, and it did so in terms of the obligation imposed by the contract." *Id*. at 18. I share that view and reject the contrary position adopted by a district court in another circuit. *See MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Mortgage Corp.*, 843 F. Supp. 2d 996 (D. Minn. 2012).

I further note that at least two courts in this district facing similar sole remedy clauses were not troubled by the prospect of money damages. *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB,* No. 11 Civ. 2375, 2011 WL 5335566, at *5 (S.D.N.Y. Oct. 31, 2011) (reading the sole remedy clause as limiting the plaintiff's remedies to enforcing cure or repurchase obligations or damages equivalent thereto); *La Salle Bank Nat. Ass'n v. CIBC, Inc.*, No. 08 Civ. 8426, 2012 WL 112208, at *2 (S.D.N.Y. Jan. 12, 2012) (rejecting the proposition that only specific performance is available under the sole remedy clause). I am aware that in *Flagstar*, there was an additional clause which stated that the plaintiffs could enforce the repurchase obligation "at law or in equity," 2011 WL 5335566, at *5, while in *La Salle Bank*, a clause specified that "no limitation of remedy" was implied by the sole remedy provision with respect to repurchase breach, 2012 WL 112208, at *1. However, it does not logically follow that the absence of such a clause here forecloses the possibility of damages in lieu of specific performance. After all, the court in *Flagstar* referred back to the sole remedy clause to answer

the remedy question, concluded the "'cure or repurchase' obligation to be the exclusive remedy available to [the plaintiff] for [the defendant]'s breach of a representation or warranty," 2011 WL 5335566, at *5, and subsequently awarded damages, *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375, 2013 WL 1308979 (S.D.N.Y. Apr. 1, 2013).  I see no meaningful distinction here, where the Trustee undoubtedly has the power to "enforce the Transferor's obligations hereunder to []purchase such Mortgage Loan at the Purchase Price." Musoff Decl. Exs. C-E § 2.03.  Although UBS attempts to rely on *Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, that case is inapposite; the issue there was whether the plaintiff was entitled to specific performance or whether the plaintiff had to, in the alternative, resort to money damages, and the court held that specific performance was available given the language of the sole remedy clause. No. 11 Civ. 4062, 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013) (reasoning that "[w]hen specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted").  I also do not read *Assured Guar. Corp. v. EMC Mortgage, LLC*, as precluding damages but as limiting potential damages to an amount that is commensurate with the sole remedy clause, just like the *Flagstar* case that it cites. 39 Misc. 3d 1207(A), at *6 (N.Y. Sup. Ct. 2013) (observing that "Judge Rakoff reached the same conclusion in the Flagstar Action (2011 WL 5335566 at *4–5), when he addressed nearly identical contractual language").

On the other hand, I disagree with the Trusts to the extent that they argue that breach of the repurchase obligation somehow entitles them to damages that are greater than those that are commensurate with the sole remedy clause.  No matter how the breach is characterized, Plaintiffs' repurchase remedy is limited to "the Purchase Price" under the PSAs. Musoff Decl. Exs. C-E § 2.03.  Section 2.03 clearly states that "the obligation under this Agreement of the Transferor to cure, repurchase or replace any Mortgage loan as to which a breach has occurred and is continuing shall constitute *the sole remedies* against the Transferor *respecting such matters* available to Certificateholders . . . or the Trustee on their behalf." *Id.* (emphasis added). The plain language, "respecting such matters," covers all remedies arising from a breach of the R&W. *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 517 (1st Dep't. 2008), *aff'd*, 920 N.E.2d 359 (2009) ("We note that clear contractual language does not become ambiguous simply because the parties to the litigation argue different

6

interpretations."). Indeed, similar efforts to avoid the sole remedy clause have been rejected by other courts. *See, e.g.*, *Flagstar*, 2011 WL 5335566, at *6 (rejecting the plaintiff's argument that the defendant forfeited the sole remedy limitation by breaching its repurchase obligations and holding that the plaintiff is "limited to remedies that are commensurate with [the defendant's] alleged breach of its 'cure or repurchase' obligation"); *Assured Guar. Mun. Corp. v. DLJ Mortgage Capital, Inc.*, 964 N.Y.S.2d 57, at *8 (Sup. Ct. 2012) (dismissing claims for consequential damages and fees on the ground that "[w]hat was contemplated was clearly expressed—that the Repurchase Protocol would be the sole remedy available to the Certificateholders."); *EMC Mortgage, LLC*, 39 Misc. 3d 1207(A), at *4 (rejecting the argument that "the 'sole remedy' language . . . only applies to breaches of the Loan Warranties").

### C. Failure to State a Claim

Thirdly, UBS urges the Court to dismiss the case on the ground that the Complaint does not adequately plead a breach of contract. There are four elements to a breach of contract claim under New York law: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*, Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). UBS first interprets various provisions of the PSAs to mean that UBS is not required to repurchase loans that are liquidated, in default for more than 180 days, or for which the underlying properties have been sold, and argues the Trusts have failed to state a breach of contract claim because "the Complaint's blunderbuss pleading fails to state whether any (or all) of the loans fall within the purview of the Sole Remedy Provision." Def.'s Supp. 18-9. Secondly, UBS argues that "adequate performance by the plaintiff" has not been alleged because the Complaint does not allege that there was prompt notice or notice by the Trustee, as required pursuant to Section 2.03. Def.'s Supp. 23.

At this stage of the litigation, neither argument is compelling. Even assuming *arguendo* that UBS's reading of the contractual provisions is correct, the Complaint comfortably meets the pleading standard by pointing to the repurchase provision in the PSAs and by alleging the results of Assured's loan review, written notices to UBS by Assured and the Trustee, UBS's response, and losses incurred by the Certificate Holders and Assured. Compl. ¶¶ 29-42. Defendant's

reliance on *WMC Mortgage Corp.* is misplaced; there, the defendant moved for partial summary judgment, not where we are, because it was "undisputed that . . . with respect to the 80 loans that are the subject of this motion, that every borrower had defaulted; that the properties serving as collateral . . . were foreclosed upon and sold . . . ." 2012 WL 4511065, at *3.  Not only is there no such concession or evidence in this case, even there, the court held that summary judgment based on plaintiff's failure to satisfy the "prompt notice requirement" was inappropriate because it was "possible that discovery would unearth further information as to precisely what the Trustee knew about the breaches and when, and depriving the Trustee of the opportunity to discover such information would be inappropriate." *Id*. at *7.

### D. Effect of the Certificate Insurer's Settlement Agreement

Lastly, UBS argues that the recent settlement between UBS and Assured in a related case (with which this case was consolidated) further supports its motion to dismiss.  Specifically, the Court was informed that: (1) Assured and UBS executed a Settlement Agreement and Release on May 6, 2013, whereby UBS was granted a full, final, and complete release of Assured's claims with respect to the three Trusts' certificates; (2) Assured advised the Trustee on May 8, 2013 that it had withdrawn and rescinded all breach notices regarding the certificates; and (3) Assured asked the Trustee to cease pursuing any claims on its behalf in this action on May 6, 2013, advising Assured's intention to stop funding the present litigation.

Here, the Trustee brought suit to enforce UBS's repurchase obligation on behalf of Assured and the Certificate Holders, and UBS's settlement with the former does not affect the claims of the latter.  As for Assured's withdrawal of its notices, the plain language of Section 2.03 suggests that UBS's repurchase obligation remains, as it is triggered "within ninety (90) days of the earlier of its *discovery* or its *receipt* of written notice from any party of a breach of any representation or warranty . . . ."  Musoff Decl. Exs. C-E § 2.03.  On the other hand, Section 2.03 contains no language about a party's withdrawal of notice, and the Complaint separately alleges the Trustee's notices. *See* Compl. ¶¶ 37-38.  Lastly, this litigation may be discontinued in the future, but as of today, the Trustee has not notified the Court to that effect, and I am convinced it knows how to do so.  In short, UBS's settlement agreement with Assured does not form the basis for dismissing this action; rest assured that such a missive would get my attention.  Indeed, I have a July 12 letter to the contrary.

## Conclusion

I have considered the parties' remaining arguments and find them to be without merit. For the reasons stated, UBS's motion to dismiss is DENIED. The Clerk of Court is instructed to close the motion and remove it from my docket.

**SO ORDERED**
**August 14, 2013**
**New York, New York**

                                                Hon. Harold Baer, Jr.
                                                      U.S.D.J.