```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MASTR ADJUSTABLE RATE MORTGAGES      : 12 Civ. 7322 (HB) (JCF)
TRUST 2006-OA2, MASTR ADJUSTABLE     :
RATE MORTGAGES TRUST 2007-1, MASTR   :      MEMORANDUM
ADJUSTABLE RATE MORTGAGES TRUST      :      AND ORDER
2007-3,                              :
                                     :
             Plaintiffs,             :
                                     :
     - against -                     :
                                     :
UBS REAL ESTATE SECURITIES INC.,     :
                                     :
             Defendant.              :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This action and a related case, <u>Assured Guaranty Municipal Corp. v. UBS Real Estate Securities, Inc.</u>, concern residential mortgage-backed securities ("RMBS"), which, as many now know, "pool residential mortgage loans into a trust that issues certificates" entitling purchasing investors to a share of the principal and interest payments generated by the loans. <u>Assured Guaranty Municipal Corp. v. UBS Real Estate Securities, Inc.</u>, No. 12 Civ. 1579, 2012 WL 3525613, at *1 (S.D.N.Y. Aug. 15, 2012).[1] The

---

[1] The instant case was filed after the decision of the Honorable Harold Baer, U.S.D.J., in the <u>Assured Guaranty</u> action that Assured -- the company providing sponsor UBS Real Estate Securities Investments Inc. ("UBS") with financial guaranty insurance "to cover shortfalls in the event that cash flows from the loans are insufficient to pay investors their due" -- was barred by relevant agreements from asserting claims related to UBS' contractual repurchase obligations. <u>Id.</u> at *1, *4-6. Because Judge Baer held that only the trustee of the trusts that issued the certificates could enforce such obligations, <u>id.</u>, the trustee, U.S. Bank National Association ("the plaintiff" or "U.S. Bank"), filed this action on behalf of the three trusts, which are the nominal plaintiffs here. (Opinion and Order dated Aug. 15, 2013 ("Aug. 15 Order") at 1-3).

complaint here alleges that UBS, the sponsor of the transactions at issue, breached its contractual obligation "to repurchase certain mortgage loans that did not conform to its representations and warranties." (Aug. 15 Order at 1). U.S. Bank seeks to compel UBS to produce certain discovery. For the reasons below, the motion to compel is granted in part.

Background

Two opinions from Assured Guaranty are relevant here. In the first, I required UBS to "produce responsive documents including those that post-date the [RMBS] transactions [sponsored by UBS] by more than one month," reasoning:

> Documents that post-date the transactions may nevertheless relate back to the state of affairs as it existed at the crucial time. For example, UBS's retrospective assessment of the subject mortgages, triggered by Assured's demands that UBS repurchase the loans, may well analyze the representations that UBS made at the time of closing. Similarly, UBS's own repurchase demands could indicate that it complained about the same representations that it passed along to Assured. Finally, UBS's monitoring of the transactions after closing may have included an assessment of representations previously made to Assured and to the rating agencies.

Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc., No. 12 Civ. 1579, 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (Assured Guaranty I); see also Assured Guaranty Municipal Corp. v. UBS Real Estate Securities, Inc., Nos. 12 Civ. 1579, 12 Civ. 7322, 2013 WL 1195545, at *2 (S.D.N.Y. March 25, 2013) (Assured Guaranty II) ("UBS was ordered to produce relevant documents generated up to February 2, 2012 -- the date of the filing of the Complaint in this action . . . .").

In the second opinion, I addressed UBS' assertions of work product immunity and attorney-client privilege over documents reviewed pursuant to Assured Guaranty I. UBS asserted that "the vast majority of the documents" produced by the "Repurchase Custodians" -- an eight-person group (working under the direction of UBS counsel Williams & Connolly LLP) created "to conduct retroactive analyses of the [relevant] [t]ransactions in response to Assured's repurchase requests" -- were protected from disclosure. Assured Guaranty II, 2013 WL 1195545, at *6; (Declaration of Richard Andrews dated Feb. 5, 2013 ("Andrews Decl."), attached as Exh. A to Letter of Sean P. Baldwin dated Aug. 6, 2013 ("Pl. Memo."), ¶ 3). I observed that reasonable anticipation of litigation and hiring of counsel did not "automatically bring these documents within the scope of work product doctrine," because, pursuant to the agreements governing the relevant transactions, "UBS was contractually obligated to conduct repurchase reviews" in the ordinary course of business when a repurchase demand was made. Assured Guaranty II, 2013 WL 1195545, at *7; (Declaration of John Lantz dated Feb. 5, 2013 ("Lantz Decl."), attached as Exh. C to Pl. Memo., ¶ 5). Thus, "[t]he mere fact that outside counsel and consultants were retained to assist the repurchase review is insufficient to shield all of the repurchase documents from discovery." Assured Guaranty II, 2013 WL 1195545, at *8. Instead, documents would be protected as work product only if they were "authored by Williams & Connolly or its agents [and] were 'specifically directed to litigation strategy

or possible litigation defenses . . . because they would not have been produced in the form irrespective of the threat of litigation.'"  Id. (quoting United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co., Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 744369, at *9 (S.D.N.Y. June 8, 2000)).

As to attorney-client privilege, I observed that it "shields only 'confidential communications made between a client and his attorney for the purpose of facilitating the rendition of legal advice or services" and does not protect "communications that relate primarily to business matters." Id. at *9 (quoting Gruss v. Zwirn, 276 F.R.D. 115, 123 (S.D.N.Y. 2001)).  That is true even if the communication is between business people and in-house counsel. Id.  Because "the documents at issue mostly relate[d] to business matters" or "involve[d] communications between [or among] UBS businesspeople," a "substantial" number of them "would not be protected."  Id.

I further credited UBS' argument that creating a document-by-document privilege log would be an excessive burden, and therefore allowed the defendant to provide a categorical log.[2]  Id. at *9-10.

U.S. Bank's primary argument here is that UBS violated both of these orders.

Discussion

    A.    Failure to Produce or Log Documents

U.S. Bank contends that UBS has neither produced nor logged a

---

[2] In the end, UBS created a document-by-document log.  (UBS Privilege Log ("Priv. Log"), attached as Exh. D to Pl. Memo.).

4

significant number of relevant, discoverable documents. (Pl. Memo. at 2-6). As support, it cites a discrepancy between UBS' representation in the briefing on the motion resolved in <u>Assured Guaranty I</u> regarding the burden that would be imposed if UBS had to produce a document-by-document privilege log and the number of documents actually produced or logged and withheld for privilege in response to <u>Assured Guaranty II</u>. Specifically, U.S. Bank points to a declaration from a paralegal working on the case that stated that over 304,000 e-mails were sent or received by the Repurchase Custodians and that 28,000 of these were sent or received from in-house counsel, Williams & Connolly, or the consultant hired by Williams & Connolly to assist in the repurchase analyses (Andrews Decl., ¶ 6; Lantz Decl., ¶ 12), as well as a declaration from one of the Repurchase Custodians stating that 80-90% of his time after August 9, 2010 (the date of Assured's first repurchase demand) was spent analyzing Assured's repurchase demands (Lantz Decl., ¶ 15). It contrasts these numbers with the number of e-mails actually produced from the Repurchase Custodians -- 2,280 -- and the number of documents from the Repurchase Custodians logged and withheld -- 3,629. (Pl. Memo. at 5; Letter of Sean A. Baldwin dated August 30, 2013 ("Reply") at 3; Declaration of Jennifer L. Marrone dated Aug. 30, 2013, attached as Exh. A to Reply, ¶¶ 4-5). From this, U.S. Bank concludes that either "UBS grossly misrepresented the volume of emails . . . the [] repurchase custodians had sent or received" or "UBS has not faithfully abided by its discovery obligations in searching for and producing . . . documents." (Pl. Memo. at 6).

UBS insists that it has complied with its discovery obligations, "appl[ying] . . . agreed-upon search terms to its custodians electronic mail and documents, review[ing] the documents that 'hit' for those search terms . . . produc[ing] the vast majority of the responsive documents, and logg[ing] documents that were privileged." (Letter of Scott D. Musoff dated Aug. 23, 2013 ("Def. Memo.") at 5).  It explains the discrepancy identified by U.S. Bank by opining that it (UBS) must have "underestimated the volume of day-to-day unrelated UBS e-mails, personal e-mails, spam, etc., within each Repurchase Custodian's e-mail account."[3]  (Def. Memo. at 7).

The explanation is implausible.  It would mean that over 98% of the e-mail traffic of the Repurchase Custodians (as a group) was unrelated to analysis of the repurchase demands. (Reply at 3).  In the case of Mr. Lantz, it would mean that, although "80% to 90% of [his] time was spent analyzing Assured's repurchase demands" (Lantz Decl., ¶ 15), 96% of his e-mails were unrelated to such analyses.  (Pl. Memo. at 5; Reply at 3).  Indeed, U.S. Bank's

---

[3] In support of its argument that it has complied with its discovery obligations, UBS compares the number and percentage of documents reviewed and produced by UBS to the number and percentage reviewed and produced by U.S. Bank.  This comparison is simplistic and unhelpful.  As U.S. Bank points out, UBS compares the percentage of documents produced from all of U.S. Bank's custodians to the percentage of documents produced from UBS's Repurchase Custodians.  (Reply at 3).  Moreover, the comparison ignores the fact that UBS was in a materially different position vis à vis the relevant transactions and repurchase demands than was U.S. Bank: UBS was obligated to conduct reviews of transactions that were the subject of repurchase demands; U.S. Bank was a "limited trustee with a very narrow role in the [relevant] [t]ransactions." (Reply at 4).  Thus, it is unsurprising that U.S. Bank would have fewer relevant documents than UBS.

hypotheses -- that UBS engaged in shoddy document review or misrepresented the e-mail volume in support of its burdensomeness argument -- seem more likely.

However, rather than immediately ordering UBS to produce "the tens of thousands of additional repurchase documents that it continues to withhold" -- as requested by U.S. Bank (Reply at 4) -- it is prudent to require UBS to produce for U.S. Bank's review a sample of documents from the universe of those UBS has neither produced nor logged as privileged, pursuant to the following protocol:

1. UBS will randomly sample 1,000 of these unproduced, unlogged documents from each of two of the Repurchase Custodians -- William Chandler and John Lantz.

2. Within three days of the date of this order, UBS will review these for privilege and produce the non-privileged documents to U.S. Bank for its review, along with a privilege log listing the sampled documents withheld.

3. Within three days of U.S. Bank's receipt of those documents, it will review them to determine which are relevant and which were properly withheld as non-responsive and report the results of their review to me. The report should include, at a minimum, the number of documents reviewed by U.S. Bank, the number U.S. Bank contends were improperly withheld, and an explanation of why the documents should have been produced.

4. After I review the report, I will craft an appropriate remedy or deny U.S. Bank's application.

While it would not normally be appropriate to require the production of documents identified by the producing party as non-responsive to discovery requests, that is the only efficient means here of resolving conflicting evidence of whether UBS has, in fact,

7

complied with its discovery obligations.

    B.   <u>Attorney-Client Privilege and Work Product Immunity</u>

U.S. Bank requests that I review <u>in camera</u> the 3,629 documents from the Repurchase Custodians for which UBS has claimed attorney-client privilege or work product immunity. (Pl. Memo. at 6, 10). U.S. Bank asserts such review is necessary for a number of reasons.

    1.   <u>Documents Created Prior to April 2010</u>

UBS seeks to protect as work product a number of documents created prior to April 2010, the month during which UBS began to anticipate this litigation. (Pl. Memo. at 6-7). The defendant contends that it was a "huge player in the RMBS markets . . . until late 2007," and that these early documents were created in anticipation of other litigation. (Def. Memo. at 8). However, U.S. Bank points out that Mr. Lantz, who, as a UBS surveillance manager and mortgage specialist between August 2005 and July 2010, reviewed repurchase demands, stated that he was unaware of "any instance in which UBS anticipated significant litigation over repurchase demands . . . prior to the demands sent by Assured in August of 2010." (Reply at 5; Lantz Decl., ¶¶ 3, 6). Moreover, Mr. Lantz stated that during the period between August 2005 and July 2010 "UBS received only a small number of repurchase demands claiming breaches of representations and warranties." (Lantz Decl., ¶ 4).

A review of the 552-page privilege log reveals that very few of the pre-April 2010 entries are withheld on the basis of work product protection. (Priv. Log). For example, in the first 80

pages (which include only pre-April 2010 documents), only 31 entries claim work product protection. (Priv. Log at 1, 55, 56, 57, 60, 61, 64, 65, 67, 74, 75, 80). This is entirely consistent with Mr. Lantz's testimony.

### 2. Documents Concerning Early Default Claims

UBS has logged as privileged a number of e-mails sent among business people or among business people and in-house counsel concerning "repurchase reviews in connection with possible early payment default claims." (Pl. Memo. at 7). U.S. Bank asserts that these documents concern ordinary business matters, pointing out that Mr. Lantz testified that such reviews "could often be handled without resorting to legal advice." (Pl. Memo. at 7; Lantz Decl., ¶ 5).

UBS argues that the fact that a limited number of such documents are privileged is consistent with Mr. Lantz's testimony (Def. Memo. at 9). However, UBS does not explain why it claims attorney-client privilege over documents exchanged exclusively among business people.[4] See Assured Guaranty II, 2013 WL 1195545, at *7 ("The burden of establishing any right to protection is on the party asserting it." (citing In re Grand Jury Subpoenas dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003)).

### 3. Documents Sent Among Business People

U.S. Bank objects to the assertion of work product immunity over a number of documents that were sent among business people or

---

[4] I note that there appears to be disagreement about whether Sean Fairweather was in-house counsel for UBS. (Pl. Memo. at 7 n.9; Def. Memo. at 9 n.10).

were merely attached to an e-mail purportedly requesting or reflecting legal advice. (Pl. Memo. at 7-8 & Exhs. E, F). UBS defends these categorizations, asserting that such communications

> were specifically created at the direction of outside litigation counsel at Williams & Connolly or litigation counsel's agents and, crucially, would not have been created if UBS [] was not preparing for litigation. Litigation counsel would never have been retained in the ordinary course of business.

(Def. Memo. at 9). UBS emphasizes this last point later in its submission: "Again, UBS [] would not have retained Williams & Connolly had it not anticipated litigation." (Def. Memo. at 10). The argument seems to be that, because UBS hired Williams & Connolly when it anticipated litigation, "Williams & Connolly was not assisting in any business purposes or performing any contractually mandated review that would have otherwise been done by UBS." (Def. Memo. at 10).

This is perilously close to an argument I rejected in Assured Guaranty II. I explained, "The mere fact that outside counsel . . . w[as] retained to assist the repurchase review is insufficient to shield all of the repurchase documents from discovery." Assured Guaranty II, 2013 WL 1195545, at *8. Rather, only those documents authored by Williams & Connolly or its agents "specifically directed to litigation strategy or possible litigation defenses" are covered by work product immunity. Id. (internal quotation marks omitted).

UBS also states that "many of the allegedly improperly withheld documents advise UBS [] on the strength of its legal arguments." (Def. Memo. at 10). But the defendant does not

10

explain how an e-mail circulated among only business people unqualified to give legal advice could have that purpose. (Reply at 6).

In short, UBS' explanation does not meet its burden of establishing the right to this protection. See id. at *7.

4. Other Repurchase Documents

U.S. Bank argues that "even those repurchase-related documents that were sent to or from counsel and that purportedly requested or reflected legal advice appear for the most part to relate to . . . ordinary business issues." (Pl. Memo. at 9) (internal quotation marks omitted). U.S. Bank identifies a few of these e-mails, logged as forwarding communications reflecting and requesting legal advice "regarding loan repurchase requests from Assured." (Pl. Memo. at 9 n.10). These documents might well contain merely the analyses that UBS was contractually required to conduct. See Assured Guaranty II, 2013 WL 1195545, at *7. UBS does not respond directly to this argument. (Def. Memo. at 9-10). Again, it has not met its burden. Assured Guaranty II, 2013 WL 1195545, at *7.

5. Redactions

Finally, U.S. Bank asserts that e-mails sent to or from counsel including or requesting legal advice should likely not be withheld, but merely redacted. (Pl. Memo. at 10). This argument is undeveloped, and UBS is correct when it states that U.S. Bank "provides no basis for its belief" that such communications should be redacted rather than completely withheld. (Def. Memo. at 10).

6.  Remedy

Many of U.S. Bank's challenges to UBS' assertions of attorney-client privilege or work product immunity have merit. However, it is not efficient for me to review in camera all 3,629 documents included on the privilege log.[5] Instead, within three days of the date of this order, U.S. Bank may identify up to 75 documents for in camera review. My rulings on the applicability of attorney-client privilege and work product immunity will provide guidance for the parties on whether certain types of documents have been properly or improperly withheld.

Conclusion

U.S. Bank's motion to compel is granted in part and denied in part.

UBS shall forthwith randomly sample 1,000 documents from Repurchase Custodian William Chandler that have not been produced nor included on its privilege log, and 1,000 documents from Repurchase Custodian John Lantz that have not been produced nor included on its privilege log. Within three days of the date of this order, UBS shall review these documents for privilege, and produce the non-privileged documents, along with a privilege log, to U.S. Bank. Within three days of U.S. Bank's receipt of these documents, it shall report the results of its review to the Court, copying opposing counsel.

---

[5] In Assured Guaranty II, I invited a request for in camera review of documents over which a dispute regarding categorization arose. Assured Guaranty II, 2013 WL 1195545, at *10. I did not, however, suggest that a review of every logged document would be appropriate.

12

In addition, within three days of the date of this order, U.S. Bank shall identify up to 75 documents listed on UBS' privilege log for my review in camera. UBS shall provide me with those documents on the next business day.

I defer ruling on the request for an extension of time to complete discovery until the review described above is complete.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 12, 2013

Copies mailed this date:

Sean P. Baldwin, Esq.
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue
New York, NY 10010

Scott D. Musoff, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
42nd floor
New York, NY 10036