```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MASTR ADJUSTABLE RATE MORTGAGES      : 12 Civ. 7322 (HB) (JCF)
TRUST 2006-OA2, MASTR ADJUSTABLE     :
RATE MORTGAGES TRUST 2007-1, MASTR   :        MEMORANDUM
ADJUSTABLE RATE MORTGAGES TRUST      :        AND   ORDER
2007-3,                              :
                                     :
               Plaintiffs,           :
                                     :
     - against -                     :
                                     :
UBS REAL ESTATE SECURITIES INC.,     :
                                     :
               Defendant.            :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

As outlined in my opinion of December 6, 2013, <u>Mastr Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc.</u>, No. 12 Civ. 7322, 2012 WL 6405047 (S.D.N.Y. Dec. 6, 2013) (<u>Mastr II</u>), U.S. Bank, N.A., as trustee of the plaintiff trusts ("U.S. Bank"), seeks production of documents, withheld as work product, that were created by JCIII & Associates, Inc. ("JCIII"), a vendor hired by Williams & Connolly LLP "to assist [] in conducting the mortgage loan demand review process necessary to respond to and defend against [] mortgage loan repurchase demands and the litigation that was anticipated might follow" (Declaration of Richard Hackney Wiegmann in Support of UBS Real Estate Securities, Inc.'s Motion to Compel Discovery and Motion for a Protective Order dated Feb. 4, 2013 ("Wiegmann Decl."), attached as Exh. A to Letter of Sean P. Baldwin dated Nov. 13, 2013 ("Baldwin 11/13/13 Letter"), ¶ 8). At my direction, defendant UBS Real Estate Securities Inc. ("UBS") submitted for my review <u>in camera</u> a

random sample of 50 documents contained in three categories of the privilege log submitted for the JCIII documents. Mastr II, 2012 WL 6405047, at *1.  I have reviewed them and now grant U.S. Bank's motion in part.

Discussion

In Mastr II, I reiterated my earlier finding that the agreements governing the certificates at issue in this litigation obligated UBS to conduct reviews of loans subject to repurchase demands within 90 days so that UBS could determine "whether to cure the alleged breach, substitute a conforming loan, or repurchase the loan." Id. "Such analyses are not protected by the work product doctrine unless UBS can show that they were specifically directed to litigation strategy or defenses and were therefore created in a form significantly different than they otherwise would have been." Id.

UBS has submitted three types of documents for my review: spreadsheets analyzing alleged breaches of contractual representations and warranties on loans for which repurchase demands have been made; draft letters informing Assured Guaranty Municipal Corp. ("Assured Guaranty"), the provider of financial guaranty insurance for the subject residential mortgage-backed securities, of the results of such analyses; and other documents reflecting similar analyses. (Letter of Scott D. Musoff dated Dec. 13, 2013 ("Musoff 12/13/13 Letter"), at 2-3). Having reviewed the documents, I find that UBS has failed to establish that all of the documents are subject to work product protection. See In re Grand

2

Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (party asserting work product protection faces "heavy" burden).  Indeed, many of the documents clearly reflect only JCIII's initial review of the loans subject to repurchase demands -- a review that I have repeatedly noted was required by the parties' agreements.  As such, they are not protected from disclosure.

  A. <u>Spreadsheets and Draft Letters (Categories 4 and 5)</u>

 According to the privilege log produced for the JCIII documents, Category 4 consists of "[s]preadsheets created by JCIII . . . providing analysis, draft responses and recommendations for responding to Assured Guaranty's loan repurchase demands" and Category 5 consists of "[l]etter correspondence between JCIII and UBS reflecting analysis and recommendations for responding to Assured Guarantee's repurchase demands."  (JCIII Custodian Privilege Log ("JCIII Privilege Log"), attached as Exh. B to Baldwin 11/13/13 Letter, at 1-2).

 As noted, the spreadsheets contain analyses of loans for which repurchase demands were made.  Some of the analyses were performed within the 90-day repurchase period mandated in the agreements and contain only JCIII's initial assessment of the alleged breaches. (JCIII-Priv 82; JCIII-Priv 1347).  These documents (and any similar documents not included in the sample I have reviewed) were clearly created pursuant to UBS's contractual duty to review the loans and therefore must be produced.

 UBS contends that these spreadsheets are similar to ones found

protected in a prior opinion (Letter of Scott D. Musoff dated Nov. 22, 2013 ("Musoff 11/22/13 Letter"), at 2; Musoff 12/13/13 Letter at 2).  That order found plausible UBS's assertion that certain analyses of repurchase demands would not have been performed in the normal course of business, but only because of the threat of litigation.  <u>Mastr Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc.</u>, No. 12 Civ. 7322, 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013) (<u>Mastr I</u>).  However, those documents (like other documents included in this sample, <u>e.g.</u> JCIII-Priv 6485, JCIII-Priv 6618, JCIII-Priv 7019) include additional analyses clearly performed <u>after</u> the original review.  <u>Mastr I</u>, 2013 WL 5437354, at *1 (noting that "additional analyses" not performed in the normal course of business are protected as work product).

As for the draft letters, each is directed to Assured Guaranty, the entity that made the repurchase requests, and sets out the conclusions of JCIII's review.  Moreover, each is dated in October 2010, within 90 days of the August 13, 2010 repurchase demands.  These letters were obviously drafted in the normal course of business as responses to repurchase demands.  They are therefore not protected as work product.[1]

Within one week of the date of this order, UBS shall produce all spreadsheets contained in Category 4 of the JCIII Privilege Log that set out JCIII's initial review of the loans for which

---

[1] UBS has not asserted that these documents are subject to attorney-client privilege.  (JCIII Privilege Log, at 2).

repurchase demands were made,[2] but may withhold those including analyses and responses post-dating that initial analysis.  In addition, UBS shall produce all documents contained in Category 5 of the JCIII Privilege Log that reflect communication of UBS's initial review of the loans subject to repurchase demands.[3]

    B.    <u>Draft Analyses</u>

UBS recognizes that "nearly all" of these documents "are analyses and recommendations that are identical in nature to the information contained in the spreadsheets." (Musoff 12/13/13 Letter at 2).  Indeed, these documents seem to include primarily the reviewers' initial analyses of the breach allegations, including, in some cases, a notation as to whether the alleged breaches materially and adversely affect the interests of the certificateholders.  UBS asserts that such notations demonstrate that the documents were created in anticipation of litigation. (Musoff 12/13/13 Letter at 3).  However, that was precisely what UBS had to determine under the agreements before it made its decision about whether to repurchase allegedly non-conforming loans. (Complaint, ¶ 29).  In short, there is no indication that these are "additional analyses" performed outside of the normal course of business.  Instead, they appear to be reports from the

---

[2] As noted above, JCIII-Priv 82 and JCIII-Priv 1347 are examples of such documents.

[3] Many, if not most, of these documents will likely be dated within 90 days of the date of the loans' repurchase demands, one of which is August 13, 2010.  I note, however, that some initial reviews may have been performed after that time period.  Documents reflecting any "late" initial reviews are also discoverable.

initial review of JCIII personnel regarding whether the relevant loans should be repurchased under the agreements. They shall be produced within one week of the date of this order.

C.  Documents from Navigant

In its December 16, 2013 letter, U.S. Bank adds an additional argument, contending that UBS should produce analyses of repurchase demands performed by Navigant. (Letter of Sean P. Baldwin dated Dec. 16, 2013, at 8). UBS must re-review those documents, guided by the reasoning of this order, which requires production of documents reflecting initial repurchase analyses performed by JCIII. Any discoverable Navigant documents shall be produced within one week of the date of this order.

Conclusion

UBS shall produce the documents outlined above within one week of the date of this order. Also within one week, UBS shall re-review, using the discussion above as guidance, documents created by Navigant relating to analyses of loans for which repurchase demands have been made and produce any that are not protected.

SO ORDERED.

*[signature]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 2, 2014

Copies mailed this date:

Sean P. Baldwin, Esq.
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue
New York, NY 10010

Scott D. Musoff, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
42nd floor
New York, NY 10036