# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3,<br><br>Plaintiffs,<br><br>-against-<br><br>UBS REAL ESTATE SECURITIES INC.,<br><br>Defendant. | 12 Civ. 7322 (HB)<br><br>ECF Case<br>Electronically Filed<br><br>**DECLARATION OF DR. NELSON R. LIPSHUTZ IN SUPPORT OF PLAINTIFFS' LETTER-BRIEF REGARDING THE REOPENING OF EXPERT DISCOVERY** |

I, NELSON R. LIPSHUTZ, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I respectfully submit this declaration in support of the letter-brief of Plaintiffs MASTR Adjustable Rate Mortgages Trust 2006-OA2 (the "2006-OA2 Trust"), MASTR Adjustable Rate Mortgages Trust 2007-1 (the "2007-1 Trust"), and MASTR Adjustable Rate Mortgages Trust 2007-3 (the "2007-3 Trust," and together with the 2006-OA2 Trust and the 2007-1 Trust, the "Trusts"), acting through U.S. Bank National Association, solely in its capacity as trustee of the Trusts, regarding the reopening of expert discovery.

2. I am President of Regulatory Research Corporation, where I specialize in the application of economics, statistics, and financial theory to legal and regulatory issues. I am an expert in statistical sampling. The facts set forth herein are based on my personal knowledge and/or information obtained in consultation with others at Regulatory Research Corporation that I believe to be true and correct.

3. I have been retained by the Trusts to construct random samples of loans from each of the three Trusts and to extrapolate breach rates for the Trusts based on re-underwriting analyses performed by Mr. Ira Holt, Jr., also retained by counsel for the Trusts.

4. In my initial report, I constructed three simple random samples of 400 loans each, one from each of the Trusts (the "Samples"). Simple random samples are universally recognized as unbiased estimates of population proportions. I selected a sample size of 400 in order to yield a maximum margin of error of +/- 0.05 (*i.e.*, 5 percentage points) at the 95 percent confidence level.[1] This is the same margin of error and confidence level as I used in constructing samples from RMBS trusts in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 501 (S.D.N.Y. 2013), where Judge Rakoff held that my testimony was "clear, credible and convincing," and relied on it in assessing liability and damages. The sample size required to produce a maximum margin of error of +/-5% at the 95% confidence level varies depending on the size of the total population. A sample of 400 loans is sufficiently large to draw conclusions about the total population of loans in each Trust—in particular, the number that are materially and adversely defective. Indeed, 400 is larger than required. I selected a sample size larger than the required minimum to allow for the possibility that some loan files would be unavailable. Having constructed the Samples, I then performed a series of tests to confirm that they are representative of the total population of loans backing the Trusts. I determined that they are.

---

[1] A confidence level is a measure of the frequency with which a value in the sample—for example, the proportion of materially defective loans—will reflect the value for the total population. Thus, at a 95% confidence level, there is a 95% likelihood that the actual value for the total population will be within a specified range of the sample value. The margin of error defines that range. For example, if 50% of the loans in a sample were materially defective, a 95% confidence level and +/-5% margin of error would mean that there is a 95% probability that 45% to 55% (that is, 50% plus or minus the 5% margin of error) of the loans in the entire population were materially defective.

Finally, I extrapolated the results of Mr. Holt's analysis by calculating the "breach rates"—*i.e.*, the percentages of materially defective loans—in the Samples, and thus in the Trusts.

5. The Samples were drawn from and were designed to enable extrapolation to the entire population of loans backing the Trusts—in other words, they were designed to enable one to calculate the number of materially defective loans in the entire population of loans backing each Trust. In light of the Court's January 9, 2015 Order—specifically, the Court's holding that 4,460[2] loans were specifically and timely noticed (the "Noticed Loans")—counsel for the Trusts instructed me to calculate the minimum number of Noticed Loans that would be required to extrapolate to the entire population of Noticed Loans at the 95 percent confidence level with a margin of error of +/-5%. In other words, to calculate the minimum sample sizes if I were to construct samples consisting only of Noticed Loans designed to enable extrapolation to the entire population of Noticed Loans (the "Noticed Loan Samples"). I calculated that the minimum required sample sizes would be 293 for the 2006-OA2 Trust, 317 for the 2007-1 Trust and 303 for the 2007-3 Trust—for a combined total of 913. If I were to construct the Noticed Loan Samples, I would, as in my initial report, select a sample size larger than the required minimum to allow for the possibility that some loan files may be unavailable. Specifically, I would select an additional 10% for each Noticed Sample, resulting in total Noticed Loan Sample sizes of 322 for the 2006-OA2 Trust, 349 for the 2007-1 Trust and 333 for the 2007-3 Trust—for a combined total of 1,004 loans. To ensure that the Noticed Loan Samples were entirely random and representative, it would be necessary to draw them anew—*i.e.*, to draw entirely fresh samples, rather than simply 'top-up' the subsets of Noticed Loans drawn in the Samples.

I declare under penalty of perjury that the foregoing is true and correct.

---

[2] The Court held that 4,462 loans were specifically and timely noticed. I determined that two of these loans are duplicates, resulting in a total of 4,460 Noticed Loans.

3

Executed on March 4, 2015, in Newton, Massachusetts.

*Nelson R. Lipshutz*

---

Dr. Nelson R. Lipshutz