UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MASTR ADJUSTABLE RATE MORTGAGES
TRUST 2006-OA2, MASTR ADJUSTABLE
RATE MORTGAGES TRUST 2007-1 and
MASTR ADJUSTABLE RATE MORTGAGES
TRUST 2007-3

                          Plaintiffs,                          12-cv-7322 (PKC)

           -against-                                           MEMORANDUM
                                                               AND ORDER

UBS REAL ESTATE SECURITIES INC.,

                          Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

           Defendant UBS Real Estate Securities Inc. ("UBS") moves in limine to preclude

the plaintiffs from introducing evidence that it argues is not permitted under this Court's earlier

Memorandum and Order deciding the parties' summary judgment motions.  (Docket # 312.)

This Memorandum and Order addresses UBS's argument that the plaintiffs may not seek

recovery as to noticed breaches that were not specifically identified in the pre-suit breach

notices.  For the reasons explained, UBS's motion is denied.

BACKGROUND

           The plaintiffs are three trusts (the "Trusts") that purchased pools of residential

mortgage-backed securities assembled by UBS.  The Trusts bring a single breach of contract

claim.  They contend that UBS breached representations and warranties that guaranteed

compliance with certain quality and underwriting guidelines used to select mortgage loans that it

placed into pools of residential mortgage-backed securities.  See MASTR Adjustable Rate

Mortgs. Trust 2006-OA2 v. UBS Real Estate Secs. Inc., 2015 WL 764665, at *1 (S.D.N.Y. Jan

9, 2015).  UBS acquired those mortgage loans from various originators before assembling them into pools and selling them to the Trusts, which, in turn, issued securities (which the parties called "Certificates") to investors (which the parties called "Certificateholders").  Id.  The three transactions between UBS and the Trusts were governed by three separate Pooling and Servicing Agreements ("PSAs"), which were identical in all material respects relevant to this litigation.  Id. at *2.

Each PSA includes a remedial provision.  (See, e.g., Docket # 269, Ex. E at 60-62.)  Section 2.03 of each PSA provides that if a party to the PSA discovers "a breach of representation or warranty made by [UBS] pursuant to this Section 2.03 that materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties and the Trustee."  (Id. at 61.)  It further provides that UBS "hereby covenants that within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to this Section 2.03 which materially and adversely affects the interest of the Certificateholders or Certificate Insurer in any Mortgage Loan, it shall cure such breach in all material respects . . . ."  (Id.)  If the breach is not cured, UBS "shall" substitute the defective mortgage loan with an eligible loan or repurchase the defective mortgage loan.  (Id. at 61.)  Section 2.03 provides that UBS's obligation "to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedies" against UBS in the event of a breach.  (Id. at 62.)

From August 2010 through September 2012, Assured Guaranty Municipal Corp., which acted as insurer of the Trusts' securities offerings, sent a series of letters demanding that UBS remedy certain allegedly defective mortgage loans contained in the Trusts' three pools.  See

<u>MASTR Adjustable Rate Mortgs. Trust</u>, 2015 WL 764655, at *3.  The Trusts commenced this action in September 2012, alleging that UBS had breached representations and warranties concerning the quality of the pools' mortgage loans, and had failed to remedy the defective mortgage loans in the manner required by the PSAs.  (Docket # 1.)

At summary judgment, this Court construed the language of the PSA to mean that the Trusts could seek relief as to all purported breaches that were identified in the breach notices, as well as to any breaches that UBS independently discovered.  <u>Id.</u> at *6-10.  However, the Court concluded that the Trusts could not, as a matter of law, recover under a theory that the Trusts described as a "pervasive breach."  <u>Id.</u> at *10-12.  According to the Trusts' "pervasive breach" theory, the breach notices had a cumulative effect of placing UBS on notice that a significant percentage of the loans, beyond those individually identified, were also in breach of the PSAs' representations and warranties.  <u>Id.</u> at *10.  It urged, in essence, that the contractual language should be construed as an inquiry notice standard by which UBS would be on notice of all breaches that, in the Trusts' view, it should have discovered.  The Court disagreed.

After the Court issued its summary judgment decision, the Trusts moved to re-open discovery.  In an Order dated March 11, 2015, the Court reopened expert discovery to permit further discovery consistent with the Court's decision on the parties' summary judgment motions.  (Docket # 287.)  In its Order permitting additional discovery, the Court expressly declined to endorse any proposed methodology, stating that such approval "would either be a non-binding, advisory opinion . . . or it would be a binding ruling made on an inadequate record at the wrong juncture in the case, a shot from the judge's hip.  And the invitation runs the risk of placing the judge in the role of partisan; it is no more appropriate than an application by

defendant for advance approval of a methodology for defeating plaintiffs' claim."  (Docket # 287, at 1-2.)

In a letter of August 17, 2015, UBS requested leave to move to strike the August 7, 2015 expert report of Ira H. Holt, Jr. (the "Holt Report"), arguing that it went beyond the scope of permissible expert discovery.  (Docket # 296.)  UBS argued that the Holt Report improperly re-underwrote a body of loans that exceeded the 4,460 loans identified in the pre-suit breach notices.  (Docket # 296.)  The Court issued an Order stating that such a motion was premature, and the matter should be raised as a motion in limine.  (Docket # 298.)  The Order stated, "Counsel is warned that this Order is not intended to imply any view on the relevance, probative value, efficacy or admissibility of any particular form of evidence or the suitability of any particular methodology, expert or otherwise."  (Docket # 298.)

DISCUSSION

In opposing the motion in limine, the Trusts urge that the Holt Report placed UBS on actual notice of 9,973 loans with breaches that materially and adversely affected the interests of the Certificateholders.  The Trusts argue that the PSAs do not require a breach notice to be submitted in a particular format, and that the reasoning of Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., 133 A.D.3d 96 (1st Dep't 2015) (Sweeny, J.), renders the Holt Report a timely and effective notice of breach.  More than 90 days have elapsed since the Holt Report was served on UBS.

UBS's motion raises the issue of whether notice of a breach can occur during the pendency of this case, and if the timing of such notices relate back to the filing of the original complaint for statute of limitations purposes.

The Trusts candidly state that they had intended to pursue notice-based claims only for those loans that were listed in the pre-suit breach notices, and that they intended to pursue only discovery-based claims for all other loans.  According to the Trusts, however, the October 15, 2015 decision of the Appellate Division, First Department, in <u>Nomura</u> permits them to rely on breaches discovered in the course of the action with a relation back to the date of filing.  The Trusts argue that they may pursue notice-based breach claims as to all 9,973 allegedly defective mortgage loans identified in the Holt Report.

The First Department's <u>Nomura</u> decision sheds considerable light on the PSAs' notice requirements and the timeliness of newly asserted breaches.  Federal courts sitting in diversity "are bound to follow state law on any matter of substantive law."  <u>Rounds v. Rush Trucking Corp.</u>, 211 F.3d 185, 188 (2d Cir. 2000) (quotation marks omitted).  A federal court is "bound" by a state court's construction of its laws, "even where the only available interpretation is that of an intermediate court, 'unless [the court] find[s] persuasive evidence that the highest state court would reach a different conclusion.'"  <u>Grand Light & Supply Co. v. Honeywell, Inc.</u>, 771 F.2d 672, 678 (2d Cir. 1985) (quoting <u>Entron, Inc. v. Affiliated FM Ins. Co.</u>, 749 F.2d 127, 132 (2d Cir. 1984)).  The parties agree that New York law governs this case.  (Stipulation of Facts ¶ 13.)

In <u>Nomura</u>, trustees of four RMBS trusts brought breach of contract claims against the sponsor of the transactions, alleging that the pools included loans that breached certain representations and warranties, and that the sponsor failed to remedy the defective loans, as required under the PSAs.  133 A.D.3d at 98-104.  <u>Nomura</u> concluded that the plaintiffs could pursue "claims relating to loans that plaintiffs failed to mention in their breach notices" prior to the commencement of the action.  <u>Id.</u> at 108.  In so holding, the First Department considered two

separate issues: whether such claims related back to the original complaint for statute of limitations purposes, and whether the pre-suit breach notices adequately placed defendants on notice of potential future breach claims.  Id.

As to whether the newly identified breaches were timely under the limitations period, Nomura observed that because the complaints included "some timely claims . . . a complaint amended to add the claims at issue would have related back to the original complaints."  Id.  As to the pre-suit breach notices, Nomura concluded that they "put defendant on notice that the certificateholders whom plaintiffs (as trustees) represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made."  Id.  The First Department concluded that, based on the breach notices' assertion of ongoing investigations into loan quality, the trial court "correctly refused to dismiss claims relating to loans that plaintiffs failed to mention in their breach notices . . . ."  Id.

The Court first addresses whether the breach notices purportedly made in the Holt Report could relate back to the filing of the Complaint in this action for limitations purposes. Rule 15(c)(1)(A), Fed. R. Civ. P., states that "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back."  When "the applicable limitations law is state law," a federal court is "to look to the entire body of limitations law that provides the applicable statute of limitations." Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (emphasis in original).

New York law governs the relation-back analysis of any New York limitations issue.  Nomura concluded that because the complaint included timely claims, "a complaint amended to add the claims at issue would have related back to the original complaints."  133

A.D.3d at 108.  In this case, a claim for additional breaches of the PSAs would relate back to the initial, timely claims, and may be asserted.

The Trusts argue that a formal amendment of the Complaint is not necessary because UBS has received notice of the loans' claimed defects through the Holt Report, and has had an opportunity to respond.  In the event that the Court concludes that an amendment is necessary, the Trusts seek leave to amend formally.

The Second Circuit has stated that "a formal amendment of a plaintiff's complaint asserting causes of action against a party . . . is unnecessary" if that party "is effectively on notice that it will be held liable on the plaintiff's claims and the two proceed against one another in an adverse manner."  Project Hope v. M/V IBN SINA, 250 F.3d 67, 76-77 (2d Cir. 2001); see also Jund v. Town of Hempstead, 941 F.2d 1271, 1287 (2d Cir. 1991) (when plaintiff's evidence and claims were identified throughout motion practice and discovery, and defendant could not identify prejudice caused by their consideration at trial, "amendment is not necessary" to explicitly identify those claims).

This action asserts a single claim for relief: breach of contract.  This has been the case since the original filing in September 2012.  (Docket # 1.)  A formal amendment would leave the pleading with the same single claim for relief, with, of course, additional loans identified by references to the Holt Report.  While UBS strongly opposes the Trusts' assertion that the Holt Report may constitute a breach notice, they make no persuasive argument as to why a formal amendment of the Complaint is necessary.[1]  (See UBS Reply (Docket # 356) at 4-7, 5 n.2.)

---

[1] Even if a formal amendment were necessary, Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  Rule 15(a)(2); see also Rule 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely

The Court concludes that, under the reasoning of <u>Nomura</u>, any newly asserted breaches would relate back to the filing of the Complaint, and therefore are timely.  The Court further concludes that UBS was on notice that the Trusts were pursuing all breaches identified in the Holt Report.  UBS responded with its own expert report disputing those breaches.  A formal amendment of the Complaint is not necessary for the Trusts to proceed with breaches set forth in the Holt Report.

The second issue is whether the failure of the Trusts to give pre-suit notices of the breaches noticed in the August 7, 2015 Holt Report foreclose a claim based on those breaches. <u>Nomura</u> concluded that the original, pre-suit breach notices "put defendant on notice that the certificateholders (as trustees) represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made."  133 A.D.3d at 108.  The First Department concluded that, based on the breach notices' assertion of ongoing investigations into loan quality, the trial court "correctly refused to dismiss claims relating to loans that plaintiffs failed to mention in their breach notices . . . ." <u>Id.</u>

As in <u>Nomura</u>, the original breach notices in this case stated that Assured's investigation of the mortgage loans was ongoing.  For example, in a breach notice of August 9, 2010, Assured stated: "Please be advised that this repurchase request letter reflects the Insurer's findings after reviewing loan files relating to only a small portion of the Mortgage Loans included in the Transaction.  The Insurer reserves all of its rights and remedies, including its right to give notice of additional breaches relating to any Mortgage Loans, as well as its rights under all other agreements, not referenced herein, related to the Transaction." <u>Nomura</u> placed significance on the fact that pre-suit breach notices similarly advised the defendant that the

---

permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.").

trustees "were investigating the mortgage loans and might uncover additional defective loans for which claims would be made." 133 A.D.3d at 108.

Moreover, as quoted in <u>Nomura</u>, section 2.03 of the underlying PSAs in that case included notice provisions that were substantially similar to those of section 2.03 in this case. <u>Compare</u> 133 A.D.3d at 101-02 <u>with</u> Docket # 269, Ex. E at 61. Both required that "[u]pon discovery" of a breach "that materially and adversely affects the interests of the Certificateholders," the party discovering the breach shall give "prompt" notice to the other parties to the PSA. <u>Id.</u> Both PSAs provide for a 90-day period wherein the sponsor is obligated to cure, replace or repurchase "the affected Mortgage Loan or Mortgage Loans from the Trustee . . . ." <u>Id.</u> The relevant notice language quoted in <u>Nomura</u> is materially similar to the language of the PSAs in this case. <u>Id.</u> Because <u>Nomura</u> reflects the conclusions of a New York intermediate appellate court applying New York law, this Court sitting in diversity is bound to apply its teachings, unless it were to conclude that the New York Court of Appeals would reach a contrary result. <u>See generally</u> <u>Rounds</u>, 211 F.3d at 188.[2]

UBS contends that expiration of the 90-day cure period operates as a condition precedent that must be satisfied before a breach of contract claim may be brought for a noticed loan. As UBS notes, the First Department has stated that the lapse of a 90-day cure period is "a precondition to suit, and the cure period must have passed before suit can be brought." <u>U.S. Bank N.A. v. DLJ Mortg. Capital, Inc.</u>, 121 A.D.3d 535, 536 (1st Dep't 2014). The First Department also has described a cure period as "a condition precedent to commencing suit," and stated that the filing of a suit before a cure period elapsed rendered plaintiffs' "summons with

---

[2] UBS correctly notes that the agreements in <u>Nomura</u> included a provision that allowed for relief broader than the "sole remedy" provision contained in the PSAs. <u>See</u> 133 A.D.3d at 101. The issue here, however, is not whether the Trusts may seek a broader remedy than provided for by the PSAs (such as a remedy for a pervasive breach) but the sufficiency of notice provided to UBS.

notice a nullity." ACE Sec. Corp. v. DB Structured Prods., Inc., 112 A.D.3d 522, 523 (1st Dep't 2013), aff'd, 25 N.Y.3d 581 (2015).

   However, these cases addressed whether the underlying breach of contract claims were timely under New York's six-year limitations period; Nomura, by contrast, expressly concluded that newly asserted breaches can relate back to original, timely claim.  In both U.S. Bank and ACE, the First Department concluded that all claims were time-barred because the breach was measured from the time that the contract was executed, and not from the time that a defendant failed to repurchase or cure.  In ACE, the plaintiffs filed suit on the last day of the limitations period, even though the contractual cure period had not passed.  112 A.D.3d at 523. In this context, the First Department observed that the "failure to comply with a condition precedent" of a cure period rendered the complaint "a nullity."  Id.  Relying on ACE, U.S. Bank concluded that defendant's failure to cure a claimed breach did not re-start the limitations period for an otherwise-time-barred claim, and observed that "the cure period must have passed before suit can be brought.  Thus, the demand to cure may render a claim untimely, but cannot make it timely."  121 A.D.3d at 536.

   The New York Court of Appeals affirmed the First Department's reasoning in ACE, and concluded that when calculating the limitations period, the plaintiff trust "suffered a legal wrong at the moment [defendant] allegedly breached the representations and warranties," which occurred "the moment the [contract] was executed."  ACE, 25 N.Y.3d at 598.  The limitations period therefore began to run at the contract's execution.  Id. at 597-99.  By contrast, performance of the cure-or-repurchase obligation was not a "separate undertaking" or an "independently enforceable right" that could give rise to a breach of contract claim.  Id. at 598,

599.  The cure-or-repurchase obligation "was a procedural prerequisite to suit" that did not re-start the limitations period.  Id. at 598.

After the New York Court of Appeals decision in ACE, the trial court in that action, on remand, rejected the defendant's argument that a lapse of the cure period was necessary for a plaintiff to commence a breach claim.  After a detailed review of New York authority on contractual prerequisites to filing suit, it concluded that the cure periods "are not substantive conditions precedent that must be satisfied in order for the cause of action even to come into existence."  ACE Sec. Corp. v. DB Structured Products, Inc., 2016 WL 1306272, at *15 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 29, 2016).

UBS argues that in describing the cure-or-repurchase obligation as "a procedural prerequisite to suit," 25 N.Y.3d at 598, 599, ACE precludes the Trusts from bringing newly noticed claims that were filed after the limitations period expired.  But Nomura was issued five months after the New York Court of Appeals decided ACE, and it expressly distinguished ACE's reasoning for the purposes of its relation-back analysis.  Nomura stated that plaintiffs could pursue claims "relating to loans that plaintiffs failed to mention in their breach notices or that were mentioned in breach notices sent less than 90 days before plaintiffs commenced their actions.  Unlike the situation in ACE, 112 A.D.3d at 522-23, there were some timely claims in these cases.  Hence, a complaint amended to add the claims at issue would have related back to the original complaints."  Nomura, 133 A.D.3d at 108 (emphasis added).

Applying Nomura and the ACE decisions to this case, the Court concludes that because the Complaint includes a timely contract claim, the Trusts may assert additional breach claims relating to the same contract, and that they relate back to the filing of the initial Complaint.  ACE and related authority conclude that a defendant's failure to cure or repurchase

defective loans does not trigger a new accrual period for a breach of contract claim – an issue that is distinct from <u>Nomura</u>'s relation-back analysis, and one not at issue here.

Lastly, UBS cannot claim prejudice arising from the consideration of the newly noticed breaches.  All of the underlying loans were the subject of ongoing discovery, either as breaches alleged to have been independently discovered by UBS or as breaches identified in the pre-suit breach notices.  From the date that discovery re-opened, UBS was on notice that all loans were potentially in play, subject to evidence that UBS had actually discovered a breach. <u>See</u> <u>MASTR</u>, 2015 WL 764665, at *8 ("This Court concludes that the Trusts may recover for any loans that UBS independently discovered to be in breach of the representations and warranties."), *10 ("The Trusts may therefore pursue claims that are premised on UBS's discovery that it had breached a representation and warranty as to a specific defect in a specific mortgage loan."); <u>MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Sec. Inc.</u>, 2015 WL 797972, at *1 n.2 (S.D.N.Y. Feb. 25, 2015) ("In its Summary Judgment Opinion, the Court held that 'discovery' is not limited to receipt of notice by the Trust Administrator or the Certificate Insurer but that at trial the plaintiffs may endeavor to prove that UBS discovered breaches that materially and adversely affected the Certificateholders.").  The parties state that UBS has provided a breach-by-breach rebuttal to the breaches identified in the Holt Report. Nothing in the record indicates that UBS endeavored to cure the purported breaches within 90 days of receipt of the Holt Report.  No additional fact discovery is needed to decide whether the newly noticed loans are in breach.  At the time the Court re-opened discovery, the Court expressly declined to advise the parties on their chosen methodologies, and in its Order of August 2015, declined to express any view "on the relevance, probative value, efficacy or

admissibility of any particular form of evidence or the suitability of any particular methodology, expert or otherwise."  (Docket # 287, 298.)

In light of the foregoing, the Court concludes that the Trusts are not precluded from relying upon the August 7, 2015 Holt Report as notice of breaches of certain representations and warranties as to specific loans identified therein.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        April 12, 2016