UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASTR ADJUSTABLE RATE MORTGAGES
TRUST 2006-OA2, MASTR ADJUSTABLE
RATE MORTGAGES TRUST 2007-1, AND
MASTR ADJUSTABLE RATE MORTGAGES
TRUST 2007-3,

                Plaintiffs,

        -against-

UBS REAL ESTATE SECURITIES INC.,

                Defendant.

12 Civ. 7322 (PKC)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO PRECLUDE TESTIMONY
ON THE MEANING OF CERTAIN PROVISIONS OF THE PSAS**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

David L. Elsberg
Sean P. Baldwin
Andrew R. Dunlap
Nicholas F. Joseph
Paul P. Hughes
Marlo A. Pecora
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  212-849-7000
Facsimile:  212-849-7100

Paul A. Riley
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel:  213-443-3000
Facsimile:  213-443-3100

Attorneys for Plaintiffs

May 2, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................3

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ................................................................................................................................1

ARGUMENT .....................................................................................................................................3

I.    MR. LANTZ SHOULD BE PRECLUDED FROM TESTIFYING AS TO
      MATTERS AS TO WHICH UBS ASSERTED PRIVILEGE AND DENIED
      CORPORATE KNOWLEDGE. ..........................................................................................3

      A.    UBS Cannot Offer Testimony On The Subjects It Blocked .....................................3

      B.    Mr. Lantz Cannot Testify About the Meaning of the PSAs Because He
            Previously Testified That UBS Has No View on That Subject ................................5

CONCLUSION ...................................................................................................................................6

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arista Records LLC v. Lime Group LLC*,
  No. 06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) .................................4

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
  259 F.3d 1186 (9th Cir. 2001) ...........................................................................................3

*First Data Merchant Servs. Corp. v. SecurityMetrics, Inc.*,
  Civil Action No. RDB-12-2568, 2014 WL 6871581 (D. Md. Dec. 3, 2014) ...........................5

*Fullerton v. Prudential Ins. Co.*,
  194 F.R.D. 100 (S.D.N.Y. 2000) ........................................................................................4

*Great Am. Ins. Co. of N.Y. v. Summit Exterior Works, LLC*,
  No. 3:10 CV 1669 (JGM), 2012 WL 459885 (D. Conn. Feb. 13, 2012) .................................5

*Ierardi v. Lorillard, Inc.*,
  Civ. A. No. 90-7049, 1991 WL 158911 (E.D. Pa. Aug. 13, 1991) ..........................................6

*Memry Corp. v. Ky. Oil Tech., N.V.*,
  No. C-04-03843 RMW, 2007 WL 4208317 (N.D. Cal. Nov. 27, 2007) .................................4

*Rainey v. Am. Forest & Paper Ass'n, Inc.*,
  26 F. Supp. 2d 82 )  (D.D.C. 1998) ...................................................................................5

*Trs. of Bricklayers & Allied Craftworkers, Local 5 v. Charles T. Driscoll Masonry Restoration Co.*,
  165 F. Supp. 2d 502 (S.D.N.Y. 2001) ................................................................................5

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) .............................................................................................3

## Statutes and Rules

Fed. R. Civ. P. 30(b)(6) ............................................................................................... *passim*

**PRELIMINARY STATEMENT**

Defendant UBS Real Estate Securities Inc. ("UBS") asserted privilege and lack of corporate knowledge to block the Trusts[1] from obtaining discovery on the meaning of certain provisions of the pooling and servicing agreements ("PSAs").  But UBS has now submitted a trial declaration from John Lantz that contains self-serving testimony on the same topic.  It is fundamental that such sword-and-shield, selective disclosure is forbidden.  Accordingly, portions of the Lantz trial declaration should be excluded from the record and all UBS witnesses should be precluded from testifying on this topic.

The declaration of Paul A. Riley that accompanies this brief attaches and highlights the pertinent portions of Mr. Lantz's deposition transcript showing that the Trusts were blocked from obtaining discovery.  Exhibits 3–2 and 4–2 show the portions of the Lantz declaration that the Trusts request be stricken.

**BACKGROUND**

On February 4, 2014, the Trusts took the deposition of Mr. Lantz as UBS's Rule 30(b)(6) corporate representative.  The first topic listed in the Trusts' amended deposition notice was "[t]he negotiation, drafting and interpretation of the PSAs and the terms thereof, including without limitation Section 2.03 and Schedule II of each PSA."  *See* Ex. 1 to Riley Declaration, Amended Notice of Rule 30(b)(6) Deposition of Defendant UBS Real Estate Securities Inc., at 4.  When asked about the meaning of the "prompt notice" language in Section 2.03 by counsel for the Trusts, however, 30(b)(6) witness Lantz testified that he had no view on the subject and that he was also not aware that any businessperson at UBS had a view as to the meaning of the terms.[2]  *See* Ex. 2 to Riley Declaration, Lantz Dep. Tr. at 33:19–39:6.  Counsel for the Trusts also asked 30(b)(6) witness Lantz whether he was aware of any discussions concerning the

---

[1]   MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1, and MASTR Adjustable Rate Mortgages Trust 2007-3 (collectively, the "Trusts"), acting through U.S. Bank National Association, solely in its capacity as trustee for the Trusts ("U.S. Bank" or the "Trustee").

[2]   As the PSAs make clear, Section 2.03's "prompt notice" requirement does not apply to the Trustee.

1

meaning of these provisions that involved counsel. *Id.* at 39:7–16. Counsel for UBS instructed Mr. Lantz not to answer on the basis of privilege.

Counsel for the Trusts called Magistrate Judge Francis during the 30(b)(6) deposition to resolve a dispute as to whether UBS's corporate representative was required to answer the question. *Id.* at 40:21–51:25. During the conference with Magistrate Judge Francis, counsel for the Trusts explained their concern: the Trusts needed to know "whether UBS intends to make any argument that there is extrinsic evidence supporting an interpretation of the prompt notice provision that they have put forward in the case." *Id.* at 44:10–21. Magistrate Judge Francis explained that, in his view, the issue took "care of itself" and laid out a roadmap for proceeding with the deposition:

> "I am not sure why this doesn't take care of itself; that is, <u>if the witness is asked whether there is any information that he's aware of that goes to this term of the contract and the answer is no, then there's no extrinsic evidence that's going to come in, and certainly the communications with counsel … UBS can't use the privilege as a sword and a shield, so it's not going to introduce evidence with respect to counsel's views on the meaning of the term</u>, so why doesn't that solve the problem?"

*Id.* 49:19–50:8 (emphasis added).

The Trusts' counsel then proceeded to ask the questions that Magistrate Judge Francis identified as the questions to ask in order to establish whether or not UBS would be precluded at trial. The Trusts inquired about various terms in Section 2.03 and Schedule II (the "Mortgage Loan Schedule" or "MLS") of the PSAs, and 30(b)(6) witness Lantz denied that UBS had knowledge as to the meaning of those terms.[3] The Trusts' counsel followed up by asking whether 30(b)(6) witness Lantz was aware of any discussions with counsel on the subject, and

---

[3] *See, e.g.*, Ex. 3–1 at 33:16–34:18, 56:4–57:14 (testifying that Mr. Lantz was not aware of any communications between "UBS and anyone outside UBS other than outside counsel for UBS relating to what constitutes a material and adverse effect on the interest of certificate holders [under Section 2.03 of the PSAs]…."); Ex. 4–1 at 59:6–60:5 (testifying that Mr. Lantz did not recall communications, excluding counsel, relating to the meaning of the statement: "the information set forth in the mortgage loan schedule was true and correct in all material respects at the date or dates respecting which such information is furnished as specified in the mortgage loan schedule").

2

UBS instructed Mr. Lantz not to answer on the basis of privilege.[4]  It was thus clear that UBS precluded itself from offering any extrinsic evidence as to the meaning of these provisions. Contrary to this understanding and Judge Francis's statements, however, on April 4, Mr. Lantz submitted a trial affidavit containing testimony on the same contractual terms on which UBS asserted privilege and on which he had previously denied corporate knowledge.  *See* Ex. 3–2, Lantz Aff. ¶ 33; Ex. 4–2, Lantz Aff. ¶¶ 57–58, 60.

## ARGUMENT

**I. MR. LANTZ SHOULD BE PRECLUDED FROM TESTIFYING AS TO MATTERS AS TO WHICH UBS ASSERTED PRIVILEGE AND DENIED CORPORATE KNOWLEDGE.**

### A. UBS Cannot Offer Testimony On The Subjects It Blocked

As Judge Francis recognized, UBS should not be allowed to abuse the attorney-client privilege by employing it as both a sword and a shield.  *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."); *see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (stating that "where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged" and precluding defendant from relying on advice of counsel defense at trial where defendant "refused to answer questions regarding his interactions with counsel at his deposition") (quoting William A. Schwarzer, et al., *Federal Civil Procedure Before Trial,* ¶ 11:37 at 11–29 (2000)).

That, however, is exactly what UBS has done here.  UBS presented a Rule 30(b)(6)

---

[4] *See* Ex. 3–1 to Riley Declaration at 56:25–57:12 ("Q. And for the record, so that we can make sure it's not used as a sword, can you tell me, are you aware of any internal communications within UBS involving counsel or with outside counsel relating to the meaning of [the 'material and adverse effect' language in Section 2.03?]  Mr. Fumerton:  Same objection …. So you are instructed not to answer."); Ex. 4–1 to Riley Declaration at 60:6–14 (instruction not to answer question concerning meaning of representation in the mortgage loan schedule).

witness who disclaimed any knowledge as to the meaning of Section 2.03 and the MLS, and asserted privilege over any discussions with counsel as to UBS's understanding of those contractual provisions. UBS has now flip-flopped, and seeks to offer Mr. Lantz's testimony that (i) certain of Assured Municipal Guaranty Corp.'s ("Assured's") noticed breaches supposedly were "clearly immaterial;" (*see* Ex. 3–2, Lantz Aff. ¶ 33); and (ii) the MLS representation supposedly was only "intended to represent that the data in the Mortgage Loan Schedule correctly matched the information in the underlying mortgage files" (*see* Ex. 4–2, Lantz Aff. ¶ 57).

This gamesmanship should not be permitted, and Mr. Lantz's testimony should be precluded to the extent it encompasses the meaning of Section 2.03 or the MLS.[5] *See Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 WL 1642434, at *2–3 (S.D.N.Y. Apr. 20, 2011) (granting motion *in limine* to preclude defendant from offering any evidence at trial regarding defendant's good faith belief in the lawfulness of its conduct because defendants "repeatedly blocked Plaintiffs from conducting any discovery into their communications with counsel"); *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL 4208317, at *9 (N.D. Cal. Nov. 27, 2007) (where plaintiff's attorney instructed witness "not to answer questions directed toward his understanding of the meaning of the claims of the [patent applications]," holding that witness "should not subsequently be permitted to testify as to his understanding of those particular claims or anything that the instruction not to answer fairly covered"); *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 105 (S.D.N.Y. 2000) (warning, where defendant had refused to produce documents relating to an in-house investigation, that the court would "carefully monitor any trial testimony—striking testimony, if necessary—to insure that [defendant] does not try to sneak any reference to this investigation in by the back door").

---

[5] Mr. Lantz's testimony as to the meaning of Section 2.03 and the MLS is also irrelevant, as the contractual provisions are unambiguous and therefore extrinsic evidence as to their meaning is inadmissible. However, the Trusts expect UBS to appeal issues not resolved in its favor, and respectfully submit that any appellate record should not include testimony on subjects that UBS has previously asserted were privileged.

### B. Mr. Lantz Cannot Testify About the Meaning of the PSAs Because He Previously Testified That UBS Has No View on That Subject

The portions of Mr. Lantz's testimony concerning Section 2.03 and the MLS should also be stricken because they contradict his 30(b)(6) testimony that he and UBS have no understanding of those terms. "An eleventh hour alteration that works a substantial revision of defendant's legal and factual position is inconsistent with Rule 30(b)(6), and is precluded by it because the Rule aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Great Am. Ins. Co. of N.Y. v. Summit Exterior Works, LLC*, No. 3:10 CV 1669 (JGM), 2012 WL 459885, at *3 (D. Conn. Feb. 13, 2012) (quoting *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94–95) (D.D.C. 1998)) (internal quotes and alterations omitted) (granting motion *in limine* to preclude defendant from offering expert testimony that contradicted its 30(b)(6) witness's statement regarding source of water damage at issue in trial).

Here, Mr. Lantz's proffered testimony regarding UBS's putative understanding of the MLS representation (Ex. 4–2, Lantz Aff. ¶¶ 57–58, 60) and his or UBS's putative conclusion that certain breaches noticed by Assured were "immaterial" (Ex. 3–2, Lantz Aff. ¶ 33) flatly contradicts Mr. Lantz's prior testimony that neither he nor any other businessperson at UBS had any understanding as to the meaning of the contractual provisions implicated by these statements. *See, e.g.*, Ex. 3–1 at 55:7–56:24 (no knowledge of meaning of "material and adverse effect" language in Section 2.03); Ex. 4–1 at 59:6–60:5 (no knowledge of meaning of MLS). Those portions of Mr. Lantz's affidavit should thus be stricken. *See First Data Merchant Servs. Corp. v. SecurityMetrics, Inc.*, Civil Action No. RDB–12–2568, 2014 WL 6871581, at *13–14 (D. Md. Dec. 3, 2014) (granting motion to preclude defendant's 30(b)(6) witness from testifying at trial as to customers defendant lost due to plaintiff's conduct where witness was unable to offer such testimony during his deposition and stating that the court would not allow "an end-run around Rule 30(b)(6)"); *Trs. of Bricklayers & Allied Craftworkers, Local 5 v. Charles T. Driscoll Masonry Restoration Co.*, 165 F. Supp. 2d 502, 512 n.6 (S.D.N.Y. 2001) (on summary judgment

motion, declining to consider witness testimony concerning unambiguous contractual provision and striking testimony as irrelevant and contradictory); *Ierardi v. Lorillard, Inc.*, Civ. A. No. 90–7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991) (holding that if corporate "designee testifies that [defendant] does not know the answer to plaintiffs' questions, [defendant] will not be allowed effectively to change its answer by introducing evidence during trial. The very purpose of discovery is to avoid 'trial by ambush.'") (citation omitted).

## CONCLUSION

The Trusts respectfully request that the Court (a) strike paragraphs 57 and 58, and portions of paragraphs 33 and 60, from Mr. Lantz's declaration (as shown in Exhibits 3–2 and 4–2 to the Riley Declaration), and (b) preclude all UBS witnesses from offering any testimony on the meaning of Section 2.03 of the PSAs and Schedule II (the MLS) of the PSAs.

Dated: May 2, 2016
New York, New York

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:   /s/ Sean P. Baldwin
David Elsberg
(davidelsberg@quinnemanuel.com)
Sean P. Baldwin
(seanbaldwin@quinnemanuel.com)
Andrew R. Dunlap
(andrewdunlap@quinnemanuel.com)
Nicholas F. Joseph
(nicholasjoseph@quinnemanuel.com)
Paul P. Hughes
(paulhughes@quinnemanuel.com)
Marlo A. Pecora
(marlopecora@quinnemanuel.com)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Facsimile: 212-849-7100

Paul A. Riley
(paulriley@quinnemanuel.com)
865 S. Figueroa Street, 10th Floor

                                              Los Angeles, California 90017
                                              Tel: 213-443-3000
                                              Facsimile: 213-443-3100

                                              *Attorneys for Plaintiffs*