**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, solely in its capacity as Trustee of MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-0A2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3, | 12-cv-7322 (PKC)(JCF)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff,

-against-

UBS Real Estate Securities, Inc.,

Defendant.

**BARBARA S. JONES, LEAD MASTER**

On November 2, 2016, I was appointed as Lead Master to oversee the timely entry of findings of fact and conclusions of law relating to loans that were not resolved by the Court's September 6, 2016 Memorandum and Order (the "Order") in this litigation.  (See 11/2/16 Order.) Since that time, the parties have raised three issues applicable to large categories of loans that need to be resolved at the outset of the loan review process.  I now make the following recommendations for resolving these three issues.

**I.      Plaintiff May Be Able to Demonstrate a Breach's "Material and Adverse" Effect in the Absence of Borrower Fraud**

Defendant has taken the position that all loans that do not involve borrower fraud can be resolved in its favor.  Defendant has argued that the Court's Order categorically established such a rule (Def.'s Jan. 13, 2017 Letter to Pl. at 2), and also that there is nothing in the trial record to satisfy Plaintiff's burden to show that a non-borrower fraud breach materially and adversely affected the interests of the Certificateholders (the "MAE" requirement).  (Def.'s Mar. 10, 2017 Submission at 3.)  For the reasons set forth below, I reject these arguments and find that Plaintiff

may present argument based on evidence in the record that it has satisfied the MAE requirement for non-borrower fraud loans.

A.      The Court Contemplated Ways to Prove MAE Apart from Borrower Fraud

The Court's Order makes clear that Defendant's first argument is misplaced.  The Order sets forth several ways Plaintiff may satisfy the MAE requirement absent borrower fraud.  See Order at 127 ("The Trusts may establish a material and adverse effect if they prove that the proper application of the Originator's guidelines would have dictated different terms for the loan.") and 130 ("[T]he cumulative effect of multiple breaches may support a finding that a breach materially and adversely affected the interests of Certificateholders.").  If the Court sought to create a bright-line rule that borrower fraud was the only way to satisfy the MAE requirement, it could have.  It did not.

B.      For Non-Borrower Fraud Loans, Plaintiff Can Prove MAE Based on the Record

Defendant's second argument similarly does not support a categorical finding in its favor. Defendant posits that the Court rejected Plaintiff's expert's testimony regarding MAE apart from borrower fraud, and the Court's decisions on the exemplar loans reflect a rejection of any non-borrower fraud reasons for a material and adverse effect.  While Defendant is correct that the Court found Plaintiff's expert's MAE testimony at times "unpersuasive," (Order at 133), and "contradictory" (Id. at 134), the Court did not reject Plaintiff's expert's testimony in its entirety. See id. at 137-39.  In its analysis of the exemplar loans, the Court "examined the nature of the breach in the context of the total mix of information to determine whether [Plaintiff's expert's] opinion that the breach materially and adversely affected the interests of the Certificateholders should be accepted."  Id. at 139.  I intend to do the same in my review.

Nor does a review of the exemplar loans indicate that the Court created an implicit rule that the MAE requirement could never be satisfied in the absence of borrower fraud.  Defendant

argues that in every loan in which the Court found that a breach had a material and adverse

effect, the Court "found specific evidence of borrower fraud." (Def.'s Mar. 10, 2017 Submission

at 3.) This is an overreach. For example, the Court did not mention borrower fraud when it

determined there was a breach of the MLS warranty for Loan 1416352 due to "two additional

mortgages existing as of the Closing Date" that rendered the DTI ratio incorrect. Order at 177.

There, the borrower obtained the mortgages *after* the subject property's funding but before the

Trust Closing Date. The Court accepted Plaintiff's expert's opinion that as a result of these

mortgages, the borrower's DTI was 78.17%, which exceeded the guidelines maximum DTI ratio

of 45%. Id. at 172-73. When evaluating the MAE requirement, the Court found that this breach

"materially and adversely affected the interests of the Certificateholders at the time of discovery

or notice because the Trust would have rejected the inclusion of the loan or would have priced

the transaction differently." Id. at 177. There was no discussion of borrower fraud in the Court's

MAE analysis.[1]

Defendant's argument also ignores the many exemplars in which the Court found a non-

fraud material and adverse effect as an independent alternative ground to satisfy the MAE

requirement. See, e.g., Order at 156 (for Loan 40577613, "[t]he Trust has established that this

[DTI ratio] breach materially and adversely affected the interests of the Certificateholders

because the Trust would have rejected the inclusion of the loan or would have priced the

transaction differently."); 195 (for Loan 1423423, "an income reasonableness check would have

---

[1] Defendant suggests that the Court's references to the borrower's status as an employee of the originator and his own loan officer, along with a reference to "equity stripping" equates with mentioning borrower fraud. (Def.'s Mar. 10, 2017 Submission at 4.) I make no categorical determination regarding whether equity stripping or acting as one's own loan officer amounts to borrower fraud. For this specific loan, these references occurred in analyses of different breaches (review of reasonableness of stated income and non-compliance with the non-arm's length provision), breaches that the Court determined did not have a material and adverse effect. Order at 177. These references had no impact on the MAE analysis for the MLS Warranty breach based on an incorrect DTI ratio.

revealed lower income, which would have placed the loan at a level above the DTI ratio permitted by the Guidelines.  The loan would not have been approved, or would have been approved under different terms had the guidelines been applied properly."); and 218 (for Loan 158514566, "[b]ecause a reasonableness assessment would have revealed that the income was overstated, the Guidelines breach also materially and adversely affected the Certificateholders because compliance with the Guidelines would have revealed a DTI ratio that exceeded the guidelines maximum, and the loan would either not have been funded or funded on different terms more favorable to the owner of the loan.").  These discussions clearly demonstrate that for certain loans, the Court found sufficient evidence in the record to show that there was a material and adverse effect to the interests of the Certificateholders at the time of discovery or notice apart from borrower fraud.

Finally, Defendant argues that the non-borrower fraud loans must be resolved in its favor because expert testimony is required to demonstrate a material and adverse effect, and Plaintiff has introduced no such testimony.  (Def.'s Mar. 10, 2017 Submission at 6-8.)  This argument fails on both the facts and the law.  As noted above, the Court acknowledged Plaintiff's expert's testimony on the MAE requirement and evaluated it in light of the total mix of information.  Moreover, it is entirely possible that in the absence of expert testimony, Plaintiff may show a material and adverse effect at the time of discovery or notice with available record evidence.  The cases cited by Defendant on this point are inapplicable to the circumstances of this case and do not establish a rule that expert testimony is necessary to prove the MAE requirement.

**II.**   **Plaintiff May Be Able to Demonstrate Breaches of the Hazard Insurance Warranty, Title Insurance Warranty, or Guidelines Warranty that Have a "Material and Adverse" Effect Through Missing Documents**

Defendant next argues that Plaintiff cannot "recover for loans based solely on allegations of missing documents because [Plaintiff] cannot establish a breach or, even if it could, cannot

establish MAE based on such allegations." (Def.'s Mar. 10, 2017 Submission at 10.) Having considered Plaintiff's and Defendant's arguments on this point, I find that the Court clearly established when a missing document may cause a breach of the applicable warranty, and I will follow that guidance in my review. With respect to the MAE requirement, Plaintiff may seek to establish that such a breach had a material and adverse effect on the interests of the Certificateholders at the time of discovery or notice. Moreover, a breach based on a missing document may be relevant to the multiple breach ("layered risk") pathway for establishing a material and adverse effect.

Missing documents factor into alleged breaches of the Title Insurance Warranty, the Hazard Insurance Warranty, and the Guidelines Warranty.[2] With respect to missing title insurance, the Court found that:

> whether viewed as a breach of the Guidelines Warranty or of the Title Insurance Warranty, the Trusts will have proved a violation of either or both of these warranties if there is no indication in the loan file that title insurance was obtained prior to the funding of the loan. That indication in the loan file need not be a specimen of the actual policy, but may be other preliminary confirmation of coverage.

Order at 118. With respect to missing hazard insurance, the Court found that:

> [t]he Trusts may not prove a breach of the Hazard Insurance Warranty because a fully endorsed policy is not contained in the loan file. However, the Trusts may prove that there was a breach of either the Guidelines Warranty or the Hazard Insurance Warranty or both by proving that there is no such proof of a commitment by an insurer to cover the property such as a cancelled check for the policy amount or a binder or memorandum or letter of commitment from the insurer.

Id. at 119-20. With respect to missing "core documents," the Court found that:

---

[2] As Plaintiff acknowledges, the Court held that Plaintiff could not prove violations of the Mortgage File Warranty or violations of the Guidelines Warranty based on the absence of most "trailing documents." (Pl.'s Mar. 31, 2017 Submission at 12-13.)

> [t]o the extent that the applicable guidelines required these materials to be considered by or prepared by an underwriter, the Court concludes that their absence from the loan files makes it more likely than not that they were not used in the underwriting process. . . . The absence of these documents from the loan files means that it was probable that they were not considered by the underwriters.  Therefore, to the extent that they were required pursuant to the underwriting guidelines, their absence from the loan files proves a breach of the Guidelines Warranty.

Id. at 106-07.  The Court's review of the exemplar loans was consistent with these holdings and did nothing to alter them.  When I conduct my review, I will follow this guidance when evaluating alleged breaches of the Title Insurance Warranty, Hazard Insurance Warranty, and/or Guidelines Warranty.

Though the Court did not find that a missing document-related breach caused a material and adverse effect to the interests of the Certificateholders at the time of notice or discovery for any of the exemplar loans, I am not prepared to foreclose that possibility in my review.  The Court made clear that a fact-finder must evaluate the "totality of the evidence relating to a loan in making findings on any specific issue relating to that loan." Id. at 145.  An established breach based on a missing document may have a material and adverse effect based on the totality of the evidence relating to that loan, or such a breach may contribute to a finding of a material and adverse effect based on the concept of layered risk.

### III.    There Will Be No Determination as to When Each Loan Was Noticed

Defendant requests that if I determine that there has been a breach, I also determine when Plaintiff provided Defendant with written notice of the breach.  (Def.'s Mar. 10, 2017 Submission at 21.)  In its Order, the Court held that the loans I will review were properly noticed.  Order at 32-42.  Thus, there is no issue of law or fact for me to resolve with respect to notice for loans I will review.

Dated: New York, New York
       April 21, 2017

SO ORDERED:

/s/ Barbara S. Jones_____
Barbara S. Jones
Master