**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE OF MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3,<br><br>    Plaintiff,<br><br>    - against -<br><br>UBS REAL ESTATE SECURITIES INC.,<br><br>    Defendant. | 12 Civ. 7322 (PKC)<br><br>ECF Case<br>Electronically Filed |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY DAVID VISHER AND SANDRA VISHER FOR LEAVE TO INTERVENE AS PLAINTIFFS**

SELENDY & GAY PLLC

Philippe Z. Selendy
Andrew R. Dunlap
Sean Baldwin
Margaret M. England

1290 Avenue of the Americas
New York, New York 10104

*Attorneys for Plaintiff*

March 6, 2018

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT .................................................................................................................. 7

I.    THE VISHERS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT ......................... 8

      A.   Intervention Here Would Conflict with the No-Action Clause in the 2006-OA2 PSA ...... 8

      B.   The Trustee Adequately Represents the Vishers' Interest .................................................. 9

           1.   The IndyMac Loan Files............................................................................................. 9

           2.   The Proposed Settlement ........................................................................................ 10

      C.   The Vishers' Motion Is Untimely ..................................................................................... 11

II.   PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED. ...................................... 12

CONCLUSION............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Allco Fin. Ltd. v. Etsy*,
    300 F.R.D. 83 (D. Conn. 2014) ............................................................................. 7

*Bakal et al. v. U.S. Bank National Association*,
    No. 15-cv-06976-PKC (S.D.N.Y.) .............................................................. 1, 2, 3, 12

*Bank of N.Y. Mellon v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*,
    4 N.Y.S.3d 204 (1st Dep't 2015) ......................................................................... 10

*Bertin v. United States*,
    478 F.3d 489 (2d Cir. 2007) ............................................................................... 8

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ...................................................................... passim

*Catanzano by Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996) ............................................................................... 8

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*,
    847 F.2d 1038 (2d Cir. 1988) ............................................................................. 7

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986) ................................................................................. 8

*In re Bank of N.Y. Derivative Litig.*,
    320 F.3d 291 (2d Cir. 2003) ............................................................................... 8

*Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*,
    333 F. Supp. 2d 131 (S.D.N.Y. 2004) .................................................................. 7

*Komondy v. Gioco*,
    253 F. Supp. 3d 430 (D. Conn. 2017) .................................................................. 7

*MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*,
    471 F.3d 377 (2d Cir. 2006) .......................................................................... 7, 12

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................................... 7

*U.S. Bank Nat'l Ass'n v. Fed. Home Loan Bank of Bos.*,
    No. 652382/2014, 2016 WL 9110399 (N.Y. Sup. Ct. Aug. 12, 2016) .................... 10

*U.S. Bank, Nat'l Assoc. v. UBS Real Estate Sec., Inc.*,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016) ........................................................... 3, 9, 10

*United States v. New York*,
    820 F.2d 554 (2d Cir. 1987) ............................................................................................... 12

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ..................................................................................................... 8

**Statutes**

Fed. R. Civ. P. 24(a) ................................................................................................................. 1, 2, 7

Fed. R. Civ. P. 24(b) ................................................................................................................. 1, 2, 6

Plaintiff U.S. Bank National Association (the "Trustee"), solely in its capacity as trustee of MASTR Adjustable Rate Mortgages Trust 2006-OA2, MASTR Adjustable Rate Mortgages Trust 2007-1, and MASTR Adjustable Rate Mortgages Trust 2007-3 (each a "Trust" and, collectively, the "Trusts"), respectfully submits this memorandum of law in opposition to the motion to intervene ("Motion") filed in this action by *pro se* non-parties David Visher and Sandra Visher (the "Vishers").

## PRELIMINARY STATEMENT

As this Court is aware, the Vishers, along with the other plaintiffs in *Bakal et al. v. U.S. Bank National Association*, No. 15-cv-06976-PKC (S.D.N.Y.), previously sought to intervene in this action.  The Honorable Harold Baer, Jr. denied both their motion to intervene and their motion for reconsideration.  *See* Dkt. 45, 105.  This Motion should similarly be denied because the Vishers still do not satisfy the standard for either intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or for permissive intervention under Rule 24(b).

*First*, the no-action clause in the MARM 2006-OA2 Pooling and Servicing Agreement (the "2006-OA2 PSA") prevents the Vishers from bringing the claims asserted in their proposed complaint.

*Second*, the Trustee has adequately protected and continues to protect certificateholder interests, including those of the Vishers, in the claims here.  The Trustee and the Vishers indisputably have the same "ultimate objective."  Both the Trustee and the Vishers seek the repurchase of, or compensation for, materially breaching loans in the MARM 2006-OA2 Trust from defendant UBS Real Estate Securities Inc. ("UBS").

Here, as in the prior motion to intervene, the Vishers still have not brought forth any evidence to demonstrate Trustee "collusion, adversity of interest, nonfeasance, or incompetence." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001).  Putting aside the

1

Vishers' *ad hominem* attacks on the Trustee, their Motion asserts two points:  (1) the Trustee did not prevail on certain IndyMac loans at trial based on a theory of statistical sampling (meaning that those claims now remain subject to appeal) and (2) the Trustee distributed a proposed settlement to Trust certificateholders so that they could evaluate it and share their views with the Trustee and told Trust certificateholders that it was evaluating the proposed settlement.  As demonstrated more fully below, neither of these allegations constitute evidence of collusion, adversity of interest, nonfeasance, or incompetence and, therefore, intervention is improper under clearly established Second Circuit law.

*Third*, the Motion is untimely as to the IndyMac loan files.  The Vishers have long had notice that the Trustee does not have access to certain IndyMac loan files.  Indeed, in the *Bakal* action pending before this Court, the Vishers allege in their complaint that the issue they now raise became "evident" "during the trial"—meaning nearly two years ago.  *Bakal*, No. 15-cv-06976-PKC Dkt. ("Bakal Dkt.") 41, ¶ 61.

## FACTUAL BACKGROUND

The Trustee initiated this action on September 28, 2012, alleging that UBS failed to abide by its contractual obligations under the Pooling and Service Agreements (the "PSAs") relating to each of the Trusts.  The Trustee seeks recovery from UBS for breaches of representations and warranties with respect to thousands of mortgage loans that were securitized into the Trusts.

### The Vishers' Prior Motion to Intervene

On October 15, 2012, non-parties Alexander Bakal, David Visher, Sandra Visher, and ESM Fund I, L.P., purported certificateholders in the 2006-OA2 Trust, moved to intervene in this action pursuant to Rule 24(a)-(b).  Dkt. 13.  Judge Baer denied the proposed intervenors' motion on

January 11, 2013.  Dkt. 45.[1]  Judge Baer held that the proposed intervenors and the Trustee shared

the "same ultimate objective," and therefore, under Second Circuit law, the Trustee was presumed

to adequately protect the proposed intervenors' interests absent "evidence of collusion, adversity

of interest, nonfeasance, or incompetence," which the proposed intervenors had failed to show.

Dkt. 45 at 3 (quoting *Butler*, 250 F.3d at 179-80).   The proposed intervenors moved for

reconsideration.  Judge Baer denied that motion as well.  Dkt. 105.

### *The Trial Order and the Vishers' Response to Same*

In April 2016, the parties proceeded to trial on the claims, and on September 6, 2016, this

Court issued its Memorandum and Order ("Order"), determining liability on 20 exemplar loans

presented at trial and requiring appointment of a master (the "Master") to evaluate and propose

findings and conclusions concerning the thousands of loans not ruled on in such Order (the "Master

Process").  *U.S. Bank, Nat'l Assoc. v. UBS Real Estate Sec., Inc.*, 205 F. Supp. 3d 386, 525-27

(S.D.N.Y. 2016).

Thereafter, the *Bakal* plaintiffs sought leave to amend their complaint.  Their second

amended complaint alleged that "during the trial, it became evident that the Trustee never even

attempted to obtain the IndyMac loan files, and thus were not even analyzed by the Trustee's

experts."  Bakal Dkt. 41, ¶ 61.

### *The Master Process and the Proposed Settlement*

Since June 2017, the parties have been engaged in the Master Process, and thousands of

loans have been submitted for the Master's review.

---

[1] The factual background to the prior motion to intervene is set forth in the Trustee's
opposition to that motion.  Dkt. 24 at 3-5.

On October 11, 2017, before the Master had begun to issue rulings on the individual loans, the law firm of Keller Rohrback L.L.P. ("Keller Rohrback"), counsel for certain non-party entities with interests in the MARM 2007-1 and 2007-3 Trusts (the "Initiating Parties"), sent a proposed settlement to the Trustee (the "Proposed Settlement"). England Decl. Ex. A. Keller Rohrback informed the Trustee that its clients had negotiated a proposed settlement with UBS and Countrywide Home Loans, Inc. ("Countrywide") that, if accepted by the Trustee, would resolve liability regarding "the origination, transfer, sale, servicing or delivery of the mortgage loans to the Trusts." England Decl. Ex. A at 7.

By notice dated October 18, 2017 (the "October 18 Notice"), the Trustee informed certificateholders of the Proposed Settlement it had received. England Decl. Ex. A at 1. The Trustee annexed to its notice the Keller Rohrback letter as well as the Proposed Settlement agreement. England Decl. Ex. A at 2. The Trustee's notice explained that the Proposed Settlement agreement was negotiated between UBS/Countrywide and certain entities represented by Keller Rohrback. England Decl. Ex. A at 1-2. The Trustee's notice further stated that the "Trustee was not involved in the negotiations that produced the Proposed Settlement Agreement" and, indeed, was not even notified of such negotiations until September 29, 2017, when Keller Rohrback sent the Trustee correspondence attaching the term sheet referred to in its October 11, 2017 letter. England Decl. Ex. A at 2.

The Trustee did not endorse the Keller Rohrback letter or the Proposed Settlement in distributing the communication to certificateholders. England Decl. Ex. A at 1-3. To the contrary, the Trustee's October 18 Notice and an additional Trustee notice dated January 2, 2018 (the "January 2 Notice") both made clear that it "would not become a party to, or bound by, the Proposed Settlement Agreement unless the Trustee accepts the Proposed Settlement Agreement

4

on behalf of the Trusts prior to the 'Acceptance Deadline.'"   England Decl. Ex. A at 2; *see also*

Visher Decl. Ex. E at 2.   The notice further stated that the Trustee was evaluating Keller

Rohrback's letter and the Proposed Settlement, had "not yet determined its response" to the

Proposed Settlement and intended "to engage one or more experts to assist it in its evaluation of

the Proposed Settlement Agreement."  England Decl. Ex. A at 2

In connection with the Proposed Settlement, the Initiating Parties requested that the Trustee

"seek a stay of all proceedings in the pending action and … continue such a stay during the

settlement process." England Decl. Ex. A at 2.  UBS and Countrywide thereafter separately asked

the Master to stay the Master Process.  As the Trustee notified Trust certificateholders in its

October 18 and January 2 Notices, the Trustee informed the Master that it opposed staying the

Master Process.  England Decl. Ex. A at 2; Visher Decl. Ex. E at 2.  The Master has declined to

stay the Master Process to date.

At the time the Initiating Parties sent the Trustee the Proposed Settlement, the Master had

not yet ruled on loans submitted by the Trustee.   Thereafter, the Master began issuing rulings on

individual loans.

Since the October 18 Notice, the Proposed Settlement "Acceptance Deadline" has been

extended twice. The current "Acceptance Deadline" is March 9, 2018.  Dkt. 570 at 3.

***The Trustee's Process for Evaluating the Proposed Settlement***

The Trustee's evaluation of the Proposed Settlement has considered various relevant

factors, including, without limitation, the terms of the Proposed Settlement, results achieved to

date and potential results, litigation risks, expenses, and views that it received from

certificateholders.

Among other things, in evaluating the Proposed Settlement, the Trustee has engaged, consulted with, and received views from former Southern District of New York Magistrate Judge Frank S. Maas (Ret.) as to various matters relevant to assessing the Trusts' potential recovery in, and the reasonable settlement value of, the litigation.  The Trustee and its expert considered the views expressed by certificateholders regarding the Proposed Settlement in response to the Trustee's Notices.  The Trustee has also consulted with and received views from its economic expert, Bates White, with respect to, among other things, the estimated damages corresponding to the loans on which the Trustee has prevailed to date, including the Master rulings issued to date, and those loans on which it may prevail upon through the Master Process.  The Trustee has also met with counsel for UBS, Countrywide, and the trust administrator under the PSAs (Wells Fargo Bank, N.A.).

### *The Vishers' New Motion to Intervene*

On February 6, 2018, the Vishers again moved to intervene in this action, seeking to assert claims identical to those brought by the Trustee with respect to the MARM 2006-OA2 Trust.  The Vishers claim that they are entitled to intervene as of right and, in the alternative, seek permissive intervention under Rule 24.  Vishers' Mem. at 1.

Although the Vishers do not seek to add any substantive allegations to the Trustee's complaint (*see* Visher Decl. Ex. A), the Vishers argue that the Trustee does not adequately protect their interests in this litigation.  First, the Vishers complain that the Trustee should have obtained certain loan files originated by IndyMac (instead of trying to prove material breaches on these loans through statistical sampling).  Vishers' Mem. at 7-11.  Second, the Vishers claim that the Trustee is not adequately protecting their interests with respect to the Proposed Settlement because the Trustee informed Trust certificateholders that it was evaluating the Proposed Settlement and,

per the Vishers, it should have immediately rejected the Proposed Settlement (based on, among other things, rulings from the Master that followed receipt of the Proposed Settlement). Vishers' Mem. at 11-19. The Vishers seek (i) to re-open both discovery and trial to obtain and adjudicate liability on the loan files for certain IndyMac-originated loans that were not obtained in discovery and, otherwise, (ii) to obtain certain other disclosures from UBS and non-parties. Vishers' Mem. at 19-20.

## ARGUMENT

To demonstrate entitlement to intervene as of right, the movant "must (1) timely file; (2) demonstrate an interest in the action; (3) show an impairment of that interest arising from an unfavorable disposition; and (4) have an interest not otherwise adequately protected." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 68 (S.D.N.Y. 2003) (citing Rule 24(a)); *see Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988)); *accord MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006).

Where, as here, the proposed intervenor and the plaintiff have the same "ultimate objective," the proposed intervenors are required to show "*evidence* of collusion, adversity of interest, nonfeasance, or incompetence" to rebut the presumption of adequate representation. *Butler*, 250 F.3d at 179-80 (emphasis added). "[S]peculation is not evidence." *Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 142 (S.D.N.Y. 2004); *see also Komondy v. Gioco*, 253 F. Supp. 3d 430, 446 n.9 (D. Conn. 2017) ("Plaintiff challenges the notion that the additions were completed by simply speculating that they may not have been done. Such speculation is not evidence and creates no genuine issue of material fact."); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87-88 (D. Conn. 2014) (holding that proposed "[i]ntervenors' speculative concerns are insufficient to rebut the presumption that the existing parties will adequately represent their interest" where, despite a general unity of interest, the proposed intervenors were concerned a state

7

agency head was more interested in upholding a broad energy program than defending the proposed intervenors' specific agreements).

"Failure to satisfy *any one* of the[ four] requirements is a sufficient ground to deny the application."  *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996)) (emphasis in original); *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) ("The intervention application will be denied unless all four requirements are met.").

"Substantially the same factors are considered in determining whether to grant an application for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2)."  *Bank of N.Y.*, 320 F.3d at 300 & n.5 (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

In this case, the Vishers' Motion should be denied because, even with the liberal construction afforded to *pro se* submissions, *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), the Vishers have not demonstrated that they are entitled to intervention as of right or to permissive intervention.

## I.     THE VISHERS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT

The Vishers fail to demonstrate that they are entitled to intervene as of right.

### A.     Intervention Here Would Conflict with the No-Action Clause in the 2006-OA2 PSA

The Vishers seek to intervene as plaintiffs and to assert the same claims as the Trustee with respect to the MARM 2006-OA2 Trust against UBS.  *See* Visher Decl. Ex. A.  But the 2006-OA2 PSA does not entitle the Vishers to act in these circumstances.

Section 11.08 of the 2006-OA2 PSA provides:

No Certificateholder shall have any right by virtue or by availing itself of any provisions of this Agreement to institute any suit, action or proceeding in equity or at law upon or

8

under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee or the Trust Administrator a written notice of a Master Servicer Event of Termination and of the continuance thereof, as herein provided, and unless the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request to the Trustee or the Trust Administrator to institute such action, suit or proceeding in its own name as Trustee or Trust Administrator hereunder and shall have offered to the Trust Administrator such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee or the Trust Administrator, for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding ….

Dkt. 25, Ex. A (2006-OA2 PSA) at § 11.08.

Here, the Vishers do not (and could not) allege that they hold certificates in the MARM 2006-OA2 Trust evidencing 25% or more of the Voting Rights or that any other requirements of the PSA have been satisfied.  On this basis alone, the Motion should be rejected.

### B.      The Trustee Adequately Represents the Vishers' Interest

As this Court ruled after the first attempted intervention, "[w]hen a potential intervenor shares the 'same ultimate objective' as an existing party in the case … adequate representation is presumed unless the intervenor shows 'evidence of collusion, adversity of interest, nonfeasance, or incompetence.'"  Dkt. 45 at 3 (quoting *Butler*, 250 F.3d at 179-80).  The Vishers fail to make even a colorable argument that one of these grounds exists; their accusations rest on misapprehension and speculation.

#### 1.      The IndyMac Loan Files

The Vishers incorrectly maintain that it was a "mathematical certainty" that they would "be harmed in direct proportion to the percentage of [IndyMac] loan files not collected."  Vishers' Mem. at 7-11.  This is not true.  The Trustee pursued recovery on the IndyMac loans employing a strategy of statistical sampling and sought recovery on all materially breaching IndyMac loans through such a sample as well as on a loan-by-loan basis based on public records.  *U.S. Bank*, 205 F. Supp. 3d at 475.  The fact that this Court held that the Trustee could not prove that certain

IndyMac loans materially breached warranties on the basis of statistical sampling in this "specific context" does not evidence incompetence or collusion. *Id.* Rather, it shows solely that the Trustee did not prevail at the trial court level on this argument.[2]

### 2.     The Proposed Settlement

The Vishers' Motion also does not show that the Trustee is inadequately protecting their interests with respect to the Proposed Settlement. In essence, the Vishers allege that the Trustee informed certficateholders that it was evaluating a Proposed Settlement and shared the Proposed Settlement with certificateholders. Both the Trustee's evaluation of the Proposed Settlement and its decision to inform certificateholders of the same are proper.

Here, the Trustee's evaluation of the Proposed Settlement has been reasonable, in good faith, and consistent with New York law. *See generally Bank of N.Y. Mellon v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 4 N.Y.S.3d 204 (1st Dep't 2015). Far from encouraging trustees to make snap decisions, as the Vishers would have it, the New York courts have recognized that it is appropriate for trustees to carefully evaluate proposed settlements, approved of trustees seeking certificateholder input, and expressly endorsed trustee consultation with qualified experts, such as Judge Maas and Bates White here. *See U.S. Bank Nat'l Ass'n v. Fed. Home Loan Bank of Bos.*, No. 652382/2014, 2016 WL 9110399, at *10-11 (N.Y. Sup. Ct. Aug. 12, 2016) (finding trustee acted properly and in good faith where it obtained the views of certificateholders and consulted with experts on legal and economic issues relevant to the trusts' potential recovery); *In re U.S. Bank Nat'l Ass'n*, 27 N.Y.S.3d 797, 802-03, 806 (N.Y. Sup. Ct.

---

[2] Further, this Court noted that "the Trusts have not been left without a remedy for many of the IndyMac loans for which they have not obtained loan files," because the Trusts could establish a breach through third-party sources. *U.S. Bank*, 205 F. Supp. 3d at 476.

2015) (same).  There is simply no basis in the law to assert that the Trustee acted incompetently or colluded with any entity by carefully and thoroughly evaluating the Proposed Settlement.

Further, contrary to the Vishers' suggestions, in its notices, the Trustee expressed no position concerning either the Proposed Settlement or Keller Rohrback's representations that its own negotiations (in which the Trustee indisputably did not participate) produced a "reasonable resolution" that "was a result of 'extensive arms-length negotiations.'"  Vishers' Mem. at 13 (quoting Visher Decl. Ex. C at 2).  Nor did the Trustee endorse those positions merely by distributing the Keller Rohrback letter to Trust certificateholders along with the Proposed Settlement.  The Trustee communicated the Proposed Settlement to Trust certificateholders to allow them to evaluate it themselves and to offer their views on the same, which the Trustee and its experts have received and reviewed.

Further, the Trustee made clear in its notices that it was not involved in the negotiation of the Proposed Settlement, and that "[b]y its terms, the Trustee would not become a party to, or be bound by, the Proposed Settlement Agreement unless the Trustee accepts it on behalf of the Trusts."  Visher Decl. Ex. E at 2.  And the Trustee has declined UBS's repeated requests to stay the Master Process and continues to vigorously pursue its claims through that process while evaluating what would constitute a reasonable settlement of those claims.

### C.    The Vishers' Motion Is Untimely

As the Vishers concede, the factors the Court should consider when assessing the timeliness of a motion to intervene include "the length of time the applicant knew or should have known of [its] interest before making the motion."  *MasterCard Int'l*, 471 F.3d at 390 (quoting *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)) (alteration in original); Vishers' Mem. at 5-6.

Here, as the Vishers concede, they became aware of the IndyMac loan file issue no later than trial.  Bakal Dkt. 41, ¶ 61.  However, the Vishers waited nearly two years after trial before filing their Motion.  This delay, without more, renders the Motion untimely.

In short, the Trustee has diligently represented the interests of Trust certificateholders, including the Vishers' interests, throughout the course of this litigation, consistent with the Trustee's understanding of the law, the Court's rulings, and the relevant evidence, and there is no basis for the Vishers to intervene here.  Moreover, were the Trustee to determine that economic terms and other conditions constitute a reasonable settlement of the litigation, the Trustee anticipates that, in those circumstances, any resulting settlement would be subject to a court approval process in which Trust certificateholders, including the Vishers, would have the opportunity to participate.  The Motion should therefore be denied.

## II.     PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED.

The Vishers present no argument in support of their assertion that permissive intervention is appropriate.  Vishers' Mem. at 5 (providing only a rule statement), 4-20 (no separate argument for permissive intervention).  As shown above, the Vishers are adequately represented in this litigation, and they have failed to provide any evidence—or even colorable argument—that the Trustee has exhibited "collusion, adversity of interest, nonfeasance, or incompetence." *Butler*, 250 F.3d at 180.  The Vishers have not shown any evidence of Trustee incompetence, and their speculation about collusion between the Trustee and UBS lacks any support.  As with intervention as of right, permissive intervention should be denied.

### CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

12

Dated:   March 6, 2018
          New York, New York

Respectfully submitted,

SELENDY & GAY PLLC

By:    */s/ Sean Baldwin*

Philippe Selendy
(pselendy@selendygay.com)
Andrew R. Dunlap
(adunlap@selendygay.com)
Sean Baldwin
(sbaldwin@selendygay.com)
Margaret M. England
(mengland@selendygay.com)

1290 Avenue of the Americas
New York, NY 10104

*Attorneys for Plaintiff*