UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, solely in its capacity as Trustee of MASTR ADJUSTABLE RATE MORTGAGES TRUST 2006-OA2, MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, AND MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3, | :<br>:<br>:<br>:<br>: 12-cv-7322 (PKC)<br>:<br>: |
| Plaintiff, | : |
| - against - | : |
| UBS REAL ESTATE SECURITIES INC., | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S OPPOSITION TO MOTION OF CERTIFICATEHOLDERS DAVID AND SANDRA VISHER FOR LEAVE TO INTERVENE AS PLAINTIFFS

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Alexander C. Drylewski
Michael C. Griffin
Four Times Square
New York, New York 10036

*Attorneys for Defendant UBS Real
  Estate Securities Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT .................................................................................................................................3

I.     THE MOTION TO INTERVENE SHOULD BE DENIED..................................................3

    A.     The Proposed Intervenors Have Been Aware Of Their Interests In This Action Since It Began More Than Five Years Ago ..................................................4

    B.     Allowing Intervention Now Would Severely Prejudice UBS RESI ........................5

    C.     Denying Intervention Will Not Prejudice the Proposed Intervenors .......................6

    D.     No "Unusual Circumstances" Justify Intervention At This Late Juncture ..............7

CONCLUSION ..............................................................................................................................9

Defendant UBS Real Estate Securities Inc. ("UBS RESI") respectfully submits this memorandum of law in opposition to Certificateholders David and Sandra Visher's (the "Proposed Intervenors") Motion for Leave to Intervene as Plaintiffs (ECF No. 569, the "Intervention Motion" or "Mot.").

**INTRODUCTION**

Over five years after this case began and nearly two years after trial ended – and despite having their previous request to intervene denied by Judge Baer – the Proposed Intervenors again request leave to intervene in this case to "reopen discovery and trial" so that they can attempt to acquire, re-underwrite and litigate thousands of additional loan files that the Trustee voluntarily waived its ability to obtain during discovery. As demonstrated below, the Court should reject this belated request because it comes years too late and would severely prejudice UBS RESI by, among other things, threatening to unjustly impose upon the parties substantial new costs and expenses. At its core, the Intervention Motion merely constitutes an improper attempt to re-litigate the Trustee's strategic decisions, made throughout this litigation and trial, many years after the fact.

The Proposed Intervenors argue that their request is somehow justified by the proposed settlement that UBS RESI and certain Certificateholders presented to the Trustee last October, which was reached through arm's-length negotiations before a neutral mediator. But intervention is not necessary to oppose the proposed settlement. The Proposed Intervenors – like all Certificateholders in the Trusts – were given notice and ample opportunity to provide their views on the proposed settlement to the Trustee, who acts on behalf of all of the Trusts' investors. Moreover, Certificateholders can always make their views known to the Trustee without a formal invitation, but may have additional formal opportunities as well should the

Trustee conduct a consent solicitation, institute a judicial settlement approval proceeding, or otherwise solicit Certificateholder input.

It also bears emphasis that the Intervention Motion is rife with abject speculation and baseless allegations that should be completely disregarded. For example, the Proposed Intervenors posit that "***maybe*** UBSREI [sic] paid a premium for the drafting of a deceptive and fraudulent cover letter to the Proposed Settlement Agreement," (Mot. at 14 (emphasis added)), and "[i]t is ***possible*** that UBSREI [sic] and Countrywide, added [sic] and abetted by US Bank, distributed the deceptive Proposed Settlement Agreement for the sole purpose of driving down certificate holders' expectations, thereby allowing UBSEI [sic] and Countrywide to acquire bond on the cheap," (*id.* at 16 (emphasis added)).[1] The Proposed Intervenors even go so far as to suggest that UBS RESI colluded with the Trustee itself – *i.e.*, the very party against whom UBS RESI has vigorously litigated for years, including through a full bench trial before this Court and nearly two years of post-trial proceedings. (*Id.* at 19 (accusing UBS RESI of colluding with either loan servicers or the Trustee itself to prevent the missing loan files from being produced).) On their face, these unsupported accusations constitute nothing more than rank speculation, and the Proposed Intervenors cite no evidence (because none exists) to support their claims. UBS RESI denies any actual or even perceived impropriety in connection with the proposed settlement, which was negotiated at arm's length between sophisticated, adverse parties and is currently being considered by the Trustee.

For these reasons, as well as those set forth more fully below, the Intervention Motion should be denied.

---

[1] (*See also* Mot. at 16-17 (hypothesizing how UBS RESI could potentially acquire control of the Trusts).)

2

**ARGUMENT**

I. **THE MOTION TO INTERVENE SHOULD BE DENIED**

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest relating to the property or transaction that is the subject of the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) show that there is an interest that is not adequately protected by the existing parties.  *See* Fed. R. Civ. P. 24(a)(2); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001).  When a potential intervenor shares the "same ultimate objective" as an existing party in the case, however, adequate representation is presumed unless the intervenor shows "evidence of collusion, adversity of interest, nonfeasance, or incompetence." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001).  Under Rule 24(b), a court may "[o]n timely motion . . . permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," but "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).  The court considers the same factors under Rule 24(b) that it considers for intervention as of right.  *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003).

Intervention, whether as of right or permissive, is appropriate only upon a "timely" motion.  *See* Fed. R. Civ. P. 24; *see also Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996) ("A motion for permissive intervention, like one for intervention of right, must be timely.")  "Factors to consider in determining timeliness include: '(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a

3

finding of timeliness.'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (alterations in original) (citation omitted).  Here, the Proposed Intervenors' request to intervene fails on every score.

### A. The Proposed Intervenors Have Been Aware Of Their Interests In This Action Since It Began More Than Five Years Ago

First, the Intervention Motion is severely untimely.  The Proposed Intervenors have been aware of their interests in this litigation since its outset, as evidenced by their previous unsuccessful attempt to intervene on October 15, 2012 – *i.e.*, less than one month after this case was filed.  (*See* ECF No. 10 (motion to intervene); ECF No. 45 (order denying intervention).)[2] In denying the previous motion, Judge Baer held that intervention as of right was "inappropriate because Proposed Intervenors have not shown that their claims against the Trustee will be impaired, while Proposed Intervenors' claims against Defendant are adequately represented by Plaintiffs." (ECF No. 45 at 2; *see also id.* ("With respect to the three claims that Proposed Intervenors bring against Defendant under the PSAs, they are identical to Plaintiffs' claims, and Proposed Intervenors share the same "ultimate objective" against Defendant in this litigation . . . .").)  Judge Baer also denied intervention because it would unduly complicate and delay the proceedings, thus prejudicing the parties.  (*Id.* at 4.)  The Proposed Intervenors moved for reconsideration of Judge Baer's order, which was also denied.  (*See* ECF No. 105.)

Having already attempted to intervene at the outset of this case and been denied, there is no justification for the Proposed Intervenors' renewed attempt now, five years later and following years of litigation and trial.  Accordingly, the Intervention Motion, like its predecessor motion, should be denied.

---

[2] The Motion mistakenly states that the first motion to intervene was filed on October 15, 2013.  (Mot. at 1.)

B.       **Allowing Intervention Now Would Severely Prejudice UBS RESI**

Second, while the Proposed Intervenors seek to "re-open discovery and trial" to obtain, re-underwrite and litigate thousands of additional loan files (Mot. at 19), doing so would severely prejudice UBS RESI.  Indeed, the Proposed Intervenors' request violates fundamental principles of equity, finality and judicial efficiency.  The Trustee's decision not to obtain certain loan files was a calculated litigation decision.  (*See* Trial Tr. (ECF No. 462) at 1235-41.)  Indeed, the Trustee is a sophisticated party represented by sophisticated counsel that has made numerous strategic decisions throughout this action and trial – the Proposed Intervenors cannot intervene to "correct" what they believe was a flaw in the Trustee's chosen litigation strategy.  While many litigants would no doubt welcome the chance at such a "re-do," neither Rule 24 nor any other authority provides such an opportunity.  *See Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 156 (1967) ("Mere tactical disagreement over how litigation should be conducted is obviously insufficient to support intervention of right.").[3]

Moreover, granting the Proposed Intervenors' request would severely delay resolution of this case.  Fact discovery closed *four years ago*, on February 7, 2014.  (ECF No. 158.)  Trial ended nearly *two years ago*, on May 13, 2016.  At its current pace, the Master loan review is expected to run well into 2019.  The thousands of additional loan files that the Proposed Intervenors purport to seek to obtain and litigate would threaten to significantly

---

[3] In any event, the Proposed Intervenors are barred from maintaining any claims directly against UBS RESI under Section 11.08 of the PSA (*i.e.*, the "No Action Clause"), which prohibits certificateholders from bringing suit unless certain specific condition precedents have been met.  The Proposed Intervenors do not, and cannot, argue that they complied with the No Action Clause's requirements, and thus lack contractual standing to pursue any claims against UBS RESI.  However, the Proposed Intervenors may pursue any remedies to which they believe they are entitled against the Trustee – just as they are currently doing in a related action.  *See Bakal et al. v. U.S Bank Nat'l Ass'n.*, 15-cv-6976 (PKC) (S.D.N.Y.).

5

increase the time and expense associated with this already extensive litigation.[4]  None of this is justified and thus the Proposed Intervenors' request should be denied.

Finally, UBS RESI was not the keeper of the loan files and thus should not bear the consequences of the Trustee's failures of proof.  As the Trustee's own employee, Diane Reynolds, was forced to admit at trial, legal ownership of the loans themselves was assigned to the Trusts at closing and the Custodian took possession of the Mortgage Files.  (*See* Trial Tr. (ECF No. 468) at 1745:14-23; 1746:16-20.)  Thus, any suggestion that UBS RESI had any hand in the Trustee's inability to obtain loan files many years after closing is without basis.

### C.     Denying Intervention Will Not Prejudice the Proposed Intervenors

In contrast to the significant prejudice to UBS RESI if the Intervention Motion were granted, denying the Intervention Motion will not prejudice the Proposed Intervenors' interests in maximizing recovery in this action.  As Judge Baer held in denying the Proposed Intervenors' last attempt to commandeer this litigation, the Trustee and the "Proposed Intervenors share the same 'ultimate objective' against Defendant in this litigation:  to obtain maximum recovery for all certificate holders by demonstrating that Defendant breached its representations and repurchase obligations under the PSAs." (ECF No. 45 at 4.)  The Proposed Intervenors have already been afforded notice and an opportunity to voice their objections to the terms of the proposed settlement, which they did by sending a letter to the Trustee to that effect.  If the Trustee and UBS RESI agree to a settlement, the Proposed Intervenors may have further opportunities to make their views known.

It also bears emphasis that the Proposed Intervenors' purported criticisms of the

---

[4]  Even if the Proposed Intervenors were successful in obtaining additional loan files, the Trusts could not seek recovery for any loans where UBS RESI was not provide loan-specific notice of breach.  (*See* SJ Order, ECF No. 249.)

proposed settlement suffer from numerous fundamental flaws and unjustified assumptions. For example, the Proposed Intervenors appear to assume a recovery of 9% prejudgment interest on all loans, although the availability and rate of prejudgment interest, if any, has yet to be adjudicated by the Lead Master or the Court. Moreover, the Proposed Intervenors appear to expect an award of prejudgment interest for "active" (*i.e.*, non-liquidated) loans, despite the Trustee not even seeking prejudgment interest as to such loans. Even more significantly, the Proposed Intervenors' purported analysis does not take into account any discounts based on current litigation and appellate risks. Accordingly, the Proposed Intervenors do not, and cannot, assert any logical basis to intervene in this case.

### D. No "Unusual Circumstances" Justify Intervention At This Late Juncture

The Proposed Intervenors try to salvage their belated Motion by arguing that "unusual circumstances . . . completely mitigate" the untimely nature of their request, claiming that "evidence of [the Trustee's] incompetence or worse . . . took time to reveal itself as litigation progressed" – *i.e.*, the Trustee's failure to obtain certain loan files and its handling of the proposed settlement. (Mot. at 6.) These arguments lack merit.

First, the Proposed Intervenors knew or should have known about any purported issue regarding the loan files for years. According to the Trustee's counsel at trial, its failure to obtain the IndyMac loan files occurred in "late 2012, early 2013" – approximately five years ago. (Trial Tr. (ECF No. 462) at 1236.) The issue was also publicly discussed at trial on May 4, 2017, and in the Court's September 6, 2016 Memorandum and Order (ECF No. 505). The Proposed Intervenors do not even claim to have learned of the missing loan files only recently, and any such suggestion would be belied by their Intervention Motion. (*See* Mot. at 12 ("Any prudent person would constantly be monitoring the expected return of the litigation, the Intervention Plaintiffs certainly have.").) Even assuming *arguendo* that the Proposed Intervenors

7

did not learn of the missing loan files until the Court's September 6, 2016 Order, they offer no explanation – much less justification – for waiting another year and a half to move to intervene. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (denying motion to intervene as untimely where "[a]ppellant offers no explanation for waiting to file his intervention motion").

Second, there is no basis for the Proposed Intervenors to claim that the recent proposed settlement somehow renders their Intervention Motion timely. Indeed, the Proposed Intervenors do not offer any colorable argument as to how their interests are impaired simply because the Trustee did not "immediately reject" the proposed settlement, as they apparently would have preferred. (*See* Mot. at 11-12.) Moreover, as noted above, the Proposed Intervenors may have further opportunities to make their views known regarding any settlement. Simply put, the proposed settlement does not justify intervention because the Proposed Intervenors do not have to intervene to object to it.

Finally, the Proposed Intervenors' application is rife with innuendo, rank speculation and unsupported allegations that appear more designed to inflame than to persuade. (*See, e.g.*, Mot. at 19 ("More likely, either UBSERI [sic] colluded with the servicers of the IndyMac loans and American Home loans to ensure that they did not deliver the loan files to the trusts, or UBSREI [sic] colluded with US Bank to ensure those loan files were not delivered to the trusts."); Visher Declaration in Support of the Intervention Motion (ECF No. 569) at ii-iii (assuming, without any basis, that 50% of the unresolved loans will be resolved in the Trustee's favor and that "the benefit of putting back an active breached loan back to UBS would be approximately 50% of that of a liquidated loan").) The Proposed Intervenors fail to provide any cogent basis for their purported allegations, which do not – and cannot – support their untimely request for intervention.

## CONCLUSION

For the foregoing reasons, the Intervention Motion should be denied.

Dated: New York, New York
       March 6, 2018

>                                    Respectfully submitted,
>
>                                    /s/ Scott D. Musoff
>
>                                    Scott D. Musoff
>                                    (scott.musoff@skadden.com)
>                                    Robert A. Fumerton
>                                    (robert.fumerton@skadden.com)
>                                    Alexander C. Drylewski
>                                    (alexander.drylewski@skadden.com)
>                                    Michael C. Griffin
>                                    (michael.griffin@skadden.com)
>                                    SKADDEN, ARPS, SLATE,
>                                      MEAGHER & FLOM LLP
>                                    Four Times Square
>                                    New York, New York 10036
>                                    Phone: (212) 735-3000
>
>                                    *Attorneys for Defendant UBS Real*
>                                      *Estate Securities Inc.*